# 14-3709-cv

## United States Court of Appeals

*for the*

## Second Circuit

---

DEVORAH CRUPER-WEINMANN,
Individually and on behalf of all others similarly situated,

*Plaintiff-Appellant,*

– v. –

PARIS BAGUETTE AMERICA, INC., doing business as Paris Baguette,

*Defendant-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## JOINT APPENDIX

TROUTMAN SANDERS LLP
*Attorneys for Defendant-Appellee*
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 704-6000

FRANK & BIANCO LLP
*Attorneys for Plaintiff-Appellant*
275 Madison Avenue, Suite 705
New York, New York 10016
(212) 682-1853

i

**JOINT APPENDIX**
**TABLE OF CONTENTS**

|  | **Page** |
|---|---|
| District Court Docket Entries .................................... | A-1 |
| Class Action Complaint, filed October 3, 2013 ......... | A-7 |
| Affidavit of Dylan Y. Ahn, for Defendant, in Support of Motion to Dismiss, filed December 16, 2013 ................................................ | A-16 |
| Affirmation of Mary Jane Yoon, for Defendant, in Support of Motion to Dismiss, filed December 16, 2013 ................................................ | A-18 |
| Exhibit A to Yoon Affirmation - Paris Baguette Receipt (Redacted) ........................ | A-21 |
| Exhibit B to Yoon Affirmation - Class Action Complaint, filed July 17, 2009, in *Gardner v. Appleton Baseball Club, Inc.*, Eastern District of Wisconsin, Case No. 09-cv-705 ........... | A-22 |
| Exhibit C to Yoon Affirmation - Memorandum of Law, by Plaintiff, in Opposition to Motion to Dismiss, filed September 4, 2009, in *Gardner v. Appleton Baseball Club, Inc.*, Eastern District of Wisconsin, Case No. 09-cv-705 ........... | A-33 |
| Exhibit D to Yoon Affirmation - Decision and Order of the Honorable William C. Griesbach, filed March 31, 2010, in *Gardner v. Appleton Baseball Club, Inc.*, Eastern District of Wisconsin, Case No. 09-cv-705............................ | A-47 |

ii

**Page**

Exhibit E to Yoon Affirmation -
Amended Class Action Complaint, filed June 11,
2009, in *Miller-Huggins v. Spa Clinic, LLC*,
Northern District of Illinois, Case No. 09-C-2677    A-58

   Exhibit 1 to Complaint -
   CSMIT Massage Clinic Receipt ........................    A-66

Exhibit F to Yoon Affirmation -
Response to Defendant's Motion to Dismiss, by
Plaintiff, filed July 23, 2009, in *Miller-Huggins v.
Spa Clinic, LLC*, Northern District of Illinois,
Case No. 09-C-2677 .............................................    A-68

   Exhibit 1 to Response -
   Class Action Complaint, filed June 23, 2009, in
   *Miller-Huggins v. Spa Clinic, LLC*, Northern
   District of Illinois, Case No. 09-C-2677 ...........    A-77

   Exhibit 2 to Response -
   Notification of Docket Entry .............................    A-86

Exhibit G to Yoon Affirmation -
Memorandum Opinion of the Honorable John F.
Grady, filed March 11, 2010, in *Miller-Huggins v.
Spa Clinic, LLC*, Northern District of Illinois,
Case No. 09-C-2677 .............................................    A-88

Exhibit H to Yoon Affirmation -
Class Action Complaint, filed April 17, 2013, in
*Komorowski v. All-American Indoor Sports, Inc.*,
District of Kansas, Case No. 13-2177 ..................    A-94

Exhibit I to Yoon Affirmation -
Memorandum of Law, by Plaintiff, in Opposition
to Motion to Dismiss, filed July 29, 2013, in
*Komorowski v. All-American Indoor Sports, Inc.*,
District of Kansas, Case No. 13-2177 ..................    A-105

iii

**Page**

Exhibit J to Yoon Affirmation -
Memorandum and Order of the Honorable Sam
A. Crow, filed September 4, 2013, in
*Komorowski v. All-American Indoor Sports, Inc.*,
District of Kansas, Case No. 13-2177 ................... A-119

Exhibit K to Yoon Affirmation -
First Amended Complaint (Class Action), filed
August 22, 2011, in *Seo v. CC CJV American
Holdings, Inc.*, Central District of California,
Case No. 11-cv-05031 .......................................... A-128

Exhibit L to Yoon Affirmation -
Memorandum of Law, by Plaintiff, in Opposition
to Motion to Dismiss, filed September 19, 2011,
in *Seo v. CC CJV American Holdings, Inc.*,
Central District of California, Case No.
11-cv-05031 ........................................................ A-145

Exhibit M to Yoon Affirmation -
Order of the Honorable Dean D. Pregerson, filed
October 18, 2011, in *Seo v. CC CJV American
Holdings, Inc.*, Central District of California,
Case No. 11-cv-05031 .......................................... A-154

Order of the Honorable Jed S. Rakoff, filed
December 16, 2013 ................................................ A-158.1

Order of the Honorable Jed S. Rakoff, filed
January 16, 2014 .................................................. A-159

Transcript of Proceedings held before the
Honorable Jed S. Rakoff, filed February 6, 2014 .. A-161

Memorandum Order of the Honorable Jed S.
Rakoff, filed June 30, 2014, Appealed From ........ A-178

Judgment, filed June 30, 2014, Appealed From ........ A-190

iv

                                                                    **Page**

First Memorandum of Law, by Plaintiff, in Support
    of Motion for Reconsideration, filed
    July 15, 2014
    (Omitted herein)

    Exhibit A to Memorandum -
    Amended Class Action Complaint......................... A-192

Memorandum Order of the Honorable Jed S.
    Rakoff, filed September 3, 2014, Appealed From . A-211

Notice of Appeal, filed October 1, 2014................... A-216

CLOSED,APPEAL,ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:13–cv–07013–JSR

Cruper – Weinmann v. Paris Baguette America, Inc
Assigned to: Judge Jed S. Rakoff
Cause: 15:1681 Fair Credit Reporting Act

Date Filed: 10/03/2013
Date Terminated: 06/30/2014
Jury Demand: Plaintiff
Nature of Suit: 480 Consumer Credit
Jurisdiction: Federal Question

**Plaintiff**

**Devorah Cruper – Weinmann**
*Individually and on behalf of all others
similarly situated*

represented by **Alan J. Harris**
Alan J. Harris, P.C
427 Manville Rd.
Pleasantville, NY 10570
(914)–747–9393
Fax: (914)–747–9394
Email: alanharrisesq@aol.com
*ATTORNEY TO BE NOTICED*

**Bridget Veronica Hamill**
Murray Frank LLP
275 Madison Avenue, Ste. 801
New York, NY 10016
(212) 682–1818
Fax: (212) 682–1892
Email: bhamill@murrayfrank.com
*ATTORNEY TO BE NOTICED*

**Joseph Henry Lilly , III**
Law Office of Joseph H. Lilly, III
60 East 42nd Street, Suite 1338
New York, NY 10165
212 687–6523
Fax: 212 687–6526
Email: joelilly@att.net
*ATTORNEY TO BE NOTICED*

**Khaled A. El Nabli**
Nabli &Associates, P.C
60 East 42nd Street, Suite 1338
New York, NY 10165
(212)–808–0716
Fax: (212)–808–0719
Email: jim_elnabli@nablilaw.com
*ATTORNEY TO BE NOTICED*

**Marvin Lawrence Frank**
Murray Frank LLP
275 Madison Avenue, Ste. 801
New York, NY 10016
(212) 682–1818
Fax: (212) 682–1892
Email: mfrank@frankandbianco.com
*ATTORNEY TO BE NOTICED*

**Peter Y Lee**
Lee LLC Dba Peter Y. Lee, Esq
305 Madison Ave
New York, NY 10165
(212)–808–0731
Fax: (212)–808–0719

Email: peter.lee@leeadvocates.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Paris Baguette America, Inc**                 represented by   **Eric L. Unis**
*doing business as*                                              Troutman Sanders LLP (NYC)
Paris Baguette                                                   405 Lexington Avenue
                                                                 New York, NY 10174
                                                                 (212) 704–6000
                                                                 Fax: 212 704 6288
                                                                 Email: eric.unis@troutmansanders.com
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Joshua Alexander Berman**
                                                                 Troutman Sanders LLP (NYC)
                                                                 405 Lexington Avenue
                                                                 New York, NY 10174
                                                                 212–704–6000
                                                                 Fax: 212–704–6288
                                                                 Email: joshua.berman@troutmansanders.com
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Mary Jane Yoon**
                                                                 Troutman Sanders LLP (NYC)
                                                                 405 Lexington Avenue
                                                                 New York, NY 10174
                                                                 212 704 6204
                                                                 Fax: 212 704 8392
                                                                 Email: maryjane.yoon@troutmansanders.com
                                                                 *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
| --- | --- | --- |
| 10/03/2013 | 1 | COMPLAINT against Paris Baguette America, Inc. (Filing Fee $ 350.00, Receipt Number 465401078089)Document filed by Devorah Cruper – Weinmann.(jd) (Entered: 10/03/2013) |
| 10/03/2013 | | SUMMONS ISSUED as to Paris Baguette America, Inc. (jd) (Entered: 10/03/2013) |
| 10/03/2013 | | Magistrate Judge Gabriel W. Gorenstein is so designated. (jd) (Entered: 10/03/2013) |
| 10/03/2013 | | Case Designated ECF. (jd) (Entered: 10/03/2013) |
| 10/03/2013 | 2 | STANDING ORDER IN RE PILOT PROJECT REGARDING CASE MANAGEMENT TECHNIQUES FOR COMPLEX CIVIL CASES IN THE SOUTHERN DISTRICT OF NEW YORK (See M–10–468 Order filed November 1, 2011). This case is hereby designated for inclusion in the Pilot Project Regarding Case Management Techniques for Complex Civil Cases in the Southern District of New York (the Pilot Project), unless the judge to whom this case is assigned determines otherwise. This case is designated for inclusion in the Pilot Project because it is a class action, an MDL action, or is in one of the following Nature of Suit categories: 160, 245, 315, 355, 365, 385, 410, 830, 840, 850, 893, or 950. The presiding judge in a case that does not otherwise qualify for inclusion in the Pilot Project may nevertheless designate the case for inclusion in the Pilot Project by issuing an order directing that the case be included in the Pilot Project. The description of the Pilot Project, including procedures to be followed, is attached to this Order. (Signed by Judge Loretta A. Preska on 10/31/2011) (jd) (Entered: 10/03/2013) |

| 10/04/2013 | 3 | ORDER: This case was previously designated for inclusion in the Pilot Project Regarding Case Management Techniques for Complex Civil Cases in the Southern District of New York (the "Pilot Project"), IT IS HEREBY ORDERED that designation is hereby vacated. (Signed by Judge Jed S. Rakoff on 10/4/2013) (js) (Entered: 10/04/2013) |
|---|---|---|
| 10/04/2013 | 4 | NOTICE OF COURT CONFERENCE: A conference will be held on October 22, 2013, at the United States Courthouse, 500 Pearl Street, New York, New York in Courtroom 14–B at 11:00 a.m. Initial Conference set for 10/22/2013 at 11:00 AM in Courtroom 14B, 500 Pearl Street, New York, NY 10007 before Judge Jed S. Rakoff. (Signed by Judge Jed S. Rakoff on 10/4/2013) (js) (Entered: 10/04/2013) |
| 10/24/2013 | | Minute Entry for proceedings held before Judge Jed S. Rakoff: Initial Pretrial Conference held on 10/24/2013. (Kotowski, Linda) (Entered: 11/05/2013) |
| 11/11/2013 | 5 | NOTICE OF APPEARANCE by Mary Jane Yoon on behalf of Paris Baguette America, Inc. (Yoon, Mary Jane) (Entered: 11/11/2013) |
| 11/11/2013 | 6 | NOTICE OF APPEARANCE by Eric L. Unis on behalf of Paris Baguette America, Inc. (Unis, Eric) (Entered: 11/11/2013) |
| 11/14/2013 | | Minute Entry for proceedings held before Judge Jed S. Rakoff: Initial Pretrial Conference held on 11/14/2013. (Kotowski, Linda) (Entered: 11/21/2013) |
| 11/18/2013 | 7 | CIVIL CASE MANAGEMENT PLAN: This case is to be tried to a jury. Amended Pleadings due by 12/17/2013. Joinder of Parties due by 12/23/2013. Motions due by 3/7/2014. Responses due by 3/21/2014 Replies due by 3/28/2014. Deposition due by 2/28/2014. Discovery due by 2/28/2014. Oral Argument set for 1/3/2014 at 04:00 PM before Judge Jed S. Rakoff. Final Pretrial Conference set for 4/7/2014 at 04:00 PM before Judge Jed S. Rakoff. Motion to dismiss– moving papers–by November 18, 2013. Response by Plaintiff–by December 6, 2013. Reply by defendants–by December 16, 2013. Oral Argument on–January 3, 2014 at 4:00 p.m. (Signed by Judge Jed S. Rakoff on 11/14/2013) (js) (Entered: 11/18/2013) |
| 11/18/2013 | 8 | NOTICE OF APPEARANCE by Joshua Alexander Berman on behalf of Paris Baguette America, Inc. (Berman, Joshua) (Entered: 11/18/2013) |
| 11/18/2013 | 9 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Paris Baguette America, Inc.(Berman, Joshua) (Entered: 11/18/2013) |
| 11/18/2013 | 10 | MOTION to Dismiss. Document filed by Paris Baguette America, Inc. Responses due by 12/6/2013(Berman, Joshua) (Entered: 11/18/2013) |
| 11/18/2013 | 11 | MEMORANDUM OF LAW in Support re: 10 MOTION to Dismiss.. Document filed by Paris Baguette America, Inc. (Berman, Joshua) (Entered: 11/18/2013) |
| 11/18/2013 | | Set/Reset Deadlines: Ready for Trial by 4/14/2014. (js) (Entered: 12/10/2013) |
| 11/22/2013 | 12 | **FILING ERROR – DEFICIENT DOCKET ENTRY – FILER ERROR –** RULE 26 DISCLOSURE.Document filed by Paris Baguette America, Inc.(Yoon, Mary Jane) Modified on 11/26/2013 (kj). (Entered: 11/22/2013) |
| 11/25/2013 | 13 | RULE 26 DISCLOSURE.Document filed by Devorah Cruper – Weinmann.(Hamill, Bridget) (Entered: 11/25/2013) |
| 12/06/2013 | 14 | MEMORANDUM OF LAW in Opposition re: 10 MOTION to Dismiss.. Document filed by Devorah Cruper – Weinmann. (Hamill, Bridget) (Entered: 12/06/2013) |
| 12/16/2013 | 15 | REPLY MEMORANDUM OF LAW in Support re: 10 MOTION to Dismiss.. Document filed by Paris Baguette America, Inc. (Yoon, Mary Jane) (Entered: 12/16/2013) |
| 12/16/2013 | 16 | AFFIDAVIT of Dylan Y. Ahn in Support re: 10 MOTION to Dismiss.. Document filed by Paris Baguette America, Inc. (Yoon, Mary Jane) (Entered: 12/16/2013) |
| 12/16/2013 | 17 | AFFIRMATION of Mary Jane Yoon, Esq. in Support re: 10 MOTION to Dismiss.. Document filed by Paris Baguette America, Inc. (Attachments: # 1 Exhibit "A": Redacted Image of Receipt Plaintiff Received (Unredacted copy to be filed under |

| | | |
|---|---|---|
| | | seal), #_2 Exhibit "B": Gardner Complaint, #_3 Exhibit "C": Gardner Brief Opposing Defendant's Motion To Dismiss, #_4 Exhibit "D": Gardner Decision, #_5 Exhibit "E": Miller–Huggins Complaint, #_6 Exhibit "F": Miller–Huggins Brief Opposing Defendant's Motion To Dismiss, #_7 Exhibit "G": Miller–Huggins Decision, #_8 Exhibit "H": Komorowski Complaint, #_9 Exhibit "I": Komorowski Brief Opposing Defendant's Motion To Dismiss, #_10 Exhibit "J": Komorowski Decision, #_11 Exhibit "K": Seo Complaint, #_12 Exhibit "L": Seo Brief Opposing Defendant's Motion To Dismiss, #_13 Exhibit "M": Seo Decision)(Yoon, Mary Jane) (Entered: 12/16/2013) |
| 12/16/2013 | 18 | ORDER: Pursuant to this Court's telephonic Order of December 12,2013, the Court hereby grants defendant Paris Baguette America Inc. permission to file exhibits pertaining to its motion to dismiss under seal, to the extent that the documents contain protected or confidential information and provided that the defendant files redacted versions of such documents publicly. (Signed by Judge Jed S. Rakoff on 12/16/20113) (js) (Entered: 12/17/2013) |
| 12/16/2013 | | Minute Entry for proceedings held before Judge Jed S. Rakoff: Telephone Conference held on 12/16/2013. (Kotowski, Linda) (Entered: 01/10/2014) |
| 12/17/2013 | 19 | SEALED DOCUMENT placed in vault.(nm) (Entered: 12/17/2013) |
| 12/17/2013 | 20 | AMENDED REPLY MEMORANDUM OF LAW in Support re:_10 MOTION to Dismiss.. Document filed by Paris Baguette America, Inc. (Yoon, Mary Jane) (Entered: 12/17/2013) |
| 01/06/2014 | | Minute Entry for proceedings held before Judge Jed S. Rakoff: Oral Argument held on 1/6/2014 re:_10 MOTION to Dismiss. filed by Paris Baguette America, Inc. (Kotowski, Linda) (Entered: 02/07/2014) |
| 01/16/2014 | 21 | ORDER granting _10 Motion to Dismiss. After careful consideration of the parties' briefing and arguments, and for reasons to be explained in a forthcoming written opinion, the Court hereby grants defendant's motion to dismiss. The Court stays the case until it issues an opinion explaining the reasons for this Order, at which time entry of final judgment will be ordered. The Clerk of the Court is directed to close document number 10 in the docket of this case. (Signed by Judge Jed S. Rakoff on 1/15/2014) (ft) (Entered: 01/16/2014) |
| 01/16/2014 | | Case Stayed (ft) (Entered: 01/16/2014) |
| 02/19/2014 | 22 | TRANSCRIPT of Proceedings re: CONFERENCE held on 1/6/2014 before Judge Jed S. Rakoff. Court Reporter/Transcriber: Alena Lynch, (212) 805–0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/17/2014. Redacted Transcript Deadline set for 3/27/2014. Release of Transcript Restriction set for 5/23/2014.(Rodriguez, Somari) (Entered: 02/19/2014) |
| 02/19/2014 | 23 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 1/6/14 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(Rodriguez, Somari) (Entered: 02/19/2014) |
| 06/30/2014 | 24 | MEMORANDUM ORDER: The Court dismisses plaintiff's claims with prejudice because any attempt by plaintiff to replead her Complaint would be futile. The Court is convinced that plaintiff would not be able to plausibly plead a claim for willful violation of FACTA, even if she were given the opportunity to replead. Accordingly, the Court hereby grants defendant's motion to dismiss and directs entry of final judgment dismissing plaintiff's claims with prejudice. SO ORDERED. (Signed by Judge Jed S. Rakoff on 6/29/2014) (kgo) (Entered: 06/30/2014) |
| 06/30/2014 | | Transmission to Judgments and Orders Clerk. Transmitted re:_24 Order, to the Judgments and Orders Clerk. (kgo) (Entered: 06/30/2014) |

| 06/30/2014 | 25 | CLERK'S JUDGMENT: It is, ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Memorandum Order dated June 29, 2014, the Court dismissed Plaintiff's claims with prejudice because any attempt by Plaintiff to replead her Complaint would be futile. The Court is convinced that Plaintiff would not be able to plausibly plead a claim for willful violation of FACTA, even if she were given the opportunity to replead. The Court has granted Defendant's motion to dismiss and dismissed Plaintiff's claims with prejudice; accordingly, the case is closed. (Signed by Clerk of Court Ruby Krajick on 06/30/2014) (Attachments: # 1 Right to Appeal, # 2 Right to Appeal)(km) (Entered: 06/30/2014) |
| 06/30/2014 | | Terminate Transcript Deadlines (km) (Entered: 06/30/2014) |
| 07/02/2014 | | Minute Entry for proceedings held before Judge Jed S. Rakoff: Telephone Conference held on 7/2/2014. (Kotowski, Linda) (Entered: 07/21/2014) |
| 07/14/2014 | 26 | **FILING ERROR – DEFICIENT DOCKET ENTRY –** FIRST MOTION for Reconsideration re: 25 Clerk's Judgment, 24 Order, *with Certificate of Service*. Document filed by Devorah Cruper – Weinmann. (Attachments: # 1 Supplement Memorandum of law supporting motion for reconsideration, # 2 Text of Proposed Order Proposed order, # 3 Exhibit A – Proposed First Amended Complaint)(Lee, Peter) Modified on 7/15/2014 (db). (Entered: 07/14/2014) |
| 07/15/2014 | | **\*\*\*NOTE TO ATTORNEY TO RE–FILE DOCUMENT – DEFICIENT DOCKET ENTRY ERROR. Note to Attorney Peter Y Lee to RE–FILE Document 26 FIRST MOTION for Reconsideration re: 25 Clerk's Judgment, 24 Order, *with Certificate of Service*. ERROR(S): Supporting Documents are filed separately, each receiving their own document #. (db)** (Entered: 07/15/2014) |
| 07/15/2014 | 27 | FIRST MOTION for Reconsideration re: 25 Clerk's Judgment,, 24 Order,, *with Certificate of Service*. Document filed by Devorah Cruper – Weinmann.(Lee, Peter) (Entered: 07/15/2014) |
| 07/15/2014 | 28 | FIRST MEMORANDUM OF LAW in Support re: 27 FIRST MOTION for Reconsideration re: 25 Clerk's Judgment,, 24 Order,, *with Certificate of Service*. . Document filed by Devorah Cruper – Weinmann. (Attachments: # 1 Exhibit A – Proposed First Amended Complaint)(Lee, Peter) (Entered: 07/15/2014) |
| 07/15/2014 | 29 | **FILING ERROR – ELECTRONIC FILING OF NON–ECF DOCUMENT –** FIRST MOTION for Reconsideration re: 27 FIRST MOTION for Reconsideration re: 25 Clerk's Judgment, 24 Order, *with Certificate of Service. Proposed Order*. Document filed by Devorah Cruper – Weinmann.(Lee, Peter) Modified on 7/16/2014 (db). (Entered: 07/15/2014) |
| 07/16/2014 | | **\*\*\*NOTE TO ATTORNEY TO RE–FILE DOCUMENT – NON–ECF DOCUMENT ERROR. Note to Attorney Peter Y Lee to E–MAIL Document No. 29 Order to judgments@nysd.uscourts.gov. This document is not filed via ECF. (db)** (Entered: 07/16/2014) |
| 07/21/2014 | 30 | MEMORANDUM OF LAW in Opposition re: 27 FIRST MOTION for Reconsideration re: 25 Clerk's Judgment,, 24 Order,, *with Certificate of Service*. . Document filed by Paris Baguette America, Inc. (Yoon, Mary Jane) (Entered: 07/21/2014) |
| 09/03/2014 | 31 | MEMORANDUM ORDER denying 27 Motion for Reconsideration. Accordingly, the Court hereby denies plaintiff's motion for reconsideration. The Clerk of the Court is hereby directed to close document number 27 in the docket of this case. SO ORDERED.(Signed by Judge Jed S. Rakoff on 9/02/2014) (ama) (Entered: 09/03/2014) |
| 10/01/2014 | 32 | NOTICE OF APPEAL from 31 Order on Motion for Reconsideration, 25 Clerk's Judgment,, 24 Order,,. Document filed by Devorah Cruper – Weinmann. Filing fee $ 505.00, receipt number 0208–10162109. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. (Frank, Marvin) (Entered: 10/01/2014) |

A-6

| 10/01/2014 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 32 Notice of Appeal,. (nd) (Entered: 10/01/2014) |
| --- | --- | --- |
| 10/01/2014 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 32 Notice of Appeal, filed by Devorah Cruper – Weinmann were transmitted to the U.S. Court of Appeals. (nd) (Entered: 10/01/2014) |

A-7

JUDGE RAKOFF   13 CIV 7013   COURTESY COPY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEVORAH CRUPAR-WEINMANN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | ) ) ) ) ) |
| | Case No. _____ |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | |
| PARIS BAGUETTE AMERICA, INC. d/b/a PARIS BAGUETTE, | JURY TRIAL DEMANDED |
| Defendant. | |

RECEIVED
OCT - 3 2013
U.S.D.C. S.D.N.Y.
CASHIER

Plaintiff, Devorah Crupar-Weinmann, by her attorneys, states as follows for her Class

Action Complaint against Defendant Paris Baguette America, Inc. d/b/a Paris Baguette

("Defendant" or "Paris Baguette"):

### NATURE OF THE CASE

1.      This is a class action based upon Defendant's violation of the Fair and Accurate

Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C.

§1681, *et seq., as amended*.  FACTA is designed to protect credit and debit cardholders from

identity theft and fraud.  The statute prohibits merchants who accept credit cards or debit cards

from issuing electronically-generated receipts that display the expiration date or that display

more than the last five digits of the card number, thus limiting an identity thief's ability to obtain

the consumer's account information, among other things.

2.      Defendant has violated FACTA repeatedly by printing the expiration date on the

sales receipts.

3.      Plaintiff seeks, on behalf of herself and the class, statutory damages, punitive damages, costs, and attorneys fees, all of which are made expressly available by statute, 15 U.S.C. §1681, *et seq.*

## BACKGROUND

4.      FACTA, 15 U.S.C. §1681c(g)(1), states, in relevant part:

(g)  Truncation of credit card and debit card numbers

(1) ... **[N]o person** that accepts credit cards or debit cards for the transaction of business **shall print** more than the last 5 digits of the card number or **the expiration date** upon any receipt provided to the cardholder at the point of sale or transaction.   (Emphasis added.)

5.      FACTA gave merchants who accepted credit cards or debit cards up to three years to comply with its requirements, requiring full compliance no later than December 4, 2006. Pursuant to an amendment, 15 U.S.C. §1681n(d), full compliance with the "expiration date" component of FACTA was extended to June 3, 2008.

6.      The purpose of this "truncation requirement" is to prevent identity theft.

7.      Identity thieves commonly obtain credit card or debit card receipts that are lost or discarded, or through theft, and use the information to engage in unauthorized credit or debit transactions.

8.      The expiration date is almost always necessary for misuse of a credit card or debit card.

9.      Also, sophisticated identity thieves can find a credit card or debit card number using the expiration date and the last five digits of the card number, or more easily obtain sufficient information to use another's credit card or debit card.

**A-9**

10.     By failing to take the simple steps necessary to comply with FACTA, Defendant has deprived consumers of the protections that the statute was designed to confer, and exposes cardholders to increased risk of identity theft.

11.     Defendant's conduct was willful, knowing or reckless, and Defendant failed, and continues to fail, to protect Plaintiff, and all others similarly situated, against identity theft and credit card and debit card fraud by issuing electronically printed receipts displaying the entire expiration dates of its customers' credit and debit cards.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction under 28 U.S.C. §§1331 and 1337, and 15 U.S.C. §1681p, which provides that "An action to enforce any liability created under this title may be brought in any appropriate United States district court, without regard to the amount in controversy . . . ."

13.     Venue in this district is proper pursuant to 28 U.S.C. §1391 because Defendant transacts business in this District.

## PARTIES

14.     Plaintiff, Devorah Crupar-Weinmann, on September 19, 2013, purchased food items at Defendant's midtown Manhattan location, paid for the items with a credit card, received an electronically printed receipt displaying the expiration date, and was damaged thereby.

15.     Defendant Paris Baguette America, Inc. d/b/a Paris Baguette is a New Jersey corporation authorized to transact business within the State of New York.  Defendant owns and operates one restaurant in this District, as well as 4 others in the State of New York.  Defendant also owns and operates at least 15 other retail stores throughout the United States, including the states of California, New Jersey and Pennsylvania.

3

16.     At all relevant times, Defendant was a "person that accepts credit cards or debit cards for the transaction of business" within the meaning of FACTA.

## CLASS ALLEGATIONS

17.     This action is brought on behalf of Plaintiff individually and as a class action on behalf of all persons or entities to whom Defendant provided an electronically printed receipt at the point of sale or transaction, in a sale or transaction occurring after June 3, 2008, which receipt displayed the expiration date of the customer's credit card or debit card.  Excluded from the Class are the officers and directors of Defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendant has or had a controlling interest.

18.     Because Defendant has numerous restaurants that serve hundreds, if not thousands, of meals, joinder of all individual members would be impracticable.  While the exact number of Class members can only be determined by appropriate discovery, Plaintiff believes there are thousands of members of the Class.  Members of the Class may be identified from records maintained by Defendant and its credit card processing company and may be notified of the pendency of this action by United States mail.

19.     Plaintiff's claims are typical of the claims of the other members of the Class, as all members of the Class are similarly affected by Defendant's wrongful conduct in violation of federal law that is complained of herein.

20.     There are common questions of law and fact affecting members of the class, which common questions predominate over questions which may affect individual members. These include the following:

>     (a) Whether Defendant had a practice of issuing and providing customers with electronically printed receipts which show the expiration date;

4

(b) Whether Defendant's conduct was willful, knowing or reckless; and

(c) Whether Plaintiff and the other members of the class are entitled to statutory damages, punitive damages, costs, or attorneys fees for Defendant's acts and conduct.

21.     Plaintiff will fairly and adequately represent the class members.  Plaintiff has no interests that conflict with the interests of other class members.  Plaintiff has retained counsel competent and experienced in the prosecution of class action litigation.

22.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## FACTS

**FACTA**

23.     In 2003, FACTA was enacted in an effort to prevent identity theft and credit card fraud.  The statute makes it more difficult for identity thieves to obtain consumers' credit and debit card information by reducing the amount of information identity thieves could retrieve from found or stolen credit or debit card receipts.

24.     15 U.S.C. §1681c(g)(1) provides that:

> [N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

25.     There was, however, confusion as to whether a violation required printing both more than the last five digits and the expiration date, or if printing either violated the statute.

5

26.     In order to resolve the confusion, Congress unanimously passed, and the President signed, the Credit and Debit Card Receipt Clarification Act of 2007 (the "Clarification"), 15 U.S.C. §1681n(d).

27.     The Clarification recognized the confusion and stated that any merchant that had complied with the truncation requirement for credit card numbers on receipts, but left the expiration date on the receipt, would be in good faith compliance with the law.  Further, the Clarification was retroactive and affected cases pending at the time, excusing prior noncompliance with Section 1681c(g).

28.     The Clarification made clear, however, that going forward, noncompliance would be actionable.  Pursuant to 15 U.S.C. §1681n(d), full compliance with the "expiration date" component of FACTA was extended to June 3, 2008.

29.     FACTA details the civil liability for willful noncompliance:

§1681n.  Civil liability for willful noncompliance

(a) In general, any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of –

(1)

(A) Any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or

*        *        *

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of this action together with reasonable attorneys fees as determined by the court …

**Defendant's Violation Was Willful**

30.    In response to the passage of FACTA and the Clarification, businesses nationwide changed their debit and credit card processing machines so that the prohibited information would not be printed on receipts.

31.    VISA, MasterCard, the PCI Security Standards Council – a consortium founded by VISA, MasterCard, American Express, and JCB – companies that sell cash registers and other devices for the processing of credit card and debit card payments, and other entities informed Defendant about FACTA, including its specific requirements concerning the truncation of credit card and debit card numbers and prohibition of the printing of expiration dates, and Defendant's need to comply with same.

32.    FACTA requirements were also widely publicized among retailers.

33.    In addition, the card issuing organizations required compliance with FACTA by contract, in advance of FACTA's mandatory compliance date.  For example, the August 12, 2006, edition of "Rules for Visa Merchants" (p. 62), which is distributed to and binding upon all merchants that accept Visa-branded credit and debit cards, expressly requires that "only the last 4 digits of an account number should be printed on the customer's copy of the receipt" and the "expiration date should not appear at all."  These statements were accompanied by a picture of a receipt showing precisely what had to be removed.  VISA required compliance by July 1, 2006, five months ahead of the statutory deadline.

34.    Defendant's knowledge of the FACTA requirements is also evidenced by its change to the credit and debit card receipts to remove all but the last three digits of the card number.

## COUNT I

## <u>VIOLATION OF FACTA</u>

35.     Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

36.     Defendant accepts credit cards and debit cards in the course of transacting business with persons such as Plaintiff and the other class members.  In transacting such business, Defendant uses cash registers or other machines or devices that print receipts electronically for credit card and debit card transactions.

37.     After June 3, 2008, the deadline for compliance as extended by the Clarification, Defendant, at the point of sale or transaction, provided Plaintiff and the other class members with electronically printed receipts, each of which included the credit or debit card expiration date.

38.     Defendant knew of the truncation requirement and prohibition of the printing of expiration dates or was reckless by not knowing about the requirement and the prohibition, in light of the information readily available to it.

39.     Defendant accepts Discover, American Express, Visa and MasterCard branded credit and debit cards and, therefore, is a party to a contract requiring compliance with the foregoing requirements.

40.     Defendant's use of software, devices and machines that print receipts in violation of FACTA was willful, knowing or reckless.

8

**WHEREFORE**, Plaintiff requests the Court to enter judgment in favor of Plaintiff and the class members and against Defendant as follows:

    a.  Statutory damages of $100 to $1,000 per violation;

    b.  Attorneys fees, litigation expenses, and costs;

    c.  Such other and further relief as the Court may deem proper, including punitive damages.

Dated: New York, New York
       October 2, 2013

**FRANK & BIANCO LLP**

By: _____

Marvin L. Frank (MF1436)
Bridget V. Hamill (BH0207)
275 Madison Avenue, Suite 801
New York, New York 10016
(212) 682-1818 Telephone
(212) 682-1892 Facsimile
mfrank@frankandbianco.com
bhamill@frankandbianco.com

**NABLI & ASSOCIATES, P.C.**
60 East 42nd Street, Suite 1101
New York, New York 10165
(212) 808-0716 Telephone
(212) 808-0719 Facsimile
Khaled (Jim) El Nabli Jim_ElNabli@NabliLaw.com
Joseph H. Lilly JoeLilly@att.net
Alan J. Harris AlanHarrisEsq@aol.com
Peter Y. Lee Peter.Lee@LeeAdvocates.com

*Counsel for Plaintiff and the Class*

9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEVORAH CRUPAR-WEINMANN,

                                        Plaintiff,                    Civil Action No.:  13-cv-7013-JSR

           -against-

                                                                      Dated: December 16, 2013
PARIS BAGUETTE AMERICA, INC.
d/b/a PARIS BAGUETTE,

                                        Defendant.

### AFFIDAVIT OF DYLAN Y. AHN IN SUPPORT
### OF PARIS BAGUETTE'S MOTION TO DISMISS

           Dylan Y. Ahn, being duly sworn, deposes and states as follows:

           1.      I am the General Manager of Paris Baguette, America Inc. ("Paris Baguette"), the

Defendant in this action.  I have personal knowledge of the facts set forth in this Affidavit.

           2.      I have read the Plaintiff's Memorandum of Law In Opposition To Paris

Baguette's Motion To Dismiss Complaint.  In the Brief, the Plaintiff states that Paris Baguette

has issued receipts "over the course of many years at its 30 stores in four states."  See Reply

Brief, p. 2.

           3.      That representation is not correct.  Paris Baguette currently owns and operates

twelve stores in three states, located as follows: (1) Edison, NJ; (2) Fort Lee, NJ; (3) Palisades

Park, NJ; (4) Ridgefield, NJ; (5) Francis Lewis Boulevard, Bayside, NY; (6) Northern

Boulevard, Bayside, NY; (7) 39th Avenue, Flushing, NY; (8) Northern Boulevard, Flushing, NY;

(9) 7th Avenue, Manhattan, NY; (10) 32nd Street, Manhattan, NY; (11) Lexington Avenue,

Manhattan, NY; and (12) Elkins Park, PA.  There is a thirteenth store, located in Doraville, GA,

that is scheduled to open on December 19, 2013.

4.      There are other Paris Baguette stores but they are owned by entities that are not

parties to this action.

_____

Dylan Y. Ahn

Sworn to and subscribed before me,
this **16th** day of December 2013

_____
Notary Public

KANGBAE PARK
Commission # 2328964
Notary Public, State of New Jersey
My Commission Expires
May 11, 2015

**A-18**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEVORAH CRUPAR-WEINMANN,<br><br>                                         Plaintiff,<br><br>             -against-<br><br>PARIS BAGUETTE AMERICA, INC.<br>d/b/a PARIS BAGUETTE,<br><br>                                         Defendant. | Civil Action No.:  13-cv-7013-JSR<br><br><br>**Affirmation of Mary Jane Yoon,**<br>**Esq. In Support of Paris Baguette's**<br>**Motion To Dismiss** |

MARY JANE YOON, an attorney duly admitted to practice before the courts of the State of New York affirms as follows under penalty of perjury:

1.      I am an associate at the law firm of Troutman Sanders LLP, attorneys for Defendant Paris Baguette America, Inc. ("Paris Baguette") in the above-captioned action.  I submit this Declaration and the attached exhibits in support of Paris Baguette's Motion To Dismiss Plaintiff Devorah Crupar-Weinmann's Complaint under Fed. R. Civ. P. 12(b)(6).

2.      Attached as Exhibit "A" is a true and correct copy of the .jpg image of the receipt that Plaintiff's counsel sent to me via email on November 15, 2013.  In the email, Plaintiff's counsel described the .jpg as "a copy of a Paris Baguette receipt received by the plaintiff."

3.      Attached as Exhibit "B" is a true and correct copy of the Complaint filed in Gardner v. Appleton Baseball Club, Inc., No. 09-CV-705, 2010, U.S. Dist. LEXIS 31653 (E.D. Wis. Mar. 31, 2010).

4.      Attached as Exhibit "C" is a true and correct copy of the plaintiff's Memorandum of Law In Opposition to Defendant's Motion To Dismiss filed in Gardner v. Appleton Baseball Club, Inc., No. 09-CV-705, 2010, U.S. Dist. LEXIS 31653 (E.D. Wis. Mar. 31, 2010).

5.      Attached as Exhibit "D" is a true and correct copy of the Decision and Order of the Court in Gardner v. Appleton Baseball Club, Inc., No. 09-CV-705, 2010, U.S. Dist. LEXIS 31653 (E.D. Wis. Mar. 31, 2010).

6.      Attached as Exhibit "E" is a true and correct copy of the Complaint filed in Miller-Huggins v. SpaClinic, LLC, No. 09-C-2677, 2010 U.S. Dist. LEXIS 23418 (N.D. Ill. Mar. 11, 2010).

7.      Attached as Exhibit "F" is a true and correct copy of the plaintiff's Response to Defendant's Motion to Dismiss filed in Miller-Huggins v. SpaClinic, LLC, No. 09-C-2677, 2010 U.S. Dist. LEXIS 23418 (N.D. Ill. Mar. 11, 2010).

8.      Attached as Exhibit "G" is a true and correct copy of the Memorandum Opinion of the Court in Miller-Huggins v. SpaClinic, LLC, No. 09-C-2677, 2010 U.S. Dist. LEXIS 23418 (N.D. Ill. Mar. 11, 2010).

9.      Attached as Exhibit "H" is a true and correct copy of the Complaint filed in Komorowski v. All-American Indoor Sports, Inc., No. 13-2177, 2013 U.S. Dist. LEXIS 125747 (D.Kan. Sept. 4, 2013).

10.     Attached as Exhibit "I" is a true and correct copy of the plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss filed in Komorowski v. All-American Indoor Sports, Inc., No. 13-2177, 2013 U.S. Dist. LEXIS 125747 (D.Kan. Sept. 4, 2013).

11.     Attached as Exhibit "J" is a true and correct copy of the Memorandum and Order of the Court in Komorowski v. All-American Indoor Sports, Inc., No. 13-2177, 2013 U.S. Dist. LEXIS 125747 (D.Kan. Sept. 4, 2013).

12.    Attached as Exhibit "K" is a true and correct copy of the Complaint filed in <u>Seo v. CC CJV American Holdings, Inc.,</u> No. CV-11-05031, 2011 U.S. Dist. LEXIS 120246 (C.D. Cal. Oct. 18, 2011).

13.    Attached as Exhibit "L" is a true and correct copy of the plaintiff's Memorandum of Law In Opposition To Defendant's Motion to Dismiss filed in <u>Seo v. CC CJV American Holdings, Inc.,</u> No. CV-11-05031, 2011 U.S. Dist. LEXIS 120246 (C.D. Cal. Oct. 18, 2011).

14.    Attached as Exhibit "M" is a true and correct copy of the Order Granting Defendant's Motion To Dismiss in <u>Seo v. CC CJV American Holdings, Inc.,</u> No. CV-11-05031, 2011 U.S. Dist. LEXIS 120246 (C.D. Cal. Oct. 18, 2011).


Dated: December 16, 2013
          New York, NY


_____
Mary Jane Yoon, Esq.

A-21

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## GREEN BAY DIVISION

| | |
|---|---|
| MICHAEL S. GARDNER, individually and on behalf of a class of similarly situated persons, | |
| Plaintiff, | |
| v. | Case No. |
| APPLETON BASEBALL CLUB, INC. d/b/a WISCONSIN TIMBER RATTLERS, | |
| Defendant. | |

### CLASS ACTION COMPLAINT

NOW comes Plaintiff, MICHAEL S. GARDNER, by and through his attorneys, and complains of Defendant, APPLETON BASEBALL CLUB, INC. d/b/a WISCONSIN TIMBER RATTLERS, and states as follows:

1.      Plaintiff MICHAEL S. GARDNER ("Plaintiff") brings this action to secure redress for himself and others similarly situated for violations by APPLETON BASEBALL CLUB, INC. d/b/a WISCONSIN TIMBER RATTLERS ("Defendant") of the Fair and Accurate Transactions Act of 2003 ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA").

2.      Specifically, Plaintiff alleges that on credit or debit card receipts provided at the point of sale or transaction, Defendant printed the card's expiration date.

3.      One provision of FACTA, codified as 15 U.S.C. § 1681c(g)(1), provides: "No person that accepts credit cards or debit cards for the transaction of business shall print … the expiration date upon any receipt provided to the cardholder at the point of sale or transaction."

4.      The purpose of this "truncation requirement" is to prevent identity theft. The Federal Trade Commission estimates that over 9 million persons each year have their identity assumed by criminals for financial gain, causing losses in excess of $50 billion.

5.      One common method identity thieves use is to obtain credit card receipts that are stolen, lost, or discarded and use the information on them to engage in transactions. Identity thieves who do this are known as "carders" or "dumpster divers." In fact, this "low tech" method is more common than the use of sophisticated electronic wizardry to obtain the information. *See, e.g.*, Robin Sidel, "Identity Theft – Unplugged – Despite the High-Tech Treat, When You Get Ripped Off It's Usually Still the Old Way," Wall Street Journal, Oct. 5, 2006, p. B1.

6.      To curb this means of identity theft, Congress prohibited merchants who accept credit cards and debit cards from issuing electronically generated receipts that display the expiration date of the card.

7.      The Fair and Accurate Transactions Act of 2003 was enacted on December 4, 2003. FACTA is part of the FCRA, 15 U.S.C. § 1681, *et seq.*, and gave merchants who accept credit or debit cards up to three years to comply with the truncation requirements. 15 U.S.C. § 1681c(g)(3)(A)-(B). FACTA required full compliance with its provisions no later than December 4, 2006 for all machines in use and in all transactions. 15 U.S.C. § 1681c(g)(3)(A).

8.      On June 3, 2008, Congress enacted the Credit and Debit Card Receipt Clarification Act of 2007 ("Clarification Act"). The Clarification Act amended the FCRA "to make technical corrections to the definition of willful noncompliance with respect to violations involving the printing of an expiration date on certain credit and debit card receipts before the date of the enactment of this Act." *See* 122 Stat. 1565 (June 3, 2008).

9.      The Clarification Act amended the FCRA (15 U.S.C. § 1681n) by adding the

following new subsection:

> (d) CLARIFICATION OF WILLFUL NONCOMPLIANCE.--For the purposes of this section, any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and the date of the enactment of this subsection [June 3, 2008] but otherwise complied with the requirements of section 605(g) for such receipt shall not be in willful noncompliance with section 605(g) by reason of printing such expiration date on the receipt.

10.     Defendant has willfully violated this law and failed to protect Plaintiff (and others similarly situated) against identity theft and credit card and debit card fraud by failing to comply with the truncation requirement (*i.e.,* continuing to print the expiration date on receipts issued to debit card and credit card cardholders transacting business with Defendant) after June 3, 2008.

11.     By printing their protected, private information on receipts, Defendant invaded the privacy of Plaintiff and the other class members.

12.     Plaintiff brings this action against Defendant based on Defendant's violation of 15 U.S.C. § 1681c(g)(1). Plaintiff seeks statutory damages, attorneys' fees, costs, and such other relief as the Court deems proper.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Under 15 U.S.C. § 1681p (FCRA), "[a]ctions to enforce liability … may be brought … in any … court of competent jurisdiction …."

14.     Venue is proper in this Court because, on information and belief, Defendant does business within this judicial District and Division by maintaining a minor league baseball team and a principal place of business in Appleton, Outagamie County, Wisconsin. Defendant is a Wisconsin corporation.

3

**PARTIES**

15.     Plaintiff, MICHAEL S. GARDNER, resides in Lake County, Illinois.

16.     Defendant, APPLETON BASEBALL CLUB, INC., is a Wisconsin corporation that operates a minor league baseball team under the name WISCONSIN TIMBER RATTLERS in Appleton, Wisconsin.

17.     Defendant is a "person that accepts credit cards or debit cards for the transaction of business" within the meaning of FACTA.

**FACTS**

18.     On June 11, 2009 – after the truncation requirement became effective – Plaintiff received at the Wisconsin Timber Rattlers' stadium in Appleton, Wisconsin, a computer-generated receipt that displayed the expiration date of Plaintiff's credit card.

**CLASS ALLEGATIONS**

19.     Plaintiff brings this action on behalf of a class of similarly situated persons pursuant to FRCP 23(b)(3).

20.     The class includes all persons to whom Defendant provided an electronically printed receipt at the point of transaction after June 3, 2008, which receipt displayed the expiration date of the cardholder's credit card or debit card. Excluded from the Class are Defendant's officers and directors, Plaintiff's counsel, and any Judge or Justice presiding over this action.

21.     The class is so numerous that joinder of all individual members in one action would be impracticable.

22.     On information and belief, there are over 200 other persons to whom Defendant provided an electronically printed receipt at the point of transaction after June 3, 2008, which receipt displayed the expiration date of the cardholder's credit card or debit card.

23.     There are common questions of law or fact affecting all members of the class, and those common questions predominate over questions that may affect individual members. These include the following:

     a.     Whether Defendant issued transaction receipts failing to comply with FACTA's expiration date truncation requirement after June 3, 2008;

     b.     Whether Defendant had a practice of providing customers with transaction receipts that failed to comply with the expiration date truncation requirement after June 3, 2008;

     c.     Whether Defendant thereby violated FACTA; and

     d.     Whether Defendant's conduct was knowing.

24.     Plaintiff will fairly and adequately represent the class members. Plaintiff has no interests that are adverse to or that conflict with the interests of the class members. Plaintiff has retained counsel experienced in the conduct of class actions.

25.     A class action is an appropriate method for the fair and efficient resolution of this controversy. Individual actions are economically infeasible and impractical.

## <u>VIOLATION ALLEGED</u>

26.     Defendant violated 15 U.S.C. § 1681c(g)(1), which provides: "No person that accepts credit cards or debit cards for the transaction of business shall print … the expiration date upon any receipt provided to the cardholder at the point of sale or transaction."

27.     Defendant accepts credit cards and/or debit cards in the course of transacting business with persons such as Plaintiff and the class members. In transacting such business,

5

Defendant uses cash registers and/or other machines or devices that electronically print receipts for credit card and/or debit card transactions.

28.     After June 3, 2008, Defendant, at the point of transaction, provided Plaintiff and each class member with one or more electronically printed receipts, on each of which Defendant failed to comply with the truncation requirement.

29.     FACTA was enacted in 2003 and gave merchants who accept credit card and/or debit cards several years to comply with its requirements.

30.     The Clarification Act was enacted on June 3, 2008.

31.     Defendant knew or should have known of the truncation requirement, especially by June 3, 2008.

32.     The FTC has issued rules governing interpretation of the statute, which state in relevant part:

> According to the federal Fair and Accurate Credit Transaction Act (FACTA), the electronically printed credit and debit card receipts you give your customers must shorten – or truncate – the account information. … For example, a receipt that truncates the credit card number and deletes the expiration date could look like this:

> ACCT: ***********12345

*See* Bureau of Consumer Protection, Federal Trade Commission, *Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts* (May 2007).

33.     The cost of truncating credit and debit account numbers and expiration dates is minimal.

34.     Most of Defendant's business peers and competitors readily brought their credit and debit card receipt printing processes into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement. Defendant could have

6

readily done the same.

35.     FACTA creates a statutory right of privacy.

36.     Defendant made known to its staff and possibly others Plaintiff's private card information, thereby violating Plaintiff's statutory right of privacy. By publishing Plaintiff's private credit card information to Defendant's staff and others, Defendant violated Plaintiff's right of privacy. Defendant similarly violated the privacy rights of other class members.

37.     Defendant recklessly disregarded FACTA's requirements and continued to use cash registers or other machines or devices that print receipts in violation of FACTA.

38.     Therefore, Defendant is liable to Plaintiff and the other class members for, among other things, "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a).


WHEREFORE, Plaintiff, MICHAEL S. GARDNER, requests that the Court enter judgment in favor of Plaintiff and the class members and against Defendant, APPLETON BASEBALL CLUB, INC. d/b/a WISCONSIN TIMBER RATTLERS, as follows:

a.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

b.     For statutory damages of $100 to $1000 per violation;

c.     For attorney's fees, litigation expenses and costs; and

d.     For such other and further relief as the Court may deem proper, including punitive damages.

Dated at Milwaukee, Wisconsin, this 17th day of July, 2009.

s/ Charles H. Barr
_____
Charles H. Barr SBW # 1004802
One of Plaintiff's Attorneys
CROEN & BARR LLP
250 East Wisconsin Avenue # 1550
Milwaukee, WI 53202
Telephone: (414) 226-2080
Fax: (414) 226-2070
E-mail: cbarr@croenbarr.com

<u>OF COUNSEL</u>:
Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: (847) 368-1500
Fax: (847) 368-1501
E-mail: bwanca@andersonwanca.com

Phillip A. Bock
BOCK & HATCH, LLC
134 North LaSalle Street, Suite 1000
Chicago, IL 60602
Telephone: (312) 658-5500
Fax: (312) 658-5555
E-mail: phil@bockhatchllc.com

8

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

Place an X in the appropriate box:   ☒ Green Bay Division      ☐ Milwaukee Division

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| MICHAEL S. GARDNER, individually and on behalf of a class of similarly situated persons | APPLETON BASEBALL CLUB, INC. d/b/a WISCONSIN TIMBER RATTLERS |
| **(b)** County of Residence of First Listed Plaintiff   Lake County, IL<br>(EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant _____<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
| **(c)** Attorney's (Firm Name, Address, and Telephone Number)<br>Charles H. Barr, 250 East Wisconsin Avenue, Suite 1550, Milwaukee, WI 53202, (414) 226-2080 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☒ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury - Med. Malpractice<br>☐ 365 Personal Injury - Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br>**LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☒ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate Sentence<br>Habeas Corpus:<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 463 Habeas Corpus - Alien Detainee<br>☐ 465 Other Immigration Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. §1681c
Brief description of cause:
Defendant issued transaction receipts failing to comply with FACTA's expiration date truncation requirement.

**VII. REQUESTED IN COMPLAINT:**
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 100-1,000 per class member
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

**VIII. RELATED CASE(S) IF ANY** (See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE   July 14, 2009
SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

A-31

# United States District Court

## EASTERN DISTRICT OF WISCONSIN

Green Bay Division

MICHAEL S. GARDNER, individually and

on behalf of a class of similarly situated persons,

V.

APPLETON BASEBALL CLUB, INC.

d/b/a WISCONSIN TIMBER RATTLERS

### SUMMONS IN A CIVIL CASE

CASE NUMBER:

TO:     (Name and Address Defendant)

Appleton Baseball Club, Inc. d/b/a Wisconsin Timber Rattlers
Rob Zerjav, Registered Agent
2400 N. Casaloma Dr.
Appleton, WI 54915

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (Name and Address)

Charles H. Barr
Croen & Barr LLP
250 East Wisconsin Avenue
Suite 1550
Milwaukee, WI 53202

an answer to the complaint which is served on you with this summons, within ___20___ days after service of this summons on you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  Any answer that you serve on the parties to this action must filed with the Clerk of this Court within a reasonable period of time after service.

JON W. SANFILIPPO
CLERK                                                                              DATE

(BY)  DEPUTY CLERK

A-32

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | |
|---|---|
| Service of the Summons and complaint was made by me[1] | DATE |
| NAME OF SERVER | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant.  Place where served: _____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left:_____

☐ Returned unexecuted: _____

☐ Other (specify): _____

### STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____        _____
            *Date*                  *Signature of Server*

                                    _____
                                    *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION**

MICHAEL S. GARDNER, individually and as )
the representative of a class of similarly- )
situated persons, )
            )
      Plaintiff, )
            )   No. 09-C-0705
            )
   v. )
            )
APPLETON BASEBALL CLUB, INC., d/b/a )
WISCONSIN TIMBER RATTLERS, )
            )
      Defendant. )

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S
CLASS ACTION COMPLAINT**

   Plaintiff, Michael S. Gardner (hereafter "Plaintiff" or "Gardner"), by his

attorneys, submits this response in opposition to Defendant's Rule 12(b)(6)

Motion to Dismiss Plaintiff's Class Action Complaint.

**INTRODUCTION**

   Plaintiff has alleged that Defendant has violated FACTA by printing

prohibited credit/debit card information on receipts.  Plaintiff's factual

allegations raise his right to relief beyond a speculative level.  He has

sufficiently pleaded his claim within the requirements outlined by the Supreme

Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  The Court should

deny Defendant's motion.

**LEGAL STANDARD**

   On a motion to dismiss brought pursuant to Federal Rule of Civil

1

Procedure 12(b)(6), the well-pleaded allegations of the complaint must be accepted as true and the Court must draw all reasonable inferences in favor of plaintiff. *McMillan v. Collection Prof'ls Inc.*, 455 F.3d 754, 758 (7th Cir. 2006).

Defendant declares that "notice pleading is dead." (Doc. 7, pp. 4-5.) The Court of Appeals for the Seventh Circuit very recently declared otherwise: "Rule [8(a)] reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, No. 08-4286, --- F.3d ----, 2009 WL 2535731, *4 (7th Cir. Aug. 20, 2009) (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002)).  The *Brooks* court explained as follows:

> In *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Court turned its attention to what was required of plaintiffs at the pleading stage. It concluded that plaintiffs' '[f]actual allegations must be enough to raise a right to relief above the speculative level.' *Id.* at 555, 127 S.Ct. 1955. The Court was careful to note that this did not impose a probability requirement on plaintiffs: 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.' *Id.* at 556, 127 S.Ct. 1955.  The Court did require, however, that the plaintiffs' claim be "plausible."  In other words, 'it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations. *Id.* [*Brooks*, 2009 WL 2535731 at *5.]

"Any doubt that *Twombly* had repudiated the general notice-pleading regime of Rule 8 was put to rest two weeks later, when the Court issued *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)." *Id.* at *5. "*Erickson* reiterated that '[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon

which it rests.'"  *Id.*  Notice pleading is not "dead" and Plaintiff's Complaint adequately alleges the facts and elements of his claims.

## ARGUMENT

With facts and pleadings similar to Plaintiff's complaint, many FACTA complaints within the Seventh Circuit have withstood Rule 12(b)(6) motions. *E.g., Iosello v. Leiblys, Inc.*, 502 F. Supp. 2d 782 (N.D. Ill. 2007) (Der-Yeghiayan, J.); *Harris v. Wal-Mart Stores, Inc.*, No. 07 CV 2561, 2007 WL 3046162 (N.D. Ill. Oct. 10, 2007) (Darrah, J.); *Follman v. Hospitality Plus of Carpentersville, Inc.*, 532 F. Supp. 2d 960 (N.D. Ill. 2007) (Moran, J.); *Troy v. Home Run Inn, Inc.*, No. 07 C 4331, 2008 WL 1766526 (N.D. Ill. April 14, 2008); and *Follman v. Village Squire, Inc.*, No. 07 C 3767, 2007 WL 4522614 (N.D. Ill. Dec. 18, 2007) (Kendall, J.).

Federal courts throughout the United States are in accord.  *E.g., Steinberg v. Stich & Craft, Inc.*, No. 09-60660-CIV, 2009 WL 2589142 (S.D. Fla. Aug. 18, 2009); *Bauer v. Shell Factory, LC,* No. 2:08-cv-68-FtM-29SPC, 2008 WL 2261764 (M.D. Fla. May 30, 2008); *In re The TJX Companies, Inc.*, MDL No. 1853, 2008 WL 2020375 (D. Kan. May 9, 2008); *Ramirez v. Midwest Airlines, Inc.*, 537 F. Supp. 2d 1161 (D. Kan. 2008); *Arcilla v. Adidas Promotional Retail Operations, Inc.,* 488 F. Supp. 2d 965 (C.D.Cal.2007); *Aeschbacher v. California Pizza Kitchen, Inc.,* No. CV 07-215, 2007 WL 1500853 (C.D.Cal. Apr. 3, 2007); *Pirian v. In-N-Out Burgers,* No. SA CV 06-1251, 2007 WL 1040864 (C.D. Cal. Apr. 5, 2007); *Lopez v. The Gymboree Corp.,* No. C 07-0087, 2007 WL 1690886 (C.D. Cal. June 8, 2007); *Korman v. The Walking Co.,* 503 F. Supp. 2d 755

3

(E.D. Pa. 2007).

Indeed, after finding the claims adequately pleaded, many district courts have certified classes involving FACTA receipt claims like Plaintiff's.  *E.g.*, *Redmon v. Uncle Julio's of Illinois, Inc.*, 249 F.R.D. 290 (N.D. Ill. 2008) (Castillo, J.); *Matthews v. United Retail, Inc.*, 248 F.R.D. 210 (N.D. Ill. 2008) (Castillo, J.); *Meehan v. Buffalo Wild Wings, Inc.*, 249 F.R.D. 284 (N.D. Ill. 2008) (Lindberg, J.); *Cicilline v. Jewel Food Stores, Inc.*, 542 F. Supp. 2d 831 (N.D. Ill. 2008) (Dow, J.); *Harris v. Best Buy Co., Inc.*, 254 F.R.D. 82 (N.D. Ill. 2008) (St. Eve, J.); *Shurland v. Bacci Cafe & Pizzeria on Ogden Inc.*, No. 08 CV 2259, --- F.R.D. ----, 2009 WL 2567913 (N.D. Ill. Aug. 19, 2009)(Pallmeyer, J.); *Troy v. Red Lantern Inn, Inc.*, 07 C 2418, 2007 WL 4293014 (N.D. Ill. Dec. 4, 2007) (Aspen, J.); *Halperin v. Interpark Inc.*, No. 07 C 2161, 2007 WL 4219419 (N.D. Ill. Nov. 29, 2007) (Bucklo, J.); *Beringer v. Standard Parking Corp.*, Nos. 07 C 5027, 07 C 5119, 2008 WL 4390626 (N.D. Ill. Sept. 24, 2008) (Pallmeyer, J.); *Harris v. Circuit City Stores, Inc.*, 07 C 2512, 2008 WL 400862 at *6 (N.D. Ill. Feb. 7, 2008) (Schenkier, J.).

I.    **Plaintiff has adequately pleaded "willfulness."**

Defendant argues that Plaintiff has failed to "sufficiently plead the willful conduct required" under FACTA. (Doc. 7, pp. 5-7.)  Defendant argues, "under the heightened *Twombly/Ashcroft* pleading standard, plaintiff must satisfy the high burden of *Safeco* to show a plausible claim of recklessness.  He has not done so." (Doc. 7, p. 6.)  Defendant is incorrect.

"Willfulness" includes both reckless and knowing violations of the

4

statute.[1] *Safeco Ins. Co. of America v. Burr*, 127 S.Ct 2201, 2208-09 (2007)
("We have said before that 'willfully' is a 'word of many meanings whose
construction is often dependent on the context in which it appears' ... [W]here
willfulness is a statutory condition of civil liability, we have generally taken it to
cover not only knowing violations of a standard, but reckless ones as well." *Id.*
"The standard civil usage thus counsels reading the phrase 'willfully fails to
comply' in § 1681n(a) as reaching reckless FCRA violations....").

Here, Plaintiff sufficiently alleges willfulness.  The Complaint alleges that
FACTA was enacted in 2003 and gave merchants three years—to December 4,
2006—to come into compliance with the law's requirements before they could
be sued.  (Class Action Complaint, ¶¶ 7, 29-30.)  The Complaint alleges that on
June 3, 2008, the Credit and Debit Card Receipt Clarification Act of 2007 was
enacted by Congress "to make technical corrections to the definition of willful
noncompliance with respect to violations involving the printing of an expiration
date" on receipts printed before June 3, 2008.  *Id.*, ¶¶ 8, 30.  The Complaint
alleges that Defendant "willfully violated" the Clarification Act by printing
credit/debit card expiration dates on receipts after June 3, 2008.  *Id.*, ¶ 10.

The Complaint alleges that the FTC has enacted rules governing the
interpretation of FACTA.  *Id.*, ¶ 32 (quoting Bureau of Consumer Protection,

---

[1]      If a plaintiff can establish that the defendant "willfully" failed to comply
with the FACTA requirements, then he or she can recover actual or statutory
damages under the statute.  15 U.S.C. § 1681n(a) ("Any person who *willfully*
fails to comply with any requirement imposed under this subchapter with
respect to any consumer is liable....") (emphasis added).  The consumer may
get either actual damages or "damages of not less than $100 and not more
than $1000."  15 U.S.C. § 1681n(a)(1)(A).

Federal Trade Commission, *Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts* (May 2007)).  The Complaint alleges that "[m]ost of defendant's business peers and competitors readily brought their processes into compliance with FACTA by programming their credit card machines and devices to comply with the truncation requirement" and that "Defendant could have readily done the same" and at very "minimal" cost.  *Id.*, ¶¶ 33-34.

These allegations more than plausibly suggest that Defendant willfully violated the statute.

Defendant ignores the fact that many district judges, mostly after *Bell Atlantic v. Twombly*, have found allegations similar or identical to Plaintiff's to sufficiently allege a claim for a willful violation of Section 1681c(g).  *E.g.*, *In re The TJX Companies, Inc.*, 2008 WL 2020375, *2 n.5 ("Defendants' suggestion that *Bell Atlantic Corp.* [*v. Twombly*] somehow undermines this weight of authority is without merit. Each of the cases applied the plausibility standard set forth in that decision."); *Iosello*, 502 F. Supp. 2d at 784-85 ("[W]e conclude that sufficient allegations have been pled … that plausibly suggest that Leiblys willfully violated FACTA."); *Harris*, 2007 WL 3046162, *2 ("Harris's factual allegations clearly raise the right to relief above a speculative level; and his claim is, therefore, sufficiently plead, within the requirements outlined by the United States Supreme Court in *Bell Atlantic*."); *Home Run Inn*, 2008 WL 1766526, *2;  *Village Squire*, 542 F. Supp. 2d at 820 ("Follman has sufficiently alleged willfulness under this definition."); *Hospitality Plus*, 532 F. Supp. 2d at

6

963 ("We find these allegations plausibly suggest that defendant willfully violated the statute."); *Arcilla,* 488 F. Supp. 2d at 971-72 ("Adidas' Conduct Is Properly Alleged to be 'Willfull'" [sic]);  *Aeschbacher,* 2007 WL 1500853, *3-4 ("Defendant's argument lacks merit. ... Moreover, 'willfulness' is not an element of the underlying conduct at issue, but merely a prerequisite to the awarding of statutory, as opposed to actual, damages."); *Pirian*, 2007 WL 1040864, *7 ("Plaintiff has adequately alleged willfulness.");  *Lopez*, 2007 WL 1690886, *2 ("The court finds that these allegations of both knowing and reckless conduct are sufficient to allege 'willfulness' under the FACTA."); *Korman,* 503 F. Supp. 2d at 762 ("Plaintiff has adequately pled 'willfulness'"); *Steinberg*, 2009 WL 2589142, *3-4 ("Plaintiff's complaint sufficiently alleges willful noncompliance...."); *Bauer,* 2008 WL 2261764, *1;  *In re The TJX Companies, Inc.*, 2008 WL 2020375, *2-3 ("In fact, plaintiffs' allegations are typical of FACTA claims, and courts have almost uniformly rejected the argument that such allegations do not sufficiently allege willful violations of the statute." [citing numerous cases] ... In light of the overwhelming weight of authority which suggests that the complaint sufficiently alleges willful violations of FACTA, the Court overrules defendants' motion to dismiss for failure to state a claim.").

The Court should deny Defendant's motion because Plaintiff has sufficiently alleged Defendant's "willfulness" in violating FACTA.

## II.    Defendant's "Vagueness" Argument Must Fail.

Next, Defendant argues that the Court should dismiss Plaintiff's

7

complaint because FACTA is a vague and ambiguous statute.  (Doc. 7, pp. 8-
11.)  Defendant fails to cite any case supporting its proposition.[2]  Defendant's
argument has been universally rejected.  *See Korman,* 503 F. Supp. 2d at 760-
61 ("Every other court to consider the issue … has come to the conclusion that
the statute is not vague or ambiguous and that it means a business cannot
print 6+ digits or the expiration date."); *Iosello*, 502 F. Supp. 2d at 785-86
(holding FACTA is not vague and ambiguous); *Village Squire*, 2007 WL
4522614, *3 (same); *Hospitality Plus*, 532 F. Supp. 2d at 962-64; *Arcilla,* 488 F.
Supp. 2d at 971 ("Accordingly, the Court rejects Adidas' due process challenge
and holds that [FACTA] is not unconstitutionally vague.  Other courts to
consider the issue have uniformly agreed. [citations omitted]"); *Aeschbacher,*
2007 WL 1500853, *3 ("The Court rejects Defendant's argument that the
statute is vague and ambiguous."); *Pirian*, 2007 WL 1040864, *3; *Lopez*, 2007
WL 1690886, *3 ("[T]he court notes that other courts have uniformly rejected
similar vagueness challenges…."); *Ramirez*, 537 F. Supp. 2d at 1171 ("Midwest
is grasping to find a plausible ambiguity in the statute which simply does not

---

[2]     Instead, Defendant argues that this Court should follow two incorrectly
decided California cases holding that FACTA claims cannot be certified as class
actions and not involving Rule 12(b)(6) motions. (Doc. 7, p. 11 (citing *Soualian
v. International Coffee & Tea, LLC*, No. CV 07-502-RGK, 2007 U.S. Dist. LEXIS
44208 (C.D. Cal. June 11, 2007) and *Spikings v. Cost Plus, Inc.*, No. CV 06-
8125-JFW, 2007 U.S. Dist. LEXIS 44214, at *13 (C.D. Cal. May 25, 2007)).)
The Court should reject Defendant's invitation because a similar ruling would
make FACTA virtually unenforceable and serve as a license to violate its
prohibitions.  The numerous better-reasoned cases cited by Plaintiff have
rejected Defendant's approach.  Moreover, this Court is bound to follow *Murray
v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006) (reversing district court's
denial of class certification), whereas district courts in California are not bound
by the *Murray* decision.

exist. In doing so, it joins a host of other defendants in similar FACTA cases who have also argued for alternative meanings of the statute in an attempt to escape liability for failing to omit the required information from point-of-sale receipts.  And, like the courts in all of those other cases, this court flatly rejects Midwest's argument that the statute has any such alternative meaning.").

Defendant next argues that it "cannot have willfully violated FACTA where its actions are consistent with reasonable interpretations of the statute. If it was mistaken in its interpretation of the statute, so be it, but a mistaken interpretation of a vague statute does not rise to the level of willfulness."  (Doc. 7, p. 11.)  Numerous other defendants in FACTA cases have made this identical argument and lost.  *See Korman,* 503 F. Supp. 2d at 761-62 ("Defendant argues that because *its* reading is plausible, it could not have violated the statute. ... Defendant's reading ... has no basis in the statutory text; the statute is clear.  In addition, Defendant's reading ... has not garnered the support of even one court. [citations omitted]").  Further, this argument is premature because it requires the Court to go beyond the factual allegations contained in the complaint.  *Harris*, 2007 WL 3046162, *3; *Hospitality Plus*, 532 F. Supp. 2d at 963 ("We are only concerned with the sufficiency of the complaint and defendant's argument goes beyond the complaint, asking us to consider its interpretation of the statute.").

Finally, Defendant complains throughout its brief that this case is a form of "abuse" involving an "opportunist."  (Doc. 7, pp. 1-2.)  Defendant cites a parade of horribles including claims that this lawsuit will "eviscerate the

9

Timber Rattlers' capital and force it to close its doors" and "[h]undreds of jobs will be lost, and the local community will be devastated" even in the absence of "actual harm" to Plaintiff and the other class members.  *Id.*, p. 2.

These arguments are improper.  Defendant has offered no evidence about its finances and, Plaintiff believes, Defendant's insurance covers the class members' claims.

Defendant invites the Court to second-guess the judgment of Congress—an invitation the Court should readily decline.  As the district court in Florida explained, "[w]hile Congress may have believed the harm resulting from merchants printing credit/debit card expiration dates was slight, the clear terms of the statute place no limits on liability for acts occurring after June 3, 2008."  *Steinberg, supra*, 2009 WL 2589142, *3 (citing 15 U.S.C. § 1681n(d)).  Plaintiff's claims arise from the clear language of the statute.

In *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006), the appellate court reversed the district court's denial of class certification where "the district judge sought to curtail the aggregate damages for violations he deemed trivial."  *Id.* at 953-54.  "[I]t is not appropriate to use procedural devices to undermine laws of which a judge disapproves."  *Id.* at 954.

The *Murray* plaintiff had sued the defendant for technical violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq.  The district court denied class certification in part because the statutory damages allowed "aggregate damages for claims [the district court] deemed trivial."  434 F.3d at 953-54.  The district court reasoned, "If Murray and the proposed class

10

members were to prevail at trial, GMAC would face a potential liability in the billions of dollars for purely technical violations of the FCRA … Rule 23 is not intended to encourage such abuses of the class action mechanism.'" *Id.* at 953.  The Seventh Circuit rejected that reasoning, explaining as follows:

> The reason that damages can be substantial, however, does not lie in an "abuse" of Rule 23; it lies in the legislative decision to authorize awards as high as $1,000 per person, 15 U.S.C. § 1681n(a)(1)(A), combined with GMAC's decision to obtain the credit scores of more than a million persons.  [434 F.3d at 953.]
>
> \* \* \*
>
> Maybe suits such as this will lead Congress to amend the Fair Credit Reporting Act; maybe not.  While a statute remains on the books, however, it must be enforced rather than subverted.  An award that would be unconstitutionally excessive may be reduced, *see State Farm Mutual Automobile Insurance Co. v. Campbell,* 538 U.S. 408 (2003), but constitutional limits are best applied after a class has been certified.  Then a judge may evaluate the defendant's overall conduct and control its total exposure.  Reducing recoveries by forcing everyone to litigate independently-- so that constitutional bounds are not tested, because the statute cannot be enforced by more than a handful of victims--has little to recommend it.  [434 F.3d at 954.]

This Court is required to follow *Murray* and should deny Defendant's arguments to the contrary.

## **CONCLUSION**

Because Plaintiff's Class Action Complaint is sufficiently pleaded, the Court should deny Defendant's Motion to Dismiss pursuant to Rule 12(b)(6).

Dated at Milwaukee, Wisconsin, this 4th day of September, 2009.

11

s/ Charles H. Barr
_____
Charles H. Barr SBW # 1004802
One of Plaintiff's Attorneys
CROEN & BARR LLP
250 East Wisconsin Avenue # 1550
Milwaukee, WI 53202
Telephone: (414) 226-2080
Fax: (414) 226-2070
E-mail: cbarr@croenbarr.com

OF COUNSEL:
Brian J. Wanca
Ryan M. Kelly
ANDERSON + WANCA
3701 Algonquin Rd., Ste. 760
Rolling Meadows, IL  60008
Telephone:  (847) 368-1500
Fax: (847) 368-1501
E-mail: bwanca@andersonwanca.com

Phillip A. Bock
Robert M. Hatch
Tod A. Lewis
BOCK & HATCH, LLC
134 N. La Salle St.,  Suite 1000
Chicago, IL  60602
Telephone:  (312) 658-5500
Fax: (312) 658-5555
E-mail: phil@bockhatchllc.com

12

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION**

| | | |
|---|---|---|
| MICHAEL S. GARDNER, individually and as the representative of a class of similarly-situated persons, | ) ) ) | |
| | ) | |
| Plaintiff, | ) ) | No. 09-C-0705 |
| | ) | |
| v. | ) ) | |
| APPLETON BASEBALL CLUB, INC., d/b/a WISCONSIN TIMBER RATTLERS, | ) ) ) | |
| Defendant. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2009, I electronically filed the foregoing Plaintiff's Memorandum of Law In Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's Class Action Complaint and Certificate of Service with the Clerk of Court using the ECF system, which will send notification of such filing to the following:

>William E. Duffin
>GODFREY & KAHN, S.C.
>780 North Water Street
>Milwaukee, WI 53202-3590
>Attorneys for Defendant

Dated at Milwaukee, Wisconsin, this 4th day of September, 2009.

>s/ Charles H. Barr
>Charles H. Barr SBW # 1004802
>One of Plaintiff's Attorneys
>CROEN & BARR LLP
>250 East Wisconsin Avenue # 1550
>Milwaukee, WI 53202
>Telephone: (414) 226-2080

1

Fax: (414) 226-2070
E-mail: cbarr@croenbarr.com

<u>OF COUNSEL:</u>
Brian J. Wanca
Ryan M. Kelly
ANDERSON + WANCA
3701 Algonquin Rd., Ste. 760
Rolling Meadows, IL  60008
Telephone:  (847) 368-1500
Fax: (847) 368-1501
E-mail: bwanca@andersonwanca.com

Phillip A. Bock
Robert M. Hatch
Tod A. Lewis
BOCK & HATCH, LLC
134 N. La Salle St., Suite 1000
Chicago, IL  60602
Telephone:  (312) 658-5500
Fax: (312) 658-5555
E-mail: phil@bockhatchllc.com

2

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

MICHAEL GARDNER,

          Plaintiff,

    v.                                      Case No. 09-C-705

APPLETON BASEBALL CLUB, INC. d/b/a
WISCONSIN TIMBER RATTLERS,

          Defendant.

---

## DECISION AND ORDER

---

Plaintiff Michael Gardner filed this lawsuit, for which he seeks class certification, alleging violations of the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681c(g). He alleges that the Defendant, which operates the Wisconsin Timber Rattlers (a Class A affiliate of the Milwaukee Brewers), violated FACTA when it printed Gardner a receipt for a transaction that contained the expiration date of his credit card. Gardner does not allege actual injury but seeks statutory damages of $100 to $1,000 per violation for himself and his purported class. The Defendant has now moved to dismiss the complaint on the grounds that the complaint fails to allege a willful violation of the statute. (If there is no willful violation, there is no basis for statutory damages.) For the reasons given below, the motion will be granted.

Section 1681n of FACTA imposes civil liability upon any person who "willfully fails to comply" with any requirement of the Act. 15 U.S.C. § 1681n(a). "Willfulness" under FACTA includes both knowing and reckless conduct. *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 56-57 (2007). In *Safeco* the Court concluded that Congress intended the common law understanding of

reckless conduct: "action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). "Thus, a company subject to [FACTA] does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

The Timber Rattlers move to dismiss on the grounds that the complaint fails to adequately create an inference that the Defendant acted willfully when it failed to comply with FACTA. And even if willfulness is properly pled in the complaint, they argue that a willful violation of FACTA cannot be demonstrated because the statute itself is so vague as to "negate the possibility of a willful violation simply because the merchant prints the expiration date." (Def. Br. at 8.) I will begin and end with their first argument, which is premised in part on their assertion that "notice pleading is dead." (Def. Br. at 4.)

To place the Timber Rattler's argument in context, however, it is first necessary to review the specific language of the FACTA provision at issue and the express findings Congress made in enacting The Credit and Debit Card Receipt Clarification Act of 2007 ("the Clarification Act"), Pub. L. No. 110-241, 122 Stat. 1565 (2008) (codified at 15 U.S.C. § 1681n(d)), which it passed in an effort to clarify the provision. The provision at issue states:

> Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

2

15 U.S.C. § 1681c(g)(1).  This provision was intended to prevent criminals from obtaining access to consumers' private financial and credit information in order to reduce identity theft and credit card fraud.  Pub. L. 110-241, § 2(a)(1); *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1306 (11th Cir. 2009).  As Plaintiff alleges, FACTA was enacted on December 3, 2003, but gave merchants who accept credit cards and/or debit cards one or three years to comply, depending on when the cash register or other machine or device that electronically prints the receipt was first put into use.  15 U.S.C. § 1681c(g)(3).  (Compl. ¶¶ 7, 29.)

Despite the delay in its effective date, many merchants were not in full compliance when the provision went into effect.  Like the Timber Rattlers in this case, many merchants attempted to comply by truncating the credit card account numbers on their receipts, but failed to also remove the expiration date of the cards.  In passing the Clarification Act several years later, Congress expressly found that "[m]any merchants understood that [§ 1681c(g)(1)'s] requirement would be satisfied by truncating the account number down to the last 5 digits based in part on the language of the provision as well as the publicity in the aftermath of the passage of the law."  P.L. 110-241, § 2(a)(3).

The problem with the language of the provision is apparent.  While the intended meaning is apparently that the merchant is to print either the last five numbers of the account or the expiration date of the credit card on the receipt, but not both, it could be understood as giving merchants a choice between truncating the account number to the last five numbers of the account or listing only the expiration date.  It all depends on what the word "or" means.  Under the latter reading, merchants who truncate the account number would be in compliance, even if the card's expiration date was shown on the receipt.

3

The later reading was not unreasonable, since it would also accomplish the intended purpose of the provision. "Experts in the field agree that proper truncation of the card number, by itself as required by the amendment made by [FACTA], regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud. *Id.* §2(a)(6). And as Congress also found, the publicity surrounding the passage of the original provision added to the confusion. *Id.* § 2(a)(3). Indeed, as the press accounts quoted by the Timber Rattlers in its brief make clear, "the federal government added to the confusion over how the statute is to be interpreted by emphasizing only the truncation of the credit-card number, wholly omitting any reference to any requirement that the statute also requires redaction of the expiration date." (Br. at 9.)

As a result of this confusion, Congress found shortly after the effective date of FACTA that merchants were being bombarded with "abusive lawsuits" that did nothing to protect consumers but only resulted "in increased costs to businesses and potentially increased costs to consumers." Pub. L. 110-241, § 2(b). More specifically, and in addition to the foregoing findings, Congress found:

1.   "Almost immediately after the deadline for compliance passed, hundreds of lawsuits were filed alleging that the failure to remove the expiration date was a willful violation of the [FCRA] even where the account number was properly truncated. *Id.* § 2(a)(4).

2.   " None of these lawsuits contained an allegation of harm to any consumer's identity. *Id.* § 2(a)(5).

3.   " Despite repeatedly being denied class certification, the continued appealing and filing of these lawsuits represents a significant burden on the hundreds of companies that have been sued and could well raise prices to consumers without corresponding consumer protection benefit. *Id.* § 2(a)(7).

Based upon these findings, Congress passed the Clarification Act "to ensure that consumers suffering from any actual harm to their credit or identity are protected while simultaneously limiting

4

abusive lawsuits that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers." *Id.* § 2(b). Unfortunately, the Clarification Act did nothing to clarify the confusing language Congress used in the original enactment. The language in 15 U.S.C. § 1681c(g)(1) remains the same. Instead, Congress added a provision entitled "Clarification of willful compliance." 15 U.S.C. § 1681n(d). The new provision simply exempted from liability those merchants who properly truncated the account numbers but printed credit card expiration dates on customer receipts prior to the effective date of the Clarification Act:

> For the purposes of this section, any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and June 3, 2008, but otherwise complied with the requirements of section 1681c(g) of this title for such receipt shall not be in willful noncompliance with section 1681c(g) of this title by reason of printing such expiration date on the receipt.

15 U.S.C. § 1681n(d).

It is with this background that I address the Timber Rattler's argument that Plaintiff's complaint is legally insufficient.

Two recent Supreme Court cases have emphasized that it is no longer enough to make bald allegations in a complaint because Rule 8(a)(2) requires a statement of the claim "showing" that the plaintiff is entitled to relief. In *Ashcroft v. Iqbal,* the Court found that "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible.'" 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Rule 8, in other words, "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 1943.

The Timber Rattlers argue that the complaint flunks these pleading standards because it offers no more than a conclusory assertion that the Defendant violated FACTA willfully. In other

words, there is no detail or factual basis in the complaint upon which one could reasonably infer that the violation was willful, other than the fact that the violation occurred. Plaintiff disagrees. The complaint, he notes, contains the following allegations. First, FACTA was enacted in 2003 and contained a three-year grace period to allow merchants to begin compliance. (Compl., ¶¶ 7, 29.) In 2008, Congress enacted the Credit and Debit Card Receipt Clarification Act, which made corrections to the definition of willfulness and extended the grace period until June 3, 2008. Second, the FTC has issued guidance to companies to help them comply with the statute. (Compl., ¶ 32.) Finally, the complaint alleges that "[m]ost of defendant's business peers and competitors readily brought their processes into compliance with FACTA by programming their credit card machines and devices to comply with the truncation requirement." (Compl., ¶ 33.) Based on these facts, Plaintiff argues, it would be highly plausible to infer that any violation of FACTA would have been a willful one.

Plaintiff further notes that numerous district courts have found the same or similar allegations to be in compliance with *Twombly*. To take just one example, the district court in Kansas concluded as follows:

> Defendants argue that plaintiffs have not alleged willful violations of FACTA because mere knowledge of the statute and other retailers' compliance with its terms are not sufficient to show knowing or reckless noncompliance. This argument is unpersuasive. The complaint alleges that defendants recognized their statutory duty to limit the information which appeared on customer receipts, but intentionally ignored that duty and refused to take steps to comply with FACTA regulations. The complaint suggests that defendants' noncompliance was the result of more than a mere careless reading of FACTA. When taken as true, plaintiffs' allegations state a plausible claim for willful violations of FACTA.

*In re TJX Companies, Inc.*, 2008 WL 2020375, *2 (D. Kan. 2008).

6

Plaintiff has cited numerous other cases reaching the same result, and the Timber Rattlers have only cited one case reaching the opposite conclusion.  *See Rosenthal v. Longchamp Coral Gables LLC,* 603 F. Supp.2d 1359, 1362 (S. D. Fla. 2009) ("That the Defendant acted more than 'negligen[tly] but less than knowledge of the law's requirements' is not established by the mere fact that FACTA's requirements were well-publicized in the media and contained in Defendant's credit card agreements.") (quoting *Murray v. New Cingular Wireless Servs., Inc.*, 523 F.3d 719, 726 (7th Cir. 2008)).  Although the majority of cases cited ostensibly supports the Plaintiffs' argument, for the following reasons I respectfully decline to follow those cases.  I do so for several reasons.

First, none of the cases Plaintiff cites addresses complaints that are as barebones as the one at issue here.  Each complaint that survived a motion to dismiss contained additional allegations tending to show that the defendant specifically knew about the requirements of FACTA.  *See, e.g., Troy v. Home Run Inn, Inc.,* 2008 WL 1766526, *2 (N.D. Ill. 2008) (complaint alleged that "credit card issuers like VISA, MasterCard, Discover, and American Express informed Home Run Inn about FACTA's requirements and required compliance via contract.") Here, by contrast, there is no reason to infer that a minor league baseball team would have been apprised of the statute's requirements or would otherwise have had reason to know about them.  The Timber Rattlers are not Wal-Mart, the defendant in another case Plaintiff cites.  *Harris v. Wal-Mart Stores, Inc.,* 2007 WL 3046162 (N.D. Ill. 2007).

Second, the legion of cases cited by Plaintiffs pre-dates the Supreme Court's decision in *Iqbal*.  Although *Iqbal* was largely an echo of the 2007 *Twombly* decision, it underscores the Supreme Court's seriousness about changing the requirements from conclusory notice pleading to a plausibility standard, and it clarified that the new requirements applied to all cases, not merely

7

antitrust cases.  While the rationale of the cases cited by Plaintiff suggests that many of them would

reach the same result even if they had the benefit of *Iqbal,* in my view *Iqbal* compels a different

result.  As the Seventh Circuit has concluded:

> *Iqbal* . . . clarified that *Twombly*'s plausibility requirement applies across the board,
> not just to antitrust cases.  In addition, *Iqbal* gave further guidance to lower courts
> in evaluating complaints.  It noted that a court need not accept as true "legal
> conclusions[, or t]hreadbare recitals of the elements of a cause of action, supported
> by mere conclusory statements."  We understand the Court in *Iqbal* to be
> admonishing those plaintiffs who merely parrot the statutory language of the claims
> that they are pleading (something that anyone could do, regardless of what may be
> prompting the lawsuit), rather than providing some specific facts to ground those
> legal claims, that they must do more.  These are the plaintiffs who have not provided
> the "showing" required by Rule 8.

*Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009).

Here, the complaint merely "parrots" the statutory language without providing any specific

facts.  Although Plaintiff protests otherwise, the "facts" he cites are merely general truisms rather

than specific allegations touching on the circumstances of this case.  For example, the fact that most

other businesses may have complied with FACTA raises no *specific* inference about willfulness on

the part of the Timber Rattlers.  In essence, Plaintiff is suggesting that because most businesses

know the law and follow it, the Defendant's failure to do so must have been willful.  But this is an

allegation that could be leveled (and apparently is) in *every* FACTA case.  Any time a company

violates the law, a plaintiff could point out that most companies do *not* violate the law, and on this

shaky hook a plaintiff could hang a claim of willfulness.   These kinds of arguments are not

particularized facts about the defendant's intent, but inferences of general applicability drawn from

the Plaintiff's observations about life.  The "fact" that other businesses comply with the law is an

assertion that could be leveled at *any* FACTA defendant, and thus in substance the complaint merely

8

alleges that the Defendant violated the statute, and the violation itself is deemed sufficient evidence of willfulness.  Under *Iqbal* and *Twombly*, there has to be something more.

The same is true for the other "facts" cited in the complaint.  The complaint alleges that the FTC issued guidance on compliance with FACTA, and from this we are asked to infer that the Defendant must have known about that guidance and disregarded it.  But once again this is a fact about the general state of affairs in the country rather than a fact particular to the Defendant.  As above, it is an allegation that could be leveled against *any* FACTA defendant.  The existence of the law and/or guidance on the law is not enough to create an inference that the law was knowingly disregarded, absent some allegation that the guidance was actually sent to the Defendant or so well-publicized that everyone knew about it.  The complaint further alleges that the grace period ended on June 3, 2008 and that the Defendant printed the credit card receipt after that date.  This merely establishes that a violation occurred, however, without saying anything about willfulness.  By definition, a statute can only be violated *after* the grace period ended, and thus it follows from Plaintiff's argument that *every* violation of the statute would be willful simply because it *was* a violation.  This once again conflates the occurrence of the act with the mental state of the actor and begs the question of willfulness.  To say that a violation occurred after the grace period ended is to state only that a violation occurred, period.  It is not supportive of an inference of intent or recklessness.

Ultimately, these "facts" do not suffice because they are not particularized at all – they are general facts about the law itself and about other, unnamed companies' response to the law.  These same facts could be alleged against *any* alleged FACTA violator, and as such they are essentially boilerplate. The essence of the complaint is: the Defendant violated the Act, some other businesses

9

did not violate the act, therefore the Defendant's violation was willful.  No doubt Plaintiff's counsel could open the complaint in his word processor, delete the Appleton Baseball Club, and substitute any other defendant in its place without disturbing much of the rest of the complaint at all. *Twombly* and *Iqbal* teach that such cut-and-paste jobs are not a substitute for real facts that plausibly "show," under Rule 8, that the Plaintiff is entitled to relief.  In other words, because there is nothing in the complaint to distinguish the willfulness of *this* Defendant from any other imaginable defendant, the complaint fails to satisfy Rule 8.

Finally, it is worth noting that the result is not merely the product of overly technical pleading rules.  As should be obvious from the foregoing discussion of the legislation at issue, the bald inferences Plaintiff relies upon are not particularly persuasive ones at all.  It is just as reasonable to infer that a company could print an expiration date on a credit card receipt negligently rather than willfully.  Indeed, it is far more likely that the violation was merely negligent, if even that.  The fact that the account number was properly truncated shows that the Defendant attempted to comply with FACTA, and given the fact that no additional protection of the consumer is achieved by deleting the expiration date, it can hardly be said that its action "entail[ed] an unjustifiably high risk of harm that is either known or so obvious that it should be known."  *Safeco*, 551 U.S. at 68 (internal quotes omitted).  After all, what did a minor league baseball team stand to gain by printing a few extra digits on a receipt for a hot dog and subjecting itself to potential liability of $100 to $1,000 for each transaction?  Although willfulness includes recklessness, there is no suggestion of a motive in the complaint at all.  Was the team trying to save money by not complying?  Did compliance require new equipment or expensive training?  Did the owners have a cavalier attitude

towards credit card privacy or toward regulatory compliance in general?  Here there is simply no reason to infer willfulness merely because the violation occurred.

Moreover, the flurry of FACTA cases cited in the briefs, as well as the express findings Congress made in enacting the Correction Act, suggests that violation of the statute is actually widespread.  This undercuts the Plaintiff's suggestion that compliance with the statute is so common that noncompliance is synonymous with *willful* noncompliance.  Are all of these FACTA defendants willful actors bent on violating credit card users' privacy rights and subjecting themselves to liability for statutory damages, or does the spate of cases instead suggest that FACTA's requirements may not have been so obvious to most businesses?  This is normally not something that would be considered in ruling on a motion to dismiss, but the inference Plaintiff asks the court to draw – that everyone knew about FACTA's requirements – seems at least partially undermined by the sheer number of cases he has cited.

But these are side issues I raise merely to explain why the requirements of *Iqbal* and *Twombly* are sensible ones when applied in the context of this case.  In short, the inference of willfulness in this case is a facially *implausible* one, and to create plausibility Plaintiffs need to plead more than conclusions and inferences based on generalities.  Without any plausible reason to infer willfulness, I conclude the complaint should be dismissed pursuant to Fed. R. Civ. P. 8(a)(2).

For the reasons given above, the Defendant's motion to dismiss is **GRANTED**, and the complaint is **DISMISSED** without prejudice.

Dated this   31st   day of March, 2010.

 s/ William C. Griesbach
William C. Griesbach
United States District Judge

11

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KIM MILLER-HUGGINS,** | ) | |
| **individually and on behalf of all** | ) | |
| **others similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 09 CV 2677** |
| | ) | |
| **v.** | ) | **Judge Grady** |
| | ) | |
| **SPACLINIC, LLC,** | ) | **Magistrate Judge Valdez** |
| | ) | |
| **Defendant.** | ) | |

**AMENDED CLASS ACTION COMPLAINT**

Plaintiff Kim Miller-Huggins, individually and on behalf of all others similarly situated (collectively "Plaintiffs"), through her attorneys, James X. Bormes and Thomas M. Ryan, and for her claim against Defendant SPAClinic, LLC alleges as follows:

**INTRODUCTION**

1.      This lawsuit is brought against Defendant SPAClinic, LLC ("Defendant") for its violation of 15 U.S.C. §168 1c(g) *et seq.,* the federal Fair and Accurate Credit Transactions Act ("FACTA" or the "Act") and its implementing regulations. Defendant failed and continues to fail to omit credit card expiration dates from receipts it creates at the point of sale of its services and other products, as required by the Act. Plaintiff brings this as a class action, on behalf of herself and all others similarly situated, pursuant to Fed. R. Civ. P. 23.

**PARTIES**

2.      Plaintiff Kim Miller-Huggins is a citizen of the State of Illinois, County of Cook, and resides in this judicial district.

3. Defendant is a Delaware limited liability corporation which operates in the State of Illinois and resides in this judicial district.

4. Defendant is thus a "person", as that term is defined in 15 U.S.C. §1681a(b).

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and 15 U.S.C. §1681p.

6. Venue in this district is proper because Defendant transacts business here.

## FACTA

7. Section 1681c(g) of FACTA provides, in relevant part:

> [N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

8. The Act gave merchants who accept credit cards and/or debit cards up to three years to comply with its requirements, requiring full compliance with its provisions no later than December 4, 2006. Additionally, an amendment to the Act effective June 3, 2008 provides:

> Clarification of willful noncompliance. For the purposes of this section, any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004 and the date of the enactment of this subsection [enacted June 3, 2008] but otherwise complied with the requirements of section 605(g) [15USCS § 1681(g)] for such receipt shall not be in willful noncompliance with section 605(g) [15USCS § 1681(g)] by reason of printing such expiration date on the receipt.

15 U.S.C. § 1681n.(d).

## FACTS RELATED TO PLAINTIFF

9.      Defendant owns and operates a spa located on North Wabash in Chicago, Illinois which provides, among other things, massage services and related goods to the general public.

10.     Upon information and belief, Defendant may own and operate similar spas located at other locations.

11.     Defendant is not antiquated, and its electronically printed receipts from its stores are governed by FACTA. Defendant does not record credit card or debit card account numbers solely by handwriting or by an imprint or copy of the card.

12.     On or about April 17, 2009, Plaintiff Miller-Huggins received a massage from Defendant at Defendant's location on north Wabash in Chicago, Illinois and wished to charge the cost to a credit card.

13.     At that time, Defendant sought Plaintiff's signature to validate the charge on her credit card, to reflect the purchase of the massage.

14.     Defendant did not, and does not, record credit card or debit card account numbers solely by handwriting or by an imprint or copy of the card.

15.     The "Customer Copy" receipt provided to Plaintiff displayed the expiration date of her credit card. (A copy of the customer copy with Plaintiff's expiration date redacted is attached as Exhibit 1.)

## FACTS RELATED TO OTHER CUSTOMERS

16.     Upon information and belief, many other customers of Defendant have used a credit card or debit card to purchase services and goods from Defendant, and in each such instance, the "Customer Copy" of the charge receipt is provided to the customer,

3

and contains the expiration date of the credit card.

## **DEFENDANT'S CONDUCT WAS WILLFUL**

17.  FACTA was enacted in 2003 and gave merchants who accept credit cards
and/or debit cards up to three years to comply with its requirements, requiring compliance
for all machines no later than December 4, 2006.  Additionally, FACTA was amended
effective June 3, 2008 to give merchants an additional opportunity to comply with the
expiration date requirements of FACTA.

18.  Defendant knew or should have known of the truncation requirement;
the requirement was widely publicized among retailers.

19.  Upon information and belief, credit card issuing organizations required
compliance with FACTA by contract, in advance of the Act's mandatory compliance
date.

20.  Most of Defendant's business peers and competitors readily brought their
credit card and debit card receipt printing process into compliance with FACTA by
programming their card machines and devices to comply with the truncation
requirement. Defendant could have readily done the same.

21.  Defendant willfully disregarded the mandates of FACTA and continued to
use cash registers or other machines or devices that print receipts in violation of
the Act.

## **THE CLASS HEREIN**

22.  Plaintiff brings this action on behalf of a class pursuant to Fed. R. Civ. P.
23(a) and (b)(3).

23.  Plaintiff brings this action on her own behalf and on behalf of a class of all

others similarly situated to whom Defendant provided a printed receipt at the point of sale or transaction which displays: (a) more than the last five digits of the person's credit card or debit card number, (b) the expiration date of the person's credit or debit card, or (c) both.

24.     The class is so numerous that joinder of all members is impracticable. The exact size of the plaintiff class is not known, but the size of the class and the identification of its members is subject to determination through information within the exclusive control of Defendant.

25.     There are questions of law and fact common to the class, which predominate over questions which may affect individual members. These questions include, *inter alia:* Whether Defendant had a practice of providing customers with a sales or transaction receipt which failed to comply with the truncation requirement of FACTA, 15 U.S.C. § 1681c(g) *et seq.;* whether Defendant thereby violated the Act; whether Defendant's conduct was willful; and whether judgment should be entered in favor of each member of the plaintiff class and against Defendant.

26.     The claims of the representative plaintiff are typical of the claims of the class members: Plaintiff and each member of the putative class provided their credit card or debit card to Defendant at the point of sale or transaction and received a receipt that displayed the expiration date of their credit or debit card.

27.     The named plaintiff has the same interests as do other members of the class and will vigorously prosecute these interests on behalf of the class, and Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has no interests that conflict with the interests of the class members. Plaintiff has retained experienced

counsel.

28.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia,* the commonality of issues of law and fact, as well as the relatively small liability to each class member substantially diminishes the interest of members of the class in individually controlling the prosecution of separate actions; many of the members of Putative class are unaware of their rights to prosecute and do not have the means or resources to secure legal assistance; there has been little, if any, litigation already commenced by members of the class to determine the questions here presented; and a class action can be managed without undue difficulty since Defendant has regularly committed the violations complained of herein, in a standardized manner, and is required to have records of its dealings with each member of the class.

## COUNT I
## VIOLATION OF 15 U.S.C. § 1681c(g) *et seq.*

29.     Plaintiff realleges paragraphs 1 through 28 as paragraph 29 of this Complaint.

30.     Plaintiff Miller-Huggins brings this action on behalf of herself and a class of persons similarly situated to whom Defendant provided a printed receipt at the point of sale or transaction which displays:  (a) more than the last five digits of the person's credit card or debit card number, (b) the expiration date of the person's credit or debit card, or (c) both.

31.     15 U.S.C. § 1681c(g) prohibits any person that accepts credit cards or debit cards for the transaction of business from printing more than the last four digits of the person's credit card or debit card or the expiration date upon any receipt

6

provided to the cardholder at the point of the sale or transaction.

32.    Defendant knew or should have known of the truncation requirement.

33.    Defendant willfully violated § 1681c(g) of the Act because it provided printed receipts to its customers at the point of sale or transaction which displayed the expiration date of the person's credit or debit card.

34.    Section 168 1n of the Act provides, in relevant part:

§1681n. Civil liability for willful noncompliance

(a) In general.

Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of –

(1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or
(B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;
(2) such amount of punitive damages as the court may allow; and
(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

35.    Plaintiff and each member of the plaintiff class are entitled to statutory damages pursuant to §1681n of the Act.

WHEREFORE, Plaintiff and the plaintiff class pray for the entry of an order:

a)    Entering judgment against Defendant, and finding and declaring that Defendant's acts and practices complained of herein are in violation of the Act;

b)    Enjoining Defendant from printing any receipt which displays more than the last 5 digits of a customer's credit or debit card number, or the expiration date

of such credit or debit card;

c) Awarding statutory damages to Plaintiff and the plaintiff class in the amount of $100 to $1,000 per violation, as set forth in the Act;

d) Awarding Plaintiff and the plaintiff class all of their costs and reasonable attorney's fees incurred in bringing this action; and

e) Granting such other and further relief as this Court may deem adequate and just, including punitive damages.

Respectfully submitted,

By: /s/James X. Bormes
One of the attorneys for plaintiff and the plaintiff class

Thomas M. Ryan                         James X. Bormes
Law Offices of Thomas M. Ryan          Law Offices of James X. Bormes, P.C.
35 East Wacker Drive                   8 South Michigan Avenue
Suite 650                              Suite 2600
Chicago, Illinois 60601                Chicago, Illinois 60603
312-726-3400                           312- 201-0575

# EXHIBIT 1

CSMT Massage Clinic
18 North Wabash
Chicago, IL
60602

312-753-7990

Apr 17 2009  4:56 pm   Trans# 125273

TRANSACTION RECORD

Card Number :        ************6230
Expiry Date :
Card Entry :          SWIPED
Account :             VISA
Trans Type :          PURCHASE
Amount :              $45.00

Auth # :              091574
Promo :               54 D E
Batch # :             7577
Reference # :         910721405465
Merchant ID :         238230700080
Terminal # :          0001
Date :                04/17/09
Time :                16:56:15

APPROVAL 091574

Cardholder Signature

Cardholder will pay card issuer above
amount pursuant to Cardholder Agreement.

Customer Copy

A-68

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| KIM MILLER-HUGGINS, | ) | |
| individually and on behalf of all | ) | |
| others similarly situated, | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 09 CV 2677** |
| | ) | |
| **v.** | ) | **Judge Grady** |
| | ) | |
| SPACLINIC, LLC, | ) | **Magistrate Judge Valdez** |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S
## MOTION TO DISMISS THE AMENDED COMPLAINT

Plaintiff Kim Miller-Huggins, by her attorneys James X. Bormes and Thomas M. Ryan, respectfully submit this memorandum of law in opposition to Defendant's motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Amended Complaint.

## I. INTRODUCTION

Plaintiff filed this class action lawsuit alleging that Defendant's practice of issuing credit and debit card receipts which showed the customer's expiration date violates the Fair and Accurate Credit Transaction Act ("the Act").[1] Defendant does not dispute that the receipt it issued to Plaintiff violates the Act. Instead, Defendant has moved to dismiss Plaintiff's Amended Complaint (See Complaint)[2] on the basis that Plaintiff has failed to allege that Defendant's violation of the Act was willful. Stated

---

[1] The purpose of the Act is to prevent customers from being victims of identity theft. In furtherance of that goal, the Act requires merchants who accept credit or debit cards to truncate the card's expiration date as well as all but the last five numbers of the account number. 15 U.S.C. §1681

[2] The court did not dismiss the original Complaint. Instead, after filing the Complaint, Defendant's counsel advised Plaintiff that she had named the wrong entity as a Defendant. In reliance on that representation, Plaintiff voluntarily dismissed the original Defendant and filed an Amended Complaint naming the current Defendant which issued the credit card receipt which is the subject of this lawsuit.

differently, Defendant in its (12)(d)(6) motion[3] is requesting that the Court hold that the Amended Complaint does not state a claim for a reckless violation of the Act.[4]

Numerous courts in the Northern District of Illinois have concluded that the allegations in the Amended Complaint state a cause of action for willfulness. In fact, on July 16, 2009, Judge Hart denied a motion to dismiss a complaint which was virtually identical to the Amended Complaint without even requiring the plaintiff to file a response. The defendant in the case before Judge Hart made the same argument that Defendant makes here, that is that the complaint failed to allege a willful violation of the Act. Moreover, Plaintiff is not aware of a decision by any court in the Seventh Circuit which has held that the allegations similar to those in the Amended Complaint are insufficient to state a claim for a willful violation of the Act. For all these reasons, Plaintiff respectfully submits that Defendant's motion to dismiss can be easily denied.

## II. STATEMENT OF FACTS

Rather than set forth an exhaustive recitation of the allegations in the Complaint, Plaintiff respectfully submits that it is sufficient to simply state that the Act prohibits merchants from, among other things, issuing credit or debit card receipts which contain an expiration date. Defendant engaged in this very type of prohibited conduct hundreds

---

[3] Although the Defendant has moved to dismiss the Complaint pursuant to Fed. R. Civ. P. (12)(d)(6), it attached an affidavit by the CFO of Defendant's parent corporation. The essence of his affidavit is that Defendant knew of the truncation requirements of the Act and that it had no "knowledge, notice or intent of violating" the Act. (Def's. Affd. ¶ 3.) This excuse defies common sense. It is inconceivable how a merchant who had knowledge of the Act's truncation requirements could have "no knowledge" that it was violating the Act when all it had to do was look at just one of the thousands of receipts Defendant issued to customers. With all due respect, it is not as if employees at a Kentucky Fried Chicken restaurant were unaware that the chicken they were selling did not follow follows the Colonel's secret recipe. All Defendant had to do was just look at one of his receipts. That Defendant did not do so seems to be the very essence of reckless disregard of a federal statute.

[4] The Supreme Court in *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 127 S. Ct. 2201, 2208-10 (2007), explained that reckless violations constitute willful violations, for purposes of the Act.

- 2 -

if not thousands of times.  The allegations in the Complaint demonstrating that conduct

constitutes a willful or reckless violation of the Act are set forth at page four of this brief.

## III. ARGUMENT

Defendant's argument that the Amended Complaint lacks sufficient factual

assertions is not supported by the Supreme Court's recent decisions regarding the

pleading requirements under Fed. R. Civ. P. 8.  *See e.g., Bell Atlantic Corp. v. Twombly,*

550 U.S. 544, 127 S. Ct. 1955 (2007); *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009).

Moreover, its argument ignores the numerous decisions within the Seventh Circuit which

have addressed what a plaintiff must allege to state a willful violation of the Act.

### (i) The Allegations of Plaintiff's Amended Complaint Are Plausible

Defendant argues that the Amended Complaint does not meet the Rule 8 pleading

requirements the Supreme Court has addressed in *Bell Atlantic* and, more recently, in

*Iqbal*.  Defendant's reliance on *Bell Atlantic* and *Iqbal* is clearly misplaced.  *Bell Atlantic*

and *Iqbal* require factual content in a complaint that allows the court to draw the

reasonable inference, or make plausible the claim, that the defendant is liable for the

misconduct and violations alleged.  Defendant's motion ignores whole paragraphs of

factual recitations which are plead in the Amended Complaint and which demonstrate -

that is, make much more than just plausible - the claim that Defendant's conduct was

willful.

The Supreme Court reiterated in *Bell Atlantic* that a court must accept as

true all of the allegations contained in a complaint and that a plaintiff need only state a

plausible claim for relief survive a motion to dismiss.  *Id.*, 127 S. Ct. at 1949-50.  The

Supreme Court has always instructed, and continues to instruct, District Courts to assume

the facts in the complaint to be true, to make reasonable inferences on behalf of plaintiff's allegations, and to deny dismissal where plaintiff has a "plausible" claim. *Id., 127 S. Ct. at 1949-1951.*

       *Bell Atlantic* discussed the standard for evaluating whether a complaint is sufficient to survive a motion to dismiss. This standard was reiterated in *Iqbal*: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face..." *Iqbal*, 129 S. Ct. at 1949, *citing Bell Atlantic,* 127 S. Ct. at 1955.

       *Iqbal* explained this "plausibility" standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.*

*Ashcroft v. Iqbal,* 129 S.Ct. at 1949.

       Plaintiff has clearly stated a plausible claim here: Defendant is "liable for the misconduct alleged", to use the language of *Iqbal*, if Plaintiff has plead a willful violation of the Act. Plaintiff's Complaint pleads exactly that; to wit, the Complaint alleges:

> The Act gave merchants like Defendant up to three years to comply with its requirements before they went into effect (Complaint, ¶¶ 8, 14);
> Credit card issuing organizations like the ones Defendant made compliance with the Act a contractual obligation of Defendant (Complaint, ¶ 19);
> Most of Defendant's peers and competitors took steps to be in compliance with the Act; and Defendant could have done the same (Complaint, ¶ 20);
> Defendant does not record credit or debit cards solely by handwriting or by an imprint or copy of the card --- thus, by implication, Defendant cannot cloak its illegal conduct in the only exemption to compliance with the Act that is contained within the Act (Complaint, ¶ 11);

Case 14-3709, Document 38, 01/14/2015, 1415852, Page77 of 224

A-72

Case 1:09-cv-02677-DAB Document 28 Filed 07/23/09 Page 5 of 9
Case 1:13-cv-02677-DAB Document 17-67 Filed 07/23/09 Page 53 of 9 PageID #: 110

The receipt Defendant gave Plaintiff plainly displayed the expiration date
of her credit card ((Complaint, ¶ 15); and the Act prohibits the display of
the expiration date of her credit card (Complaint, ¶ 7);
This was not a one-time occurrence; instead, *in each instance* where a
credit or debit card is used by other customers of Defendant, the receipt
displays the account number and expiration date of the credit card
(Complaint, ¶ 16);
Defendant knew or should have known of the truncation requirement of
the Act; the requirement was widely publicized among retailers
(Complaint, ¶¶ 18, 32); and thus
Defendant willfully disregarded the mandates of the Act and continued to
print receipts in violation of the Act (Complaint, ¶ 21).

Exhibit 1 to Plaintiff's Complaint likewise demonstrates on its face a

violation of the Act: there appears a dated, computer-generated credit card receipt, issued

by Defendant, labeled "customer copy", and reflecting the expiration date of the credit

card. Defendant makes no suggestion that any of these allegations are "implausible", nor

could it. Indeed, Defendant's motion ignores each of these allegations entirely. But the

fact is that these allegations - and, separately and independently, the receipt attached to

Plaintiff's Complaint - reflect every step and element required to demonstrate a willful

violation of the Act.

In reality, Defendant is attempting to *dispute* the factual allegations of the

Complaint, notably and importantly, the element of "willfulness". Indeed, in its motion

to dismiss, Defendant offers an unsupported, alternative explanation for its illegal

conduct: "inadvertence". (*See* Def's Br. P. 5.). But of course that explanation has no

place in a motion to dismiss, not before *Bell Atlantic* and *Iqbal*, and not after. As *Iqbal*

teaches, "When there are well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Iqbal*, 129 S. Ct. at 1950.

### (ii) Numerous Courts have held Allegations
### <u>Substantially Similar to Plaintiff's Are Sufficient</u>

Numerous courts in this Circuit, faced with the very argument Defendant

makes here, in cases brought under the Act, have *rejected* the claim that a complaint with

Plaintiff's allegations is insufficient.   Defendant fails to even address the numerous

decisions in the Northern District of Illinois which have concluded that the facts Plaintiff

alleges in her Amended Complaint state a cause of action for a willful violation of the

Act.

In *Follman v. Hospitality Plus of Carpentersville, Inc.*, 532 F. Supp. 2d

960 (N.D.Ill. 2007), Judge Moran's decision, which not only was issued after *Twombly*

but cites that decision, denied a motion to dismiss a complaint under the Act which

contained very similar allegations as those before this Court.  The Court held:

> On a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the
> well-pleaded allegations of the complaint must be accepted as true, and the court must
> draw all reasonable inferences in favor of plaintiff. *McMillan v. Collection Prof'ls, Inc.,*
> 455 F.3d 754, 758 (7th Cir. 2006). Plaintiff need only allege the "operative facts" upon
> which each claim is based (*Kyle v. Morton High School,* 144 F.3d 448, 454-55 (7th
> Cir.1998)), and include allegations in the complaint that "plausibly suggest that the
> plaintiff has a right to relief." *E.E.O.C. v. Concentra Health Servs.,* 496 F.3d 773 (7th
> Cir.2007) (quoting in part *Twombly,* 127 S.Ct. at 1964).

532 F. Supp. 2d at 962.

Judge Moran in *Hospitality Plus* noted the defendant's argument that the plaintiff

failed to allege sufficient facts that would raise his claim of willful violation of the statute

"above a speculative level", but disagreed with the argument:

> "Willfulness" as used in the FRCA is defined to include both reckless and
> knowing violations of the statute. *Safeco Ins. Co. v. Burr,* --- U.S. ----, ---- -
> ----, 127 S.Ct. 2201, 2208-10, 167 L.Ed.2d 1045 (2007). Plaintiff
> sufficiently alleges willfulness under this definition. His complaint alleges
> that FACTA was enacted in 2003 and gave merchants three years within
> which to comply with the law's requirements. It alleges that defendant knew

of the requirements because VISA, MasterCard and the PCI Security Standards Council informed defendant about FACTA. In addition, the card-issuing organizations proceeded to require compliance with FACTA in their contracts with merchants before the mandatory compliance date. Finally, most of defendant's business peers and competitors readily brought their processes into compliance. Yet, defendant failed to comply with FACTA, issuing a credit card receipt to plaintiff containing the expiration date of his credit card. We find these allegations plausibly suggest that defendant willfully violated the statute.

*Id.*, at 962-963. Virtually the same allegations which appear in the Plaintiff's complaint have thus been held to state a cause of action under the Act.

In *Troy v. Home Run Inn, Inc.,* 2008 WL 1766526 (N.D.Ill. 2008), Judge Kennelly was faced with the same question in a case under the Act. There, the plaintiff alleged in his complaint that defendant Home Run Inn had three years to comply with the Act's requirements after the statute was enacted; credit card issuers like VISA, MasterCard, Discover, and American Express informed Home Run Inn about the Act's requirements and required compliance via contract; the statute's requirements were widely publicized among retailers; and most of Home Run Inn's business peers and competitors brought their credit card receipts into compliance with the Act. *Troy,* 2008 WL 1766526 at*1, 2. Judge Kennelly found that:

> The Supreme Court held in *Bell Atlantic* that a viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic,* 127 S.Ct. at 1969. The Court stated, however, that it did not intend to "require heightened fact pleading of specifics." *Id.* Three judges in this district have, after *Bell Atlantic,* found allegations similar to those in this case sufficient to state a claim for a willful violation of Section 1681c(g). *See Village Squire,* 2007 WL 4522614, at *3; *Follman v. Hospitality Plus of Carpentersville, Inc.,* 532 F.Supp.2d 960, 963 (N.D.Ill.2007); *Iosello v. Leiblys, Inc.,* 502 F.Supp.2d 782, 784-85 (N.D.Ill.2007).

*Id.*, 2008 WL 1766526, at *2.

Thus, the *Troy* Court held:

> Accepting these allegations as true, as the Court must at this stage of the proceedings, the Court cannot say that Troy has failed to assert a claim of willfulness that is plausible on its face. *See Iosello,* 502 F.Supp.2d at 785.

*Id.*

The decision in *Follman v. Village Squire, Inc.*, 542 F. Supp. 2d 816

(2007) was also based on allegations in a complaint very similar to those before this

Court. There, Judge Kendall addressed a defendant's argument to dismiss a claim under

the Act, after the Supreme Court's pronouncement in *Bell Atlantic*:

> The Amended Complaint, at ¶¶ 39-41, alleges that: The card issuing organizations proceeded to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date. For example, the August 12, 2006 edition of "Rules for Visa Members" (p. 62), which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all." These statements were accompanied by a picture of a receipt showing precisely what had to be removed. VISA required complete compliance by July 1, 2006, five months ahead of the statutory deadline. Defendant accepts Visa cards and is a party to a contract requiring compliance with the above-quoted requirement.
> Finally, the Amended Complaint alleges that most of VSI's business peers and competitors readily brought their receipt printing processes into compliance with FACTA. Nevertheless, the Amended Complaint alleges, VSI failed to comply with FACTA, issuing a credit card receipt to plaintiff containing the expiration date of his credit card. The Court finds that these allegations establish a plausible entitlement to relief on Follman's claim that VSI willfully violated the statute.

*Follman,* 542 F. Supp. 2d at 820.

Finally, in *Miller-Huggins v. Mario's Butcher Shop, Inc.*, No 09 C 3774 (N. D.

Ill.) which is pending before Judge Hart, the defendant made the same argument as the

Defendant does here. Judge Hart from the bench orally denied the motion to dismiss

without requiring the plaintiff to file a response. (Attached hereto as Exhibit 1 is a copy

- 8 -

of the Complaint in *Mario's Butcher Shop, Inc.* and attached hereto as Exhibit 2 is a copy of Judge Harts order.

Plaintiff recognizes that the decisions by District Court Judges Moran, Kenelly, Kendall, Hart and others in this Circuit are not binding on this Court. However, Defendant does not even bother to distinguish any of those decisions. Plaintiff respectfully submits that Defendant made that decision because it is difficult, to say the least, to quarrel with so many well-reasoned decisions by a variety of Judges in this district.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's Amended Complaint should be denied.

Respectfully submitted,

KIM MILLER-HUGGINS,
individually and on behalf of all others
similarly situated,


By: /s/James X. Bormes_____
    Attorney for plaintiff


James X. Bormes
Law Office of James X. Bormes, P.C.
8 South Michigan Avenue
Suite 2600
Chicago, Illinois 60603
312-201-0575

Thomas M. Ryan
Law Offices of Thomas M. Ryan
35 E. Wacker Drive
Suite 650
Chicago IL 60601
312-726-3400

# EXHIBIT 1

**A-78**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| KIM MILLER-HUGGINS, **individually and on behalf of all others similarly situated,** | ) ) ) ) | FILED:    JUNE 23, 2009<br>09CV3774<br>JUDGE HART<br>MAGISTRATE JUDGE ASHMAN |
| v. | ) ) | **JURY DEMANDED** |
| **MARIO'S BUTCHER SHOP, INC.**        **Defendant.** | ) ) ) | |

### CLASS ACTION COMPLAINT

Plaintiff Kim Miller-Huggins, individually and on behalf of all others similarly situated (collectively "Plaintiffs"), through her attorney, James X. Bormes, and for her claim against Defendant Mario's Butcher Shop, Inc., alleges as follows:

### INTRODUCTION

1.      This lawsuit is brought against Defendant Mario's Butcher Shop, Inc. ("Mario's") for its violation of 15 U.S.C. §168 1c(g) *et seq.,* the federal Fair and Accurate Credit Transactions Act ("FACTA" or the "Act") and its implementing regulations. Defendant failed and continues to fail to omit credit card expiration dates from receipts it creates at the point of sale of its products, as required by the Act. Plaintiff brings this as a class action, on behalf of herself and all others similarly situated, pursuant to Fed. R. Civ. P. 23.

### PARTIES

2.      Plaintiff Kim Miller-Huggins is a citizen of the State of Illinois, County of Cook, and resides in this judicial district.

3.      Defendant is, upon information and belief, an Illinois corporation which operates in the State of Illinois, County of Cook, and resides in this judicial district. Defendant operates a butcher shop and food store at 5817 Madison, Chicago, Illinois, which accepts credit cards or debit cards for the transaction of business.

4.      Defendant is thus a "person", as that term is defined in 15 U.S.C. §1681a(b).

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and 15 U.S.C. §1681p.

6.      Venue in this district is proper because Defendant transacts business here.

## FACTA

7.      Section 1681c(g) of FACTA provides, in relevant part:

> [N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

8.      The Act gave merchants who accept credit cards and/or debit cards up to three years to comply with its requirements, requiring full compliance with its provisions no later than December 4, 2006.  Additionally, an amendment to the Act effective June 3, 2008 provides:

> Clarification of willful noncompliance. For the purposes of this section, any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004 and the date of the enactment of this subsection [enacted June 3, 2008] but otherwise complied with the requirements of section 605(g) [15USCS § 1681(g)] for such receipt shall not be in willful noncompliance with section 605(g) [15USCS §

2

1681(g)] by reason of printing such expiration date on the receipt.

15 U.S.C. § 1681n.(d).

### FACTS RELATED TO PLAINTIFF

9.      On or about April 20, 2009, Plaintiff purchased food items from Defendant and wished to charge the cost of those items to a credit card.

10.      At the time of the purchase, Defendant sought Plaintiff's signature to validate the charge on her credit card, to reflect the purchases of services.

11.      Defendant did not, and does not, record credit card or debit card account numbers solely by handwriting or by an imprint or copy of the card.

12.      The receipt on April 20, 2009 which Defendant provided to Plaintiff displayed the expiration date of her credit card.  (A Copy of the receipt with Plaintiff's credit expiration date redacted is attached as Exhibit 1.)

### FACTS RELATED TO OTHER CUSTOMERS

13.      Upon information and belief, many other customers of Defendant have used a credit card or debit card to purchase items from Defendant, and in each such instance, the receipt is provided to the customer, and contains the account number and expiration date of the debit or credit card.

### DEFENDANT'S CONDUCT WAS WILLFUL

14.      FACTA was enacted in 2003 and gave merchants who accept credit card and/or debit cards up to three years to comply with its requirements, requiring compliance for all machines no later than December 4, 2006.  Additionally, FACTA was amended effective June 3, 2008 to give merchants an additional opportunity to comply with the

3

expiration date requirements of FACTA.

15.     Defendant knew or should have known of the truncation requirement; the requirement was widely publicized among retailers.

16.     Upon information and belief, credit card issuing organizations required compliance with FACTA by contract, in advance of the Act's mandatory compliance date.

17.     Most of Defendant's business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement. Defendant could have readily done the same.

18.     Defendant willfully disregarded the mandates of FACTA and continued to use cash registers or other machines or devices that print receipts in violation of the Act.

## THE CLASS HEREIN

19.     Plaintiff brings this action on behalf of a class pursuant to Fed. R. Civ. P. 23 (a) and (b) (3).

20.     Plaintiff brings this action on her own behalf and on behalf of a class of all others similarly situated to whom Defendant provided a printed receipt at the point of sale or transaction which displays: (a) after December 4, 2006 more than the last five digits of the person's credit card or debit card number, (b) after June 3, 2008 the expiration date of the person's credit or debit card, or (c) both.

21.     The class is so numerous that joinder of all members is impracticable. The exact size of the plaintiff class is not known, but the size of the class and the identification of

4

its members is subject to determination through information within the exclusive control of Defendant.

22. There are questions of law and fact common to the class, which predominate over questions which may affect individual members. These questions include, *inter alia:* Whether Defendant had a practice of providing customers with a sales or transaction receipt which failed to comply with the truncation requirement of FACTA, 15 U.S.C. § 1681c(g) *et seq.;* whether Defendant thereby violated the Act; whether Defendant's conduct was willful; and whether judgment should be entered in favor of each member of the plaintiff class and against Defendant.

23. The claims of the representative plaintiff are typical of the claims of the class members: Plaintiff and each member of the putative class, provided their credit card or debit card to Defendant at the point of sale or transaction and received a receipt that displayed the expiration date of their credit or debit card.

24. The named plaintiff has the same interests as do other members of the class and will vigorously prosecute these interests on behalf of the class, and Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has no interests that conflict with the interests of the class members. Plaintiff has retained experienced counsel.

25. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia,* the commonality of issues of law and fact, as well as the relatively small liability to each class member substantially diminishes the interest of members of the class in individually controlling the prosecution of separate actions; many of the members of putative class are unaware of their rights to prosecute and do not have the means or resources to secure legal assistance;

there has been little, if any, litigation already commenced by members of the class to determine the questions here presented; and a class action can be managed without undue difficulty since Defendant has regularly committed the violations complained of herein, in a standardized manner, and is required to have records of its dealings with each member of the class.

**COUNT I**
**VIOLATION OF 15 U.S.C. § 1681c(g)** *et seq.*

26.      Plaintiff realleges paragraphs 1 through 25 as paragraph 26 of this Complaint.

27.      Plaintiff Kim Miller-Huggins brings this action on behalf of herself and a class of persons similarly situated to whom Defendant provided a printed receipt at the point of sale or transaction which displays: (a) after December 4, 2006 more than the last five digits of the person's credit card or debit card number, (b) after June 3, 2008 the expiration date of the person's credit or debit card, or (c) both.

28.      15 U.S.C. § 1681c(g) prohibits any person that accepts credit cards or debit cards for the transaction of business from printing more than the last four digits of the person's credit card or debit card or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

29.      Defendant knew or should have known of the truncation requirement.

30.      Defendant willfully violated § 1681c(g) of the Act because it provided printed receipts to its customers at the point of sale or transaction which displayed the expiration date of the person's credit or debit card.

31.      Section 168 n of the Act provides, in relevant part:

§1681n. Civil liability for willful noncompliance

6

(a) In general.

Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of –

(1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or

(B)    in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;

(2)    such amount of punitive damages as the court may allow; and

(3)    in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

32.    Plaintiff and each member of the plaintiff class are entitled to statutory damages pursuant to §1681n of the Act.

WHEREFORE, Plaintiff and the plaintiff class pray for the entry of an order:

a) Entering judgment against Defendant, and finding and declaring that Defendant's acts and practices complained of herein are in violation of the Act;

b) Enjoining Defendant from printing any receipt which displays more than the last 5 digits of a customer's credit or debit card number, or the expiration date of such credit or debit card;

c) Awarding statutory damages to Plaintiff and the plaintiff class in the amount of $100 to $1,000 per violation, as set forth in the Act;

d) Awarding Plaintiff and the plaintiff class all of their costs and reasonable attorney's fees incurred in bringing this action; and

e) Granting such other and further relief as this Court may deem adequate and just, including punitive damages.

Respectfully submitted,


By: /s/James X. Bormes
      Attorney for plaintiff


James X. Bormes
Law Offices of James X. Bormes, P.C.
8 South Michigan Avenue
Suite 2600
Chicago, Illinois 60603
312- 201-0575

8

Case 1:09-cv-02677-DAB-RLE Document 28-3 Filed 07/23/09 Page 1 of 20 Page ID #: 124

# EXHIBIT 2

A-87

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.2.2
### Eastern Division

Kim Miller−Huggins

                  Plaintiff,

v.

                                   Case No.: 1:09−cv−03774
                                   Honorable William T. Hart

Mario's Butcher Shop, Inc.

                  Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, July 16, 2009:

      MINUTE entry before the Honorable William T. Hart:Motion hearing held. Defendant's motion to dismiss [10] is denied; defendant is given to 7/30/2009 to answer the complaint. Defendant's motion to stay [12] is denied. Briefing schedule set on plaintiff's motion class certification [7]: response due by 8/13/2009; reply due by 8/27/2009; rule by mail.Mailed notice(clw, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

09-2677.101-JCD                                          March 11, 2010

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION


KIM MILLER-HUGGINS,                    )
                                       )
            Plaintiff,                 )
                                       )
            v.                         )     No. 09 C 2677
                                       )
SPACLINIC, LLC,                        )
                                       )
            Defendant.                 )


### MEMORANDUM OPINION

Before the court is defendant's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is granted.

Plaintiff Kim Miller-Huggins brings this action alleging that defendant SpaClinic, LLC ("SpaClinic") violated the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681c(g), by issuing her a credit-card receipt on April 17, 2009 that displayed the expiration date of her credit card. Plaintiff seeks to represent a class of consumers to whom SpaClinic allegedly issued receipts that violated FACTA. SpaClinic moves to dismiss the amended class action complaint for failure to state a claim.

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004). Under federal

- 2 -

notice-pleading standards, a complaint need not contain "detailed
factual allegations," but it must have more than mere "labels and
conclusions."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555
(2007).  A plaintiff is obligated to provide the factual grounds of
his entitlement to relief, and a "formulaic recitation" of the
elements of a claim will not do.  Id.  The complaint must contain
sufficient facts to raise a plaintiff's right to relief above a
"speculative" level, id. at 555, and the claim must be "plausible
on its face," id. at 570.  "A claim has facial plausibility when
the plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged."  Ashcroft v. Iqbal, --- U.S. ----, ----, 129
S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  When evaluating a
motion to dismiss a complaint, we must accept as true all factual
allegations in the complaint, but not its legal conclusions.  Id.
at 1949-50.

FACTA, an amendment to the Fair Credit Reporting Act (the
"FCRA"), was enacted in 2003 to reduce the incidence of identity
theft and credit/debit card fraud.  The truncation provision of
FACTA states that "no person that accepts credit cards or debit
cards for the transaction of business shall print more than the
last 5 digits of the card number or the expiration date upon any
receipt provided to the cardholder at the point of the sale or
transaction."  15 U.S.C. § 1681c(g)(1).  "Any person who willfully

- 3 -

fails to comply" with FACTA with respect to a consumer is liable to
that consumer for "any actual damages sustained by the consumer as
a result of the failure or damages of not less than $100 and not
more than $1,000." 15 U.S.C. § 1681n(a).

Plaintiff alleges that SpaClinic's failure to comply with
FACTA was willful, and she seeks statutory, not actual, damages.
SpaClinic contends that plaintiff has failed to adequately plead
that SpaClinic's conduct was willful.[1]  In the section of the
amended complaint titled "Defendant's Conduct Was Willful,"
plaintiff alleges:

> 17.  FACTA was enacted in 2003 and gave merchants who
> accept credit cards and/or debit cards up to three years
> to comply with its requirements, requiring compliance for
> all machines no later than December 4, 2006.
> Additionally, FACTA was amended effective June 3, 2008 to
> give merchants an additional opportunity to comply with
> the expiration date requirements of FACTA.

> 18.  Defendant knew or should have known of the
> truncation requirement; the requirement was widely
> publicized among retailers.

> 19.  Upon information and belief, credit card issuing
> organizations required compliance with FACTA by contract,
> in advance of the Act's mandatory compliance date.

> 20.  Most of Defendant's business peers and competitors
> readily brought their credit card and debit card receipt
> printing process into compliance with FACTA by
> programming their card machines and devices to comply
> with the truncation requirement.  Defendant could have
> readily done the same.

---

[1]  We have disregarded defendant's argument to the extent that it attempts
to dispute, rather than challenge the sufficiency of, the allegation of
willfulness.  The affidavit attached to defendant's motion is thus disregarded
as outside the pleadings.  We reject defendant's invitation in its reply brief
to treat its motion as a motion for summary judgment.

- 4 -

21. Defendant willfully disregarded the mandates of FACTA and continued to use cash registers or other machines or devices that print receipts in violation of the Act.

(Am. Class Action Compl. ¶¶ 17-21.)

The Supreme Court has held that willfulness under the FCRA encompasses both knowing and reckless conduct. See Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 56-57 (2007). "[A] company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Id. at 69. Recklessness under the FCRA is "something more than negligence but less than knowledge of the law's requirements." Murray v. New Cingular Wireless Servs., Inc., 523 F.3d 719, 726 (7th Cir. 2008).

Pursuant to Iqbal, plaintiff must plead factual content that allows us to draw the reasonable inference that SpaClinic knowingly or recklessly printed the expiration date on her receipt. In the court's view, plaintiff's allegations do not permit the inference that SpaClinic's conduct was anything more than negligent. Plaintiff alleges that FACTA's requirements were well-publicized and that credit card companies required compliance with the statute, but these allegations are not specific to the defendant. The reported decisions cited by plaintiff in support of her opposition to the motion are distinguishable because first, they

**A-92**

- 5 -

predated <u>Iqbal</u>, and second, the plaintiffs in those cases alleged that the defendants had been informed of FACTA's requirements. Miller-Huggins, in contrast, does not allege that SpaClinic had such notice. Her allegation that SpaClinic "willfully disregarded the mandates of FACTA," Am. Class Action Compl. ¶ 21, is conclusory. Accordingly, defendant's motion to dismiss the amended complaint will be granted.

<u>**CONCLUSION**</u>

For the foregoing reasons, defendant's motion to dismiss the amended complaint [22] is granted, and the complaint is dismissed without prejudice. Plaintiff is given leave to file a second amended complaint by April 2, 2010 that adequately alleges willfulness, if she can do so. If she chooses not to file a second amended complaint by that date, the case will be dismissed with prejudice. In light of our ruling, plaintiff's motions for class certification [5, 15] are denied without prejudice to the filing of a new motion in the event that a second amended complaint is filed.

Defendant is advised that if plaintiff files a second amended complaint, and defendant wishes to file a dispositive motion that relies on matter that goes beyond the pleadings (such as an affidavit like the one attached to the instant motion to dismiss), the appropriate vehicle would be a motion for summary judgment, not a motion to dismiss.

A-93

- 6 -

DATE:          March 11, 2010


ENTER:        _____

              John F. Grady, United States District Judge

Case 14-3709, Document 38, 01/14/2015, 1415852, Page99 of 224

A-94

Case 2:13-cv-02177-SAC-KGS   Document 1   Filed 04/17/13   Page 1 of 11
Case 1:13-cv-07013-JSR   Document 17-8   Filed 12/16/13   Page 1 of 11

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **AMELIA KOMOROWSKI** | ) | |
| **108 Huntington Road** | ) | |
| **Kansas City, MO 64113** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **MAGARET FINN** | ) | |
| **5136 Main** | ) | |
| **Kansas City, MO 64112** | ) | |
| | ) | |
| **On behalf of themselves and on behalf of** | ) | |
| **all others similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No.** `13-cv-2177 SAC/KGS` |
| | ) | |
| **v.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **ALL-AMERICAN INDOOR SPORTS, INC** | ) | |
| **[Serve Registered Agent:** | ) | |
| **Stephen D. McGiffert** | ) | |
| **11000 King** | ) | |
| **Overland Park, KS 66210]** | ) | |
| | ) | |
| **Defendant.** | ) | |

## CLASS ACTION COMPLAINT

## NATURE OF THE ACTION

1.     This is a proposed class action under the Fair and Accurate Credit Transactions

Act ("FACTA") seeking statutory damages for Defendant's failure to comply with its legal duty

to protect the Plaintiffs and other similarly situated members of the putative class from identity

theft resulting in credit and debit card fraud and other forms of identity theft.

1

Case 14-3709, Document 38, 01/14/2015, 1415852, Page100 of 224

A-95

Case 2:13-cv-02177-SAC-KGS   Document 1   Filed 04/17/13   Page 2 of 11
Case 1:13-cv-07013-JSR   Document 17-8   Filed 12/16/13   Page 2 of 11

## SUBJECT MATTER JURISDICTION

2.      This civil action arises under 15 U.S.C. §§1681 *et seq.*, and therefore, is a cause of action arising under the laws of the United States; accordingly, this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

## PERSONAL JURISDICTION AND VENUE

3.      As described herein, a substantial part of the acts and omissions giving rise to the claims occurred within this District; accordingly, venue in this judicial district is proper under 28 U.S.C. §1391(b) and (c).

## THE PARTIES

4.      Plaintiff Amelia Komorowski at all times relevant hereto, was a resident of Missouri and transacted business with Defendant in this judicial district.

5.      Plaintiff Margaret Finn at all times relevant hereto, was a resident of Missouri and transacted business with Defendant in this judicial district.

6.      Defendant All-American Indoor Sports, Inc. (hereinafter "AAIS") is a Kansas corporation with a principal address at 8875 Rosehill Road, Lenexa, Kansas 66215.  AAIS may be served with process upon its Registered Agent:  Stephen D. McGiffert, 11000 King, Overland Park, Kansas 66210.

7.      Defendant AAIS does business in this district, among other places, at 8875 Rosehill Road, Lenexa, Kansas 66215, where at least one of the transactions in question took place.

8.      Defendant AAIS is a "person that accepts credit cards or debit cards for the transaction of business" within the meaning of FACTA.

## ADDITIONAL ALLEGATIONS

9.      The Federal Trade Commission estimates that over 9 million persons each year have their identity assumed by criminals for financial gain, causing losses in excess of $50 billion.

10.     In early 2003, the payment card industry and Congress announced that they were working together to combat identity theft. A critical part of this joint effort was the truncation of personal data from credit and debit card receipts presented to consumers at the point of sale.

11.     Truncation standards permit the publication of the last five digits of customer account numbers on the receipt presented to customers at the point of sale.  The standards do not permit the inclusion of the card's expiration date. The publication of this minimal amount of account information is necessary to facilitate merchant account reconciliation and processing of returns.

12.     The publication of only the last five digits of a customer account number and the exclusion of the card's expiration date drastically limits the extent to which a potential thief can use a customer's receipts to facilitate identity theft.

13.     Credit and debit card account numbers are not randomly generated. Instead, account numbers reflect an internal coding scheme set forth by the International Organization for Standardization.

14.     Astute identity thieves are familiar with this coding scheme and can use sophisticated mathematical modeling to decipher account numbers.

15.     To help combat and prevent the use of such credit and debit card information by criminals engaging in identity theft, Congress passed the Fair and Accurate Credit Transactions Act ("FACTA").

Case 14-3709, Document 38, 01/14/2015, 1415852, Page102 of 224

A-97

Case 2:13-cv-02177-SAC-KGS   Document 1   Filed 04/17/13   Page 4 of 11
Case 1:13-cv-07013-JSR   Document 17-8   Filed 12/16/13   Page 4 of 11

16.     Specifically, FACTA (codified as 15 U.S.C. §1681c(g) of the Fair Credit Reporting Act) provides:

> [N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

When Congress passed FACTA in 2003, it gave businesses with existing point of sale credit and/or debit card machines until December 4, 2006 to comply with its requirements before the law would be fully enforced.

17.     Even though Defendant AAIS had up to three years to comply, it willfully violated FACTA and failed to protect Plaintiffs and others similarly situated against credit card and debit card fraud and other forms of identity theft by printing the expiration date of the credit card number on receipts provided to cardholders transacting business with Defendant as described herein.

18.     Plaintiffs, on behalf of themselves and all others similarly situated, bring this action against Defendant based on Defendant's violation of 15 U.S.C. §§1681 *et seq.*

19.     Plaintiffs seek, on behalf of themselves and the members of the class, statutory damages, punitive damages, costs and attorneys fees, all of which are expressly made available by statute, 15 U.S.C. §§1681 *et seq.*

20.     FACTA's requirement that merchants truncate credit and debit card numbers and exclude expiration dates was phased in over a three-year period.

21.     During the three year phase-in period, there was extensive publicity regarding FACTA's requirements.

4

Case 14-3709, Document 38, 01/14/2015, 1415852, Page103 of 224

A-98

Case 2:13-cv-02177-SAC-KGS   Document 1   Filed 04/17/13   Page 5 of 11
Case 1:13-cv-07013-JSR   Document 17-8   Filed 12/16/13   Page 5 of 11

22.     The cost of truncating card numbers and eliminating expiration dates is *de minimis.* Generally, a simple modification of the credit card machine software is all that is necessary to bring a retailer into compliance with FACTA.

23.     Defendant had actual knowledge of FACTA's requirements, specifically including the requirement that all but the last five digits of credit and debit card numbers were required to be truncated on receipts presented to consumers at the point of sale and that all expiration dates were to be removed.

## CLASS ALLEGATIONS

24.     Plaintiffs bring this class action on behalf of themselves and all others similarly situated pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure.

25.     Plaintiffs seek to represent a class of persons to be defined as follows:

a.     With respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that was in use prior to January 1, 2005: all persons to whom Defendant provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring on or after February 15, 2007, on which Defendant printed more than the last five digits of the person's credit or debit card or printed the expiration date; and/or

b.     With respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that was first put into use on or after January 1, 2005: all persons to whom Defendant provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring on or after February 15, 2007 after

Case 14-3709, Document 38, 01/14/2015, 1415852, Page104 of 224

A-99

Case 2:13-cv-02177-SAC-KGS   Document 1   Filed 04/17/13   Page 6 of 11
Case 1:13-cv-07013-JSR   Document 17-8   Filed 12/16/13   Page 6 of 11

such machine was put into use, on which Defendant printed more than the last five digits of the person's credit or debit card or printed the expiration date.

26.     The class described above is so numerous that joinder of all individual members in one action would be impracticable.

27.     The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court.

28.     Plaintiffs are informed and believe, and thereon allege, that there are at minimum, hundreds of members of the class described above.

29.     The exact size of the class and the identities of the individual members thereof are ascertainable through Defendant's records, including but not limited to Defendant's sales and transaction records.

30.     Plaintiffs' claims are typical of the claims of the members of the class. The claims of the Plaintiffs and members of the class are based on the same legal theories and arise from the same unlawful and willful conduct.

31.     Plaintiffs and members of the class were each customers of Defendant, each having made a purchase or transacted other business with Defendant using a credit or debit card.

32.     At the point of such sale or transaction with Plaintiffs and members of the class, Defendant provided to Plaintiffs and each member of the class a receipt in violation of 15 U.S.C. §1681c(g).

33.     There is a well-defined community of interest and common questions of fact and law affecting members of the class.

Case 14-3709, Document 38, 01/14/2015, 1415852, Page105 of 224

A-100

Case 2:13-cv-02177-SAC-KGS   Document 1   Filed 04/17/13   Page 7 of 11
Case 1:13-cv-07013-JSR   Document 17-8   Filed 12/16/13   Page 7 of 11

34.     The questions of fact and law common to the class predominate over questions which may affect individual members and include the following:

a.      Whether Defendant's conduct of providing Plaintiffs and the members of the class with a sales or transaction receipt whereon Defendant printed more than the last five digits of a credit or debit card number and/or printed the expiration date of the credit or debit card violated FACTA, 15 U.S.C. §§1681 *et seq.*;

b.      Whether Defendant's conduct in failing to truncate credit or debit card numbers and exclude expiration dates on printed receipts was willful; and

c.      Whether Plaintiffs and members of the class are entitled to statutory damages, punitive damages, costs and/or attorneys' fees for Defendant's acts and conduct;

35.     Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the members of the class.

36.     Plaintiffs will fairly, adequately, and vigorously represent and protect the interests of the members of the class and have no interests antagonistic to the members of the class.

37.     Plaintiffs have retained counsel who is competent and experienced in class action litigation.

38.     A class action is superior to other available means for the fair and efficient adjudication of the claims of the class.

39.     While the aggregate damages which may be awarded to the members of the class are likely to be substantial, the damages suffered by the individual members of the class are relatively small.

Case 14-3709, Document 38, 01/14/2015, 1415852, Page106 of 224

A-101

Case 2:13-cv-02177-SAC-KGS   Document 1   Filed 04/17/13   Page 8 of 11
Case 1:13-cv-07013-JSR   Document 17-8   Filed 12/16/13   Page 8 of 11

40.    As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the class to individually seek redress for the wrongs done to them.

41.    Plaintiffs do not know of any other litigation concerning this controversy already commenced by or against any member of the class in the state of Kansas.

42.    The likelihood of the individual members of the class prosecuting separate claims is remote. Furthermore, individual litigation presents the potential for inconsistent or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues.

43.    In contrast, the conduct of this matter as a class action presents fewer management difficulties, provides for increased judicial economy, and would protect the rights of each member of the class.

44.    Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

## CLAIM I – VIOLATION OF 15 U.S.C. §§1681 *et seq.*

45.    Plaintiffs hereby incorporate by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

46.    Plaintiffs bring this claim on behalf of themselves and the members of the class against Defendant.

47.    Title 15 U.S.C. §1681c(g)(1) provides that:

> [N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

Case 14-3709, Document 38, 01/14/2015, 1415852, Page107 of 224

A-102

Case 2:13-cv-02177-SAC-KGS   Document 1   Filed 04/17/13   Page 9 of 11
Case 1:13-cv-07013-JSR   Document 17-8   Filed 12/16/13   Page 9 of 11

48.     With respect to machines that were in use before January 1, 2005, 15 U.S.C. §1681c(g)(3)(A) required compliance with the provisions of 15 U.S.C. §1681c(g)(1) on or after December 4, 2006.

49.     With respect to machines that were first put into use on or after January 1, 2005, 15 U.S.C. §1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C. §1681c(g)(1).

50.     Defendant transacts business in the United States and accepts credit cards and/or debit cards in the course of transacting business with persons such as Plaintiffs and the members of the class.

51.     In transacting such business, Defendant uses cash registers and/or other machines or devices that electronically print receipts for credit card and/or debit card transactions.

52.     Among other transactions, on January 6, 2013, after the effective date of the statute, Defendant provided Plaintiff Komorowski with an electronically printed receipt on which Defendant printed the expiration date of Plaintiff's credit or debit card number.

53.     Defendant provided Plaintiff Komorowski with this electronically printed receipt for a purchase with her credit or debit card at the AAIS located at 8875 Rosehill Road, Lenexa, Kansas.

54.     Among other transactions, on January 6, 2013, after the effective date of the statute, Defendant provided Plaintiff Finn with an electronically printed receipt on which Defendant printed the expiration date of Plaintiff's credit or debit card number.

55.     Defendant provided Plaintiff Finn with this electronically printed receipt for a purchase with her credit or debit card at the AAIS located at 8875 Rosehill Road, Lenexa, Kansas.

Case 14-3709, Document 38, 01/14/2015, 1415852, Page108 of 224

A-103

Case 2:13-cv-02177-SAC-KGS   Document 1   Filed 04/17/13   Page 10 of 11
Case 1:13-cv-07013-JSR   Document 17-8   Filed 12/16/13   Page 10 of 11

56.     Defendant, at the point of a sale to or transaction with members of the class, provided each member of the class with one or more electronically printed receipts on which Defendant printed the expiration date and/or more than the last five digits of such class member's credit or debit card number.  Defendant did so either:  a) through use of a machine that was first put into use on or after January 1, 2005, at any time after such date; or b) through any machine at any time after December 4, 2006.

57.     Defendant knew or should have known about the requirements of FACTA, including specifically FACTA's requirements concerning the truncation of credit and debit card numbers and the exclusion of the card's expiration date.

58.     Defendant willfully violated FACTA's requirements by printing the expiration date and/or more than the last five digits of credit or debit card numbers upon the receipts provided to members of the class.

59.     Defendant willfully violated FACTA in conscious disregard of the rights of Plaintiffs and the members of the class thereby exposing Plaintiffs and the members of the class to an increased risk of credit and debit card fraud as well as other forms of identity theft.

60.     As a result of Defendant's willful violations of FACTA, Defendant is liable to Plaintiffs and each member of the class in the statutory damage amount of "not less than $100 and not more than $1000" for each violation.  15 U.S.C. §1681n(a)(1)(A).

61.     As a result of Defendant's willful violations of FACTA, Plaintiffs and the members of the class are entitled to recover costs of suit and their reasonable attorneys' fees.  15 U.S.C. §1681n(a)(3).

62.     As a result of Defendant's willful violations of FACTA, Plaintiffs and the members of the class are entitled to recover punitive damages.  15 U.S.C. §1681n(a)(2).

Case 14-3709, Document 38, 01/14/2015, 1415852, Page109 of 224

A-104

Case 2:13-cv-02177-SAC-KGS   Document 1   Filed 04/17/13   Page 11 of 11
Case 1:13-cv-07013-JSR   Document 17-8   Filed 12/16/13   Page 11 of 11

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the class, pray for an order (1) certifying the class; (2) appointing Plaintiffs as the representatives of the class; (3) appointing counsel for Plaintiffs as counsel for the class; (4) awarding to Plaintiffs and the members of the class statutory damages pursuant to 15 U.S.C. §1681n(a)(1)(A) for Defendant's willful violations; (5) awarding to Plaintiffs and the members of the class punitive damages pursuant to 15 U.S.C. §1681n(a)(2); (6) that Defendant pay the costs of suit herein incurred pursuant to, *inter alia*, 15 U.S.C. §1681n(a)(3); (7) that Defendant pay Plaintiffs' reasonable attorneys' fees pursuant to, *inter alia*, 15 U.S.C. §1681n(a)(3); and (8) for other and further relief as the Court may deem proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury as to all issues stated herein, and all issues so triable.

**DESIGNATED PLACE OF TRIAL**

Plaintiffs designate Kansas City, Kansas as the place of trial on this matter.

Respectfully submitted,

By: _ *s/ Brandee B. Bower* _____
Brandee B. Bower, KS # 70719
9218 W. 82nd Terrace
Overland Park, KS 66204
Tel (816) 506-6397
brandee.bower@gmail.com

Case 14-3709, Document 38, 01/14/2015, 1415852, Page110 of 224

A-105

Case 2:13-cv-02177-SAC-KGS   Document 6   Filed 07/29/13   Page 1 of 14
Case 1:13-cv-07013-JSR   Document 17-9   Filed 12/16/13   Page 1 of 14

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **AMELIA KOMOROWSKI,** *et al.* | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 2:13-CV02177-SAC-KGS** |
| | ) | |
| **v.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **ALL-AMERICAN INDOOR SPORTS, INC** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiffs by and through the undersigned counsel submit to the Court the following

Memorandum in Opposition to Defendant's Motion to Dismiss:

**STATEMENT OF THE NATURE OF THE MATTER BEFORE THE COURT**

Plaintiffs filed a class action Complaint against Defendant for violations of the Fair and

Accurate Credit Transactions Act ("FACTA"), which prohibits printing more than the last five

digits of a credit card number and prohibits printing the expiration date. Plaintiffs, among others,

received numerous receipts in violation of FACTA. As such, Plaintiffs are entitled to damages

from Defendant. Defendant has filed a Motion to Dismiss the matter.

**STATEMENT OF PERTINENT FACTS**

Since Defendant has filed a Motion to Dismiss, the pertinent facts, which must be taken

as true, are contained within Plaintiffs' Complaint. Defendant is alleging that Plaintiffs'

Complaint fails to state a claim against Defendant for willful violations of FACTA. The main

facts at issue from the Complaint are as follows:

Case 14-3709, Document 38, 01/14/2015, 1415852, Page111 of 224

A-106

Case 2:13-cv-02177-SAC-KGS   Document 6   Filed 07/29/13   Page 2 of 14
Case 1:13-cv-07013-JSR   Document 17-9   Filed 12/16/13   Page 2 of 14

16. Specifically, FACTA (codified as 15 U.S.C. §1681c(g) of the Fair Credit Reporting Act) provides:

> [N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

When Congress passed FACTA in 2003, it gave businesses with existing point of sale credit and/or debit card machines until December 4, 2006 to comply with its requirements before the law would be fully enforced.

17. Even though Defendant AAIS had up to three years to comply, it willfully violated FACTA and failed to protect Plaintiffs and others similarly situated against credit card and debit card fraud and other forms of identity theft by printing the expiration date of the credit card number on receipts provided to cardholders transacting business with Defendant as described herein.

20. FACTA's requirement that merchants truncate credit and debit card numbers and exclude expiration dates was phased in over a three-year period.

21. During the three year phase-in period, there was extensive publicity regarding FACTA's requirements.

22. The cost of truncating card numbers and eliminating expiration dates is *de minimis*. Generally, a simple modification of the credit card machine software is all that is necessary to bring a retailer into compliance with FACTA.

23. Defendant had actual knowledge of FACTA's requirements, specifically including the requirement that all but the last five digits of credit and debit card numbers were

Case 14-3709, Document 38, 01/14/2015, 1415852, Page112 of 224

A-107

Case 2:13-cv-02177-SAC-KGS   Document 6   Filed 07/29/13   Page 3 of 14
Case 1:13-cv-07013-JSR   Document 17-9   Filed 12/16/13   Page 3 of 14

required to be truncated on receipts presented to consumers at the point of sale and that all expiration dates were to be removed.

57.     Defendant knew or should have known about the requirements of FACTA, including specifically FACTA's requirements concerning the truncation of credit and debit card numbers and the exclusion of the card's expiration date.

58.     Defendant willfully violated FACTA's requirements by printing the expiration date and/or more than the last five digits of credit or debit card numbers upon the receipts provided to members of the class.

59.     Defendant willfully violated FACTA in conscious disregard of the rights of Plaintiffs and the members of the class thereby exposing Plaintiffs and the members of the class to an increased risk of credit and debit card fraud as well as other forms of identity theft.

60.     As a result of Defendant's willful violations of FACTA, Defendant is liable to Plaintiffs and each member of the class in the statutory damage amount of "not less than $100 and not more than $1000" for each violation.  15 U.S.C. §1681n(a)(1)(A).

## QUESTION PRESENTED

Whether Defendant's Motion to Dismiss lacks merit since Plaintiffs have sufficiently pled facts in the Complaint as to allege a willful violation and since whether or not there was a willful violation by Defendant is a question for the jury.

## ARGUMENT AND AUTHORITIES

## STANDARD FOR MOTION TO DISMISS

**A. The Framers of the Federal Rules of Civil Procedure Intended Pleading Standards to be Liberal.**

Case 14-3709, Document 38, 01/14/2015, 1415852, Page113 of 224

A-108

Case 2:13-cv-02177-SAC-KGS   Document 6   Filed 07/29/13   Page 4 of 14
Case 1:13-cv-07013-JSR   Document 17-9   Filed 12/16/13   Page 4 of 14

In framing the pleading standards under the Federal Rules of Civil Procedure (FRCP), the Advisory Committee "studiously avoided using the terms 'facts' and 'cause of action'" because those terms created so many problems in the code-pleading era predating the FRCP.  *See* Charles B. Campbell, *A "Plausible" Showing After Bell Atlantic Corp. v. Twombly,* 9 Nev.L.J. 1, 11-12 (2008) (quoting the Advisory Committee Reporter for Rule 8, Judge Charles Clark).  As the "principal draftsman" of the FRCP – and Rule 8 in particular – Judge Charles Clark "discouraged wasting time…'trying to polish up the pleadings.'"  *Twombly*, 550 U.S. at 575 (Stevens, J., dissenting); Campbell, 9 Nev. L.J. at 13 (citing Am. Bar. Ass'n, Federal Rules of Civil Procedure: Proceedings of the Institute at Washington, D.C. and of the Symposium at New York City 41 (1939)).

In short, the Framers of the FRCP believed, "'it is not the function of the pleading to prove your case,' nor is it 'the function of the pleadings to supply the place of evidence.'"  *See* Campell, 9 Nev. L.J. at 13 (quoting Judge Charles Clark).  The FRCP, then, has always contemplated the use of discovery – not a heightened pleading standard – as the means to obtain information for defending cases and guiding settlement negotiations. *Id*. Not surprisingly, only a few specifically enumerated causes of action have required pleading with particularity.  See Fed.R.Civ.Proc. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud of mistake.").

## B. The Supreme Court Has Long Enforced Fidelity to the Liberal Notice-Pleading Standard Established By The Federal Rules of Civil Procedure.

Since adoption of the FRCP in 1938, the Supreme Court has consistently followed the liberal notice-pleading standard.  The Supreme Court perhaps most emphatically set forth the legal standard in *Conley v. Gibson*: "a complaint should not be dismissed for failure to state a

4

Case 14-3709, Document 38, 01/14/2015, 1415852, Page114 of 224

A-109

Case 2:13-cv-02177-SAC-KGS   Document 6   Filed 07/29/13   Page 5 of 14
Case 1:13-cv-07013-JSR   Document 17-9   Filed 12/16/13   Page 5 of 14

claim unless it appears **beyond a doubt** that the plaintiff can prove **no set of facts** in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957) (emphasis added).

The "no-set-of-facts" or liberal notice-pleading standard repudiated the antiquated common law practice of code pleading. *See* Campbell, 9 Nev. L.J. at 21. Code pleading was a hyper-technical standard requiring a plaintiff to plead with particularity precise facts that constitute the specific case of action asserted. *Id.*

In summary, under the Supreme Court's application of the FRCP in *Conley* and related precedent, "the idea was not to keep litigants out of court but rather to keep them in." *Twombly*, 550 U.S. at 575 (Stevens, J., dissenting). Notably, the Supreme Court repeatedly reaffirmed the robust holding of *Conley* regarding the liberal notice-pleading standard. *Twombly*, 550 U.S. at 578 (Stevens, J., dissenting) (*citing SEC v. Zandford*, 535 U.S. 813, 818 (2002); *Davis v. Monroe County Bd. of Ed.*, 526 U.S. 629, 654 (1999); *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811 (1993); *Brower v. County of Inyo.*, 489 U.S. 593, 598 (1989); *Hughes v. Rowe*, 449 U.S. 5, 10 (1980) (per curiam); *McLain v. Real Estate Bd. of New Orleans, Inc*., 444 U.S. 232, 246 (1980); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 746 (1976); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 521 (1972) (per curiam); *Jenkins v. McKeithen*, 395 U.S. 411, 422 (1969)).

**C. In Deciding *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*, the Supreme Court Provided a Limited Clarification of the Liberal Notice-Pleading Standard.**

### 1. *Bell Atlantic Corp. v. Twombly*

The scope of underlying claims before the Supreme Court in *Twombly* were sweeping because "plaintiffs represent a putative class of at least 90 percent of all subscribers…in an

Case 14-3709, Document 38, 01/14/2015, 1415852, Page115 of 224

A-110

Case 2:13-cv-02177-SAC-KGS   Document 6   Filed 07/29/13   Page 6 of 14
Case 1:13-cv-07013-JSR   Document 17-9   Filed 12/16/13   Page 6 of 14

action against America's largest telecommunications firms…for unspecified instances (if any) of antitrust violations…"  550 U.S. at 559.  Thus, *Twombly* modified the pleading standard as applied to large antitrust class cases involving highly complex claims and enormous discovery costs; the clarified standard in such cases requires pleadings to "state a claim to relief that is plausible on its face." *Id.* at 570.  In explaining its holding, the Supreme Court in *Twombly* quoted an opinion by Judge Richard Posner of the Seventh Circuit:  "some threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase."  550 U.S. at 558 (quoting *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc*., 289 F.Supp.2d. 986, 995 (N.D. Ill. 2003) (Posner, J. sitting by designation).

In writing for the majority, Justice David Souter explicitly limited the reach of *Twombly* to the unique fact pattern of that case.  550 U.S. at 548-549 ("The question in this putative class action is whether a §1 complaint can survive a motion to dismiss when it alleges that major telecommunications providers engaged in certain parallel conduct unfavorable to competition, absent some factual context suggesting agreement, as distinct from identical, independent action."); *see also Id*. at 554-555 ("This case presents the antecedent question of what a plaintiff must plead in order to state a claim under § 1 of the Sherman Act.").

Consequently, the Supreme Court in *Twombly* confirmed that it was "not requir[ing] heightened fact pleading of specifics…" 550 U.S. at 570.  The Supreme Court underscored the liberal nature of the pleading standard going forward by reiterating that "of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (noting "Rule

Case 14-3709, Document 38, 01/14/2015, 1415852, Page116 of 224

A-111

Case 2:13-cv-02177-SAC-KGS   Document 6   Filed 07/29/13   Page 7 of 14
Case 1:13-cv-07013-JSR   Document 17-9   Filed 12/16/13   Page 7 of 14

12(b)(6) does not countenance…dismissals based on a judge's disbelief of a complaint's factual allegations.").  In short, a Rule 12 motion should be denied under *Twombly* when a plaintiff's factual allegations are "suggestive of illegal conduct." 550 U.S. at 564, n.8 (citations omitted).

In a *per curiam* ruling two weeks after *Twombly*, the Supreme Court in *Erickson v. Pardus* quoted *Twombly* to reiterate that the liberal notice-pleading standard still governs:

> Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the…claim is and the grounds upon which it rests."

*Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488-489 (6th Cir. 2009) (reversing the district court's dismissal of the plaintiffs' claims in light of *Erickson v. Paulus*, 551 U.S. 89 (2007)).

Given the *per curiam* decision in *Erickson*, the generally conservative Seventh Circuit explained why compelling a plaintiff to plead with heightened specificity would improperly interfere with the FRCP:

> Requiring a plaintiff to plead detailed facts interferes with [the goal of deciding claims on the merits] in multiple ways.  First, and most importantly, the number of factual details potentially relevant to any case is astronomical, and requiring a plaintiff to plead facts that are not obviously important and easy to catalogue would result in "needless controversies" about what is required that could only serve to delay or prevent trial.  Most details are more efficiently learned through the flexible discovery process.  "Instead of lavishing attention on the complaint until the plaintiff gets it just right, a district court should keep the case moving.  Second, a plaintiff might sometimes have a right to relief without knowing every factual detail supporting its right; requiring the plaintiff to plead those unknown details before discovery would improperly deny the plaintiff the opportunity to prove his claim."

*EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 779-780 (7th Cir. 2007) (citations omitted).

Case 14-3709, Document 38, 01/14/2015, 1415852, Page117 of 224

A-112

Case 2:13-cv-02177-SAC-KGS   Document 6   Filed 07/29/13   Page 8 of 14
Case 1:13-cv-07013-JSR   Document 17-9   Filed 12/16/13   Page 8 of 14

Accordingly, the FRCP's requirements should be met under *Twombly* as long as plaintiff's pleadings provide a "short and plain statement of the claim" and "gives the defendant fair notice of what the…claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Notably, Judge Posner – who provided the analytical underpinnings for *Twombly* – cited Erickson and reiterated as follows: "[*Twombly*] must not be overread. The [Supreme] Court denied that it was 'requiring heightened fact pleading of specifics, a Complaint…does not need detailed factual allegations.'" *Limestone Devel. Corp. v. Village of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008) (Posner, J.) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In *Ashcroft v. Iqbal*, the Supreme Court stated that *Twombly's* "plausibility" standard should apply to all Federal claims, not just complex antitrust class actions:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 129 S.Ct. 1937, 1949 (U.S. 2009) (citations omitted).

### 2. *Ashcroft v. Iqbal*

The Supreme Court's decision in *Ashcroft v. Iqbal* did not address, much less overrule, the Supreme Court's per curiam and post *Twombly* reaffirmation in *Erickson v. Pardus*, 551 U.S. 89 (2007) that the liberal notice pleading still governs. *Iqbal,* 129 S.Ct. at 1959. In explaining the

Case 14-3709, Document 38, 01/14/2015, 1415852, Page118 of 224

A-113

Case 2:13-cv-02177-SAC-KGS   Document 6   Filed 07/29/13   Page 9 of 14
Case 1:13-cv-07013-JSR   Document 17-9   Filed 12/16/13   Page 9 of 14

dissent in *Iqbal*, Justice Souter reiterated the meaning and scope of the majority decision in

*Twombly*:

> *Twombly* does not require a court at the motion to dismiss stage to consider whether the factual allegations are probably true. We made it clear, on the contrary, that **a court must take the allegations as true, no matter how skeptical the court may be.** The sole exception to this rule **lies with the allegations that are sufficiently fantastic to defy reality** as we know it: claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel.

*Iqbal*, 129 S.Ct. at 1959 (U.S. 2009) (Souter, J. dissenting) (citations omitted) (emphasis added).

In fact, the Eighth Circuit has continued to apply a liberal notice pleading standard even

after *Iqbal*. 129 S.Ct. 1937. In *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009), an

ERISA class action and breach of fiduciary duty case, the court held that plaintiff had made a

prima facie showing that Wal-Mart's decision making process was flawed. In *Braden*, the

Eighth Circuit reiterated that "the **complaint should be read as a whole**, not parsed piece by

piece to determine whether each allegation, in isolation, is plausible." 588 F.3d at 594 (citing

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-323 (2007)) (emphasis added).

In reversing the district court, the Eighth Circuit cited *Erickson* and explained as follows:

> The district court erred in two ways. It ignored reasonable inferences supported by the facts alleged. It also drew inferences in [the defendant's] favor, faulting [the plaintiff] for failing to plead facts tending to contradict those inferences. Each of these errors violates the familiar axiom that on a motion to dismiss, inferences are to be drawn in favor of the non-moving party. *Twombly* and *Iqbal* did not change this fundamental tenet of Rule 12(b)(6) practice... **Rule 8** does not, however, **require a plaintiff to plead "specific facts"** explaining precisely how the defendant's conduct was unlawful. Rather, **it is sufficient for a plaintiff to plead facts indirectly showing unlawful behavior**, so long as the facts pled give defendant fair notice of what the claim is and the grounds upon which it rests," and allows the court to draw the reasonable inference that the plaintiff is entitled to relief.

Case 14-3709, Document 38, 01/14/2015, 1415852, Page119 of 224

**A-114**

Case 2:13-cv-02177-SAC-KGS   Document 6   Filed 07/29/13   Page 10 of 14
Case 1:13-cv-07013-JSR   Document 17-9   Filed 12/16/13   Page 10 of 14

*Id*. at 594 (citations omitted) (emphasis added); see also Fed.R.Civ.Proc. 8(d)(1) (stating "[e]ach allegation must be simple, concise and direct.  No technical form is required."); 8(e) ("Pleadings must  be construed so as to do justice.").

Numerous other courts have also upheld that *Iqbal* and *Twombly* did not repudiate general notice pleading.  *See EEOC v. Scrub, Inc*. No. 09-C-4228, 2009 WL 3458530 (N.D. Ill., Oct. 26, 2009) (stating in discrimination case that "*Iqbal* and *Twombly* did not repudiate general notice pleading," and emphasizing that the "manner of proof is distinct from pleading requirements."); *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3rd Cir. 2009); *P.W. v. Delaware Valley Sch. Dist.*, No. 3:09cv480, 2009 WL 5215397, *3-4 (M.D. Pa. Dec. 29, 2009) (holding allegation of disability discrimination sufficient where plaintiff alleges that he is a "handicapped person who has a mental impairment which substantially limits his life activities" and who was "denied" a "meaningful educational benefit."); *Riley v. Vilsack*, 665 F.Supp.2d 994, 997 (W.D. Wis. 2009) (holding plaintiff's allegations of age discrimination survive because they are "more than conclusions," in that plaintiff alleges that "defendants targeted for outsourcing the job responsibilities of older workers while making comments about their preference for younger workers"); *Paris v. Faith Props, Inc.*, No. 4:08cv71, 2009 WL 4799736 (N.D. Ind. Dec. 8, 2009) (holding plaintiff adequately pleaded retaliation under Title VII where she provided details about her complaints about acts of sexual harassment of discrimination and alleged that her employment was terminated as a result); *Comm.  for Immigrant  Rights v. County of Sonoma*, 644 F.Supp. 2d 1177 (N.D. Cal. 2009) (deciding it is sufficient for plaintiffs to allege that defendant engaged in a racially biased policy of stopping those perceived to be Latino); *Mack v. Wilcox County Comm'n*, No. 09-00101-KD-B, 2009 WL 4884310, *5 (S.D. Ala. 2009) (holding allegation that black employees paid less than white employees and subjected to other disparate

Case 14-3709, Document 38, 01/14/2015, 1415852, Page120 of 224

A-115

Case 2:13-cv-02177-SAC-KGS   Document 6   Filed 07/29/13   Page 11 of 14
Case 1:13-cv-07013-JSR   Document 17-9   Filed 12/16/13   Page 11 of 14

treatment on account of race stated discrimination claim) (dismissed on other grounds); *Miller v. Eagle Tug Boat Companies*, No. 09-0401-C6-B, 2009 WL 4751079, *4-5 (S.D. Ala Dec. 8, 2009) (holding allegation that white applicants treated differently than plaintiff were sufficient to state plausible Title VII claim); *Rouse v. Berry*, No. 06-2088 (RWR), 2010 U.S.Dist. LEXIS 7474, *7 (D.D.C. Jan. 29, 2010) (stating that all employment discrimination plaintiff has to allege is that he was subjected to adverse action "because of" a protected class status); *EEOC v. Universal Brixius, LLC*., 264 F.R.D. 514 (E.D. Wis. 2009) (immaterial that complaint lacked certain factual allegations that must be proved to sustain a hostile work environment claim).

### D. Defendant All American's Motion to Dismiss Lacks Merit since Plaintiffs have Pled Sufficient Facts in the Complaint.

Plaintiffs' Complaint sufficiently alleges a willful violation of FACTA against Defendant.  The Complaint contains detailed, factual descriptions of Plaintiffs' claims such that Defendant is on notice of the claims presented against it and said claims are alleged in accordance with the required liberal notice-pleading standard.  The facts demonstrate that Plaintiffs have a viable claim under FACTA and as such their claims should be allowed to proceed against Defendant.  The Complaint plainly states that Defendant's violation was willful as Defendant knew or should have known of its statutory duties created in 2003 and effective since 2006.  Whether or not the violation was willful in the end is a question best answered by a jury.

Willful has been held by the Supreme Court to include both knowing and reckless violations of the FCRA.  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007).  "Reckless violations are those which occur under a reasonable reading of FCRA's terms and show that defendants 'ran a risk of violating the law substantially greater than the risk associated with a

Case 14-3709, Document 38, 01/14/2015, 1415852, Page121 of 224

A-116

Case 2:13-cv-02177-SAC-KGS   Document 6   Filed 07/29/13   Page 12 of 14
Case 1:13-cv-07013-JSR   Document 17-9   Filed 12/16/13   Page 12 of 14

reading that was merely careless.'"  *Id.* at 2215. *In re TJX, Cos., Inc., Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 2008 U.S.Dist. LEXIS 38258, 7-8 (D. Kan. May 8, 2008). Recklessness entails "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Safeco*, 551 U.S. at 68, 127 S. Ct. at 2215.  Due to the extensive publicity that surrounded the passage of FACTA, as alleged in the Complaint, Defendant knew or should have known that it was violating a statutory duty.

Plaintiffs' allegations are typical of FACTA claims and courts have almost uniformly rejected the argument that these typical allegations do not sufficiently allege willful violations of the statute.  *See, e. g., Ramirez v. MGM Mirage, Inc.*, 524 F. Supp.2d 1226, 1233 (D. Nev. 2007); *Follman v. Hospitality Plus of Carpentersville, Inc.*, 532 F. Supp.2d 960, 962-63 (N.D. Ill. 2007); *Iosello v. Leiblys, Inc.*, 502 F. Supp.2d 782, 784-85 (N.D. Ill 2007); *Ehrheart v. Lifetime Brands, Inc.*, 498 F. Supp.2d 753, 756 (E.D. Pa. 2007); n5 *See also Lopez v. Gymboree Corp.*, No. C 07-0087 SI, 2007 U.S. Dist. LEXIS 44461, 2007 WL 1690886, at *2 (N.D. Cal. June 9, 2007); *Clark v. Marshalls of MA, Inc.*, No. CV 06-8135 ABC (Shx), 2007 U.S. Dist. LEXIS 33492, 2007 WL 1100412, at *1 (C.D. Cal. Mar. 12, 2007); *In re TJX Cos., Inc., Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 2008 U.S. Dist. LEXIS 38258, 9-11 (D. Kan. May 8, 2008).  The allegations, "while simple, mirror the allegations in numerous complaints recently filed throughout the country and readily withstand a motion to dismiss." *Korman v. Walking, Co.*, 503 F. Supp. 2d 755, 756-57 (E.D. Pa. 2007).

There are numerous cases where Courts have denied a Motion to Dismiss similar to the case at hand. *See Sanders v. W&W Wholesale Inc.*, 2011 U.S. Dist. LEXIS 117860, 2011 WL 4840978, *2 (N.D. Ill. Oct. 12, 2011) ("[I]ssues concerning a state of mind such as knowledge or willfulness often involve fact-intensive inquiries and are not ordinarily resolved at the motion to

Case 14-3709, Document 38, 01/14/2015, 1415852, Page122 of 224

A-117

Case 2:13-cv-02177-SAC-KGS   Document 6   Filed 07/29/13   Page 13 of 14
Case 1:13-cv-07013-JSR   Document 17-9   Filed 12/16/13   Page 13 of 14

dismiss stage."); *Zaun v. Tuttle, Inc.*, No. 10-2191 (DWF/JJK), 2011 U.S. Dist. LEXIS 47916,

2011 WL 1741912 (D. Minn. May 4, 2011) (because defendant disregarded its third-party

compliance contractor's warning that defendant would need to upgrade its terminals to comply

with FACTA, complaint adequately alleged willful violation.); *Buechler v. Keyco, Inc.*, No.

WDQ-09-2948, 2010 U.S. Dist. LEXIS 40197, 2010 WL 1664266, *3 (D. Md. April 22, 2010)

(defendant's failure to follow FACTA's well-publicized truncation requirements sufficient to

allege a willful violation of FACTA).  For all of the above reasons, Defendant's Motion to

Dismiss should be denied.[1]

## **PRAYER FOR RELIEF**

**WHEREFORE** for the reasons set forth above, Plaintiffs respectfully request that

Defendant's Motion to Dismiss be denied and for such other and further relief as the Court may

deem proper.

Respectfully submitted,

By: _s/ Brandee B. Bower_____
   Brandee B. Bower, KS # 70719
   9218 W. 82nd Terrace
   Overland Park, KS 66204
   Tel (816) 506-6397
   brandee.bower@gmail.com

---

[1] Should the Court determine that Plaintiffs' Complaint fails to contain well plead factual allegations against Defendant, Plaintiffs respectfully request leave of Court to amend the Complaint to add additional detail, rather than dismiss Plaintiffs' claims.

13

Case 14-3709, Document 38, 01/14/2015, 1415852, Page123 of 224

A-118

Case 2:13-cv-02177-SAC-KGS   Document 6   Filed 07/29/13   Page 14 of 14
Case 1:13-cv-07013-JSR   Document 17-9   Filed 12/16/13   Page 14 of 14

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was electronically filed on this 29th day of July, 2013, with the Clerk of the Court via the CM/ECF system which automatically transmits a Notice of Electronic Filing to the following counsel:

David Buchanan
Brown & James, PC
1100 Main Street, Ste. 1900
Kansas City, MO 64105
Tel (816) 472-0800
Fax (816) 421-1183
dbuchanan@bjpc.com

Mark Gunnison
Payne & Jones, Chtd
11000 King Street
Overland Park, KS 66210
Tel (913) 469-4100
Fax (913) 469-0132
mgunnison@paynejones.com

s/Brandee B. Bower
Attorney for Plaintiffs

14

Case 14-3709, Document 38, 01/14/2015, 1415852, Page124 of 224

A-119

Case 2:13-cv-02177-SAC-KGS   Document 8   Filed 09/04/13   Page 1 of 9
Case 1:13-cv-07013-JSR   Document 17-10   Filed 12/16/13   Page 1 of 9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AMELIA KOMOROWSKI, et al.,

        Plaintiffs,

    v.                                    Case No. 13-2177-SAC

ALL-AMERICAN INDOOR SPORTS, INC.,

        Defendant.

MEMORANDUM AND ORDER

This case comes before the Court on Defendant's motion to dismiss the case for failure to state a claim under Fed. R. Civ. Pro. 12(b)(6).

Plaintiffs bring this putative class action against Defendant under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq. Plaintiffs seek statutory damages, costs and attorneys' fees, and punitive damages pursuant to 15 USC § 1681n. This section creates a private right of action for a willful violation of FCRA. *Ramirez v. Midwest Airlines, Inc.,* 537 F.Supp.2d 1161 (D.Kan. 2008).

FCRA prohibits retailers who accept credit or debit cards from "print[ing] more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1). Any person who willfully fails to comply with this requirement is subject to civil penalties. 15 U.S.C. § 1681 n(a)(1)(A). The Act defines "person" as "any individual, partnership,

Case 14-3709, Document 38, 01/14/2015, 1415852, Page125 of 224

A-120

Case 2:13-cv-02177-SAC-KGS   Document 8   Filed 09/04/13   Page 2 of 9
Case 1:13-cv-07013-JSR   Document 17-10   Filed 12/16/13   Page 2 of 9

corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." § 1681a(b). Defendant contends that Plaintiff's complaint is deficient in failing to allege a "willful violation" of the act. The Court agrees.

Willful violations of this act include both knowing and reckless violations. *See Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 127 S.Ct. 2201, 2208–09, 167 L.Ed.2d 1045 (2007). "The term willful means an omission or failure to do an act ... voluntarily and knowingly with a purpose [to] disobey or disregard of the law, or with reckless disregard of a known statutory duty under the Fair Credit Reporting Act." *Price v. Trans Union*, LLC, 839 F.Supp.2d 785, 808 (E.D.Pa. 2012). Reckless violations include conduct that violates an objective standard: action entailing "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Safeco*, 551 U.S. at 68 (quoting *Farmer v. Brennan,* 511 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). It is the "high risk of harm, objectively assessed, that is the essence of recklessness at common law." *Id.* at 69. In Safeco, "[t]he Supreme Court ..."established a safe harbor against liability for willfulness. A company cannot be said to have willfully violated FCRA if the company acted on a reasonable interpretation of FCRA's coverage." *Fuges v. Southwest Financial Services, Ltd.*, 707 F.3d 241, 248 (3d Cir. 2012).

Case 14-3709, Document 38, 01/14/2015, 1415852, Page126 of 224

A-121

Case 2:13-cv-02177-SAC-KGS   Document 8   Filed 09/04/13   Page 3 of 9
Case 1:13-cv-07013-JSR   Document 17-10   Filed 12/16/13   Page 3 of 9

**Motion to Dismiss Standard**

To survive a motion to dismiss, a plaintiff must allege facts sufficient
to demonstrate his claim for relief is plausible on its face. *Jordan–Arapahoe,
LLP v. Board of County Com'rs. of County of Arapahoe, Colo.*, 633 F.3d
1022, 1025 (10th Cir. 2011); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,
570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). " 'A claim has facial
plausibility when the [pleaded] factual content [ ] allows the court to draw
the reasonable inference that the defendant is liable for the misconduct
alleged.' " *Jordan–Arapahoe*, 633 F.3d at 1025 (quoting *Ashcroft v. Iqbal*,
556 U.S. 662, 129 S.Ct. 1937, 1940, 173 L.Ed.2d 868 (2009)). In making
this determination, the court accepts as true all well-pleaded factual
allegations included in the complaint. *Howard v. Waide*, 534 F.3d 1227,
1243 (10th Cir. 2008). The court does not, however, accept legal
conclusions, and "[t]hreadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct.
at 1949.

**Plaintiff's Complaint**

Plaintiffs' Complaint includes the following allegations arguably
relevant to the issue of willfulness:

> 17. Even though Defendant AAIS had up to three years to comply, it
> willfully violated FACTA and failed to protect Plaintiffs and others
> similarly situated against credit card and debit card fraud and other
> forms of identity theft by printing the expiration date of the credit card
> number on receipts provided to cardholders transacting business with
> Defendant as described herein.

3

Case 14-3709, Document 38, 01/14/2015, 1415852, Page127 of 224

A-122

Case 2:13-cv-02177-SAC-KGS   Document 8   Filed 09/04/13   Page 4 of 9
Case 1:13-cv-07013-JSR   Document 17-10   Filed 12/16/13   Page 4 of 9

20. FACTA's requirement that merchants truncate credit and debit card numbers and exclude expiration dates was phased in over a three-year period.

21. During the three year phase-in period, there was extensive publicity regarding FACTA's requirements.

23. Defendant had actual knowledge of FACTA's requirements, specifically including the requirement that all but the last five digits of credit and debit card numbers were required to be truncated on receipts presented to consumers at the point of sale and that all expiration dates were to be removed.

57. Defendant knew or should have known about the requirements of FACTA, including specifically FACTA's requirements concerning the truncation of credit and debit card numbers and the exclusion of the card's expiration date.

58. Defendant willfully violated FACTA's requirements by printing the expiration date and/or more than the last five digits of credit or debit card numbers upon the receipts provided to members of the class.

59. Defendant willfully violated FACTA in conscious disregard of the rights of Plaintiffs and the members of the class thereby exposing Plaintiffs and the members of the class to an increased risk of credit and debit card fraud as well as other forms of identity theft.

Dk. 1, pp. 4, 5, 10.

**Analysis**

Plaintiffs' assertions of both actual and constructive knowledge are based solely on the fact that during the three year phase-in period for the relevant FACTA requirement, there was extensive publicity regarding those requirements. But Plaintiffs neither assert nor show that this Defendant actually received, reviewed, or was otherwise apprised of those requirements. Thus, no inference of actual knowledge may reasonably be

Case 14-3709, Document 38, 01/14/2015, 1415852, Page128 of 224

**A-123**

Case 2:13-cv-02177-SAC-KGS   Document 8   Filed 09/04/13   Page 5 of 9
Case 1:13-cv-07013-JSR   Document 17-10   Filed 12/16/13   Page 5 of 9

drawn. *Compare Zahn v. Tuttle, Inc.*, 2011 WL 1741912 (D.Minn. May 4,
2011) (denying motion to dismiss where the plaintiff alleged the defendant
received specific information regarding FACTA, employed a third party
FACTA compliance manager, then canceled its contract with the compliance
manager when informed that equipment changes would be necessary to
ensure compliance with FACTA), with *Huggins v. SpaClinic, LLC*, 2010 WL
963924, 2 (N.D.Ill. 2010) (granting motion to dismiss where complaint
alleged only that FACTA's requirements were well-publicized and that credit
card companies required compliance with the statute, since those allegations
were not specific to the defendant and permit only an inference of
negligence.)  Here, nothing tends to show that the Defendant actually knew
its conduct was prohibited by statute.

This leaves the Court only with Plaintiffs' allegations of constructive
knowledge. Even assuming that Plaintiffs' assertion of a three-year grace
period with extensive publicity about FACTA may show Defendant's
constructive knowledge of FACTA's requirements, the Court is not persuaded
that constructive knowledge alone suffices to allege a *willful* violation of this
civil statute. *See e.g., Seo v. CC CJV Am. Holdings, Inc.*, 2011 WL 4946507,
*2 (C.D.Cal. Oct.18, 2011) (holding fact that information about FACTA was
available to defendant did not support plaintiff's assertion that defendant
knowingly ignored FACTA's provisions); *Gardner v. Appleton Baseball Club,
Inc.*, No. 09–C–705, 2010 WL 1368663, *5 (E.D.Wis. March 31, 2010)

Case 14-3709, Document 38, 01/14/2015, 1415852, Page129 of 224

A-124

Case 2:13-cv-02177-SAC-KGS   Document 8   Filed 09/04/13   Page 6 of 9
Case 1:13-cv-07013-JSR   Document 17-10   Filed 12/16/13   Page 6 of 9

(finding FTC's guidance on compliance with FACTA insufficient to infer that defendant printed expiration dates willfully rather than negligently); *Rosenthal v. Longchamp Coral Gables LLC,* 603 F.Supp.2d 1359, 1362 (S.D.Fla. 2009) (granting motion to dismiss because willfulness "is not established by the mere fact that FACTA's requirements were well-publicized in the media and contained in Defendant's credit card agreements." ).

Merely alleging that a defendant should be aware of a statute and fails to comply with it, as Plaintiffs have done here, is insufficient to state a claim for willfulness.

In order to allege a willful violation, there must be some allegation that the Defendant knew of the standard and voluntarily or intentionally violated it. The First Circuit, assessing whether OSHA violations were willful, explained:

Various decisions have defined "willful" violations as "conscious and intentional disregard of conditions;" "deliberate and intentional misconduct;" "careless disregard of employee safety;" "utter disregard of consequences;" and similar descriptions. They all indicate that the Complainant should at least prove that the Respondent knew of the standard, and its violation was voluntary or intentional or with plain indifference to the Act.

*Vidoni v. Acadia Corp.,* 2012 WL 1565128, 2-4  (D.Me. 2012) (citing *Brock v. Morello Bros. Const. Inc.,* 809 F.2d 161, 164 (1st Cir. 1987).

Instead, the relevant query on a motion to dismiss is fact-specific. For example, in *Vidoni,* the court granted a motion to dismiss despite allegations that the marketplace was so saturated with news regarding FACTA's expiration-date-removal requirement that the Defendant could not have

6

Case 14-3709, Document 38, 01/14/2015, 1415852, Page130 of 224

A-125

Case 2:13-cv-02177-SAC-KGS   Document 8   Filed 09/04/13   Page 7 of 9
Case 1:13-cv-07013-JSR   Document 17-10   Filed 12/16/13   Page 7 of 9

escaped awareness of it, and that Defendant's credit card issuers, bank,

point of sale providers and trade associations specifically advised Defendant

of FACTA's truncation requirements. The Court found that Defendant had

complied with FACTA at its other locations, indicating its non-compliance at

one location was inadvertent rather than knowing.

Here, Plaintiffs allege that "defendant willfully violated FACTA's

requirements by printing" the prohibited information after it should have

known about the requirements of the law. But on the facts alleged in the

Complaint, Defendant's conduct, even if negligent, was not willful.

> In essence, Plaintiff is suggesting that because most businesses know the law and follow it, the Defendant's failure to do so must have been willful. But this is an allegation that could be leveled (and apparently is) in *every* FACTA case…. Under *Iqbal* and *Twombly,* there has to be something more.
> The complaint alleges that the FTC issued guidance on compliance with FACTA, and from this we are asked to infer that the Defendant must have known about that guidance and disregarded it. But once again this is a fact about the general state of affairs in the country rather than a fact particular to the Defendant. As above, it is an allegation that could be leveled against *any* FACTA defendant. The existence of the law and/or guidance on the law is not enough to create an inference that the law was knowingly disregarded, absent some allegation that the guidance was actually sent to the Defendant or so well-publicized that everyone knew about it.
> …
> Plaintiff's argument that *every* violation of the statute would be willful simply because it *was* a violation. This once again conflates the occurrence of the act with the mental state of the actor and begs the question of willfulness. To say that a violation occurred after the grace period ended is to state only that a violation occurred, period. It is not supportive of an inference of intent or recklessness.

*Gardner,* 2010 WL 1368663 (dismissing complaint because Court had no

plausible reason to infer willfulness). *See Zaun v. Tuttle, Inc.*, 2011 WL

Case 14-3709, Document 38, 01/14/2015, 1415852, Page131 of 224

A-126

Case 2:13-cv-02177-SAC-KGS   Document 8   Filed 09/04/13   Page 8 of 9
Case 1:13-cv-07013-JSR   Document 17-10   Filed 12/16/13   Page 8 of 9

1741912 (D.Minn. May 4, 2011) (finding complaint adequately alleged willful violation because defendant disregarded its third-party compliance contractor's warning that defendant would need to upgrade its terminals to comply with FACTA); *Steinberg v. Stitch & Craft, Inc.*, 2009 WL 2589142, 2 -3 (S.D.Fla. 2009) (denying motion to dismiss where complaint alleged major credit card companies had "notified the merchants, including the Defendant," of FACTA's requirements and that they were required to comply with the FACTA, and that Defendant violated FACTA because it "did not wish to incur the additional expense of reprogramming or updating its point-of-sale equipment."); *Troy v. Home Run Inn, Inc.*, 2008 WL 1766526, *2 (N.D.Ill. 2008) (denying motion to dismiss where complaint alleged that "credit card issuers like VISA, MasterCard, Discover, and American Express informed [the Defendant] about FACTA's requirements and required compliance via contract."); *In re TJX Companies, Inc.*, 2008 WL 2020375, 2 (D.Kan. 2008) (denying motion to dismiss where complaint alleged defendants recognized their statutory duty to limit the information, intentionally ignored that duty, refused to take steps to comply with FACTA regulations, and resulted from more than a mere careless reading of FACTA).

IT IS THEREFORE ORDERED that Defendant's motion to dismiss for

failure to state a claim for relief (Dk. 3) is granted and the complaint is

dismissed without prejudice.

Dated this 4th day of September, 2013, at Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

FILED

2011 AUG 22 AM 10: 25

CLERK US DISTRICT COURT
CENTRAL DISTRICT CALIF.
LOS ANGELES

BY _____

1  RIDOUT & LYON, LLP
2  CHRISTOPHER P. RIDOUT (State Bar No. 143931)
   Email: c.ridout@ridoutlyonlaw.com
3  DEVON M. LYON (State Bar No. 218293)
   Email: d.lyon@ridoutlyonlaw.com
4  CALEB LH MARKER (State Bar No. 269721)
   Email: c.marker@ridoutlyonlaw.com
5  555 E. Ocean Blvd., Ste. 500
   Long Beach, California  90802
6  (562) 216-7380
   (562) 216-7385 Fax

7  Attorneys for Plaintiff

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  TIM SEO, individually, and on behalf of     Case No.: CV11-05031-DDP (MRWx)
    all others similarly situated,

12              Plaintiff,                       FIRST AMENDED COMPLAINT
                                                 (CLASS ACTION)
13      v.
                                                 For Violation Of:
14  CG CJV AMERICA HOLDINGS, INC.,
    a California corporation, and DOES 1        1.  Fair and Accurate Credit Reporting
15  through 10, inclusive                            Act, 15 U.S.C. § 1681 et seq.

16              Defendant.                        Hon. Dean D. Pregerson

17

18                        **INTRODUCTION**

19      1.    The Fair and Accurate Credit Transactions Act of 2003 ("FACTA"),

20  Pub. L. 108-159, was passed by Congress on December 4, 2003.  FACTA amended

21  the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., in order to curtail

22  the growing threat of identity theft, most notably by adding a number of safeguards

23  and otherwise regulating the use and disclosure of personal information.

24      2.    As the Federal Trade Commission and other governmental agencies

25  would be incapable of solely enforcing FACTA, Congress inserted the new

26  amendments into the FCRA's existing private attorneys general enforcement

27  scheme.  During the bill signing ceremony, President George W. Bush noted that:

28

1   This bill also confronts the problem of identity theft. A growing
2   number of Americans are victimized by criminals who assume their
    identities and cause havoc in their financial affairs. With this
3   legislation, the federal government is protecting our citizens by taking
    the offensive against identity theft.

4       3.    Among the many provisions contained in FACTA, Section 113 (which

5   was codified as 15 U.S.C. 1681c(g) of the Fair Credit Reporting Act), provided that:

6       [N]o person that accepts credit cards or debit cards for the transaction
        of business shall print more than the last 5 digits of the card number or
7       the expiration date upon any receipt provided to the cardholder at the
        point of the sale or transaction.
8

9       4.    Although many provisions of FACTA became effective immediately

10  upon its passage, the provision requiring merchants to truncate a consumer's credit

11  card number did not become effective (for merchant's with electronic receipt

12  printing equipment in service before January 1, 2005) for three years, or December

13  4, 2006. President Bush signed House Resolution 4008 (the "Credit and Debit Card

14  Receipt Clarification Act of 2007"), making the effective date of the expiration date-

15  related truncation requirements effective on June 4, 2008.

16      5.    Plaintiff, Tim Seo ("Plaintiff" or "Seo"), brings this action on behalf of

17  himself and all others similarly situated to secure redress for willful and negligent

18  violation of the FCRA, as amended by FACTA, by Defendant through its disclosure

19  of the expiration date and/or more than the last five (5) digits of the account number

20  of the Plaintiff's credit and/or debit card, thereby increasing the risk of identity theft.

21      6.    Plaintiff seeks actual damages, statutory damages, punitive damages,

22  costs of litigation and attorneys' fees, all of which are expressly available through

23  the private attorneys general regulatory scheme embedded in the FCRA, 15 U.S.C. §

24  1681 *et seq.*

25                  **JURISDICTION AND VENUE**

26      7.    This Court has federal question jurisdiction under 28 U.S.C. § 1331 and

27  15 U.S.C. § 1681p.

28

FIRST AMENDED COMPLAINT (CLASS ACTION)                                              2

8. Venue in this district is proper pursuant to 28 U.S.C. §§ 1391 (b) and (c) and 1400(a) because Defendant does business and resides in this district and a substantial part of the claims asserted herein arose in this district.

## PARTIES AND STANDING

9. Plaintiff, Tim Seo, is and at all times relevant hereto was a resident of Los Angeles, California.

10. Defendant, CJ CGV America Holdings, Inc. ("Defendant"), is, and at all times mentioned herein was, a California corporation doing business in the State of California, with its corporate headquarters and "nerve center" located at 5670 Wilshire Boulevard, Suite 2450, Los Angeles, California 90036. Defendant's agent for service of process is Yong G. Park, located at 5670 Wilshire Boulevard, Suite 2450, Los Angeles, California 90036.

11. Defendant is a "person that accepts credit cards or debit cards for the transaction of business" pursuant to FACTA.

12. Defendant owns and operates "CGV at Madang", a three-screen movie theater located at 621 S. Western Avenue, Los Angeles, California 90005. CGV at Madang is the first CJ CGV Movie Theater in Los Angeles playing Korean and Hollywood hits, plus other Asian foreign and local films.[1] "First opening to audiences in 1998, CJ CGV changed the South Korean cinema landscape, not only by being the first multiplex theatre in the country but also by delivering unmatched standards of luxury and comfort in the movie-viewing experience... For the first cinema complex in the United States, CGV at Madang aims to reproduce these services by offering similar features specially designed to serve." [2]

---

[1] CGV Cinemas, Twitter Description, *available at* http://twitter.com/#!/cgvcinemas (last accessed June 10, 2011).

[2] CGV Cinemas, About Us, *available at* http://www.cgvcinemas.com/company/about.asp (last accessed June 10, 2011).

---

FIRST AMENDED COMPLAINT (CLASS ACTION)                                                3

13. Upon information and belief, Defendant is a subsidiary of CJ CGV Co., Ltd., a Korea-based company that operates 75 multiplex movie theatres with 610 screens throughout Korea as of December 31, 2010. The Company also provides services such as advance sale of tickets, stores, advertising and others.

14. Upon information and belief, CJ CGV Co., Ltd. is a subsidiary of CJ Cheil Jedang, a large South Korean conglomerate. Originally part of the Samsung Group, CJ Cheil Jedang legally spun off in 1995 and operates businesses in foodstuffs, (comprising sugar, wheat, and oil), bio, (comprising MSG, lysine, etc.), processed food, animal feed, and pharmaceuticals. One division, CJ E&M, is now the largest media conglomerate in South Korea.[3]

15. The true names and capacities of the Defendants sued herein as DOES 1 to 10, inclusive, are unknown to Plaintiff who therefore sues these Defendants by such fictitious names. Plaintiff will seek of the Court to amend this Complaint to show their true names and capacities when same have been ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants, including the Doe Defendants, was the officer, director, employee, agent, representative, alter ego, or co-conspirator of each of the other Defendants, who proximately caused the injuries and damages to Plaintiff as hereinafter alleged.

16. Plaintiff is informed and believes, and thereon alleges that each of the Defendants, including the Doe Defendants, whether individual, partner, or corporate, is legally responsible in some manner for the events and happenings herein referred to, and caused the injuries and damages alleged herein.

## STATUTORY AND REGULATORY BACKGROUND

17. The main purpose of FACTA was to protect citizens from the threat of identity theft and credit card fraud.

---

[3] Han Sunhee, *CJ E&M becomes S. Korea's biggest media conglom*, Variety (March 1, 2011), *available at* http://www.variety.com/article/VR1118033048?refCatId=1442 (last accessed June 10, 2011).

18. FACTA eliminated a major component of identity theft and credit card fraud through preventing thieves' ability to gain personal information via a consumer's misplaced or discarded receipt containing detailed credit account information.

19. Per 15 U.S.C. §1681c(g)(1), FACTA specifically provided that compliance was required:

> (i) 3 years after December 4, 2003, with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is in use before January 1, 2005; and

> (ii) 1 year after December 4, 2003, with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is first put into use on or after January 1, 2005.

20. Although many provisions of FACTA became effective immediately upon its passage, the provision requiring merchants to truncate a customer's credit card number and mask expiration dates did not become effective immediately and provided ample time for the Defendant to become aware of its requirements and modify its practices and procedures to comply with FACTA.

21. FACTA provided a lengthy three-year period to comply with its card number requirements for machines in use prior to January 1, 2005. FACTA requires immediate card number truncation compliance for machines put into use after January 1, 2005.

22. FACTA requires compliance on or after June 4, 2008 for its expiration date related truncation requirements.

23. Prior to the effective date of FACTA, credit card issuers such as Visa, MasterCard and American Express informed retailers of the impending FACTA requirements. Certain issuers, including Visa and MasterCard, even implemented

FIRST AMENDED COMPLAINT (CLASS ACTION)                                                     5

1    similar policies to FACTA and informed retailers of their own similar truncation
2    policies and requirements before FACTA's effective date.
3         24.    For instance, on March 6, 2003, noting that identity thieves can use
4    information found on some credit card receipts to steal a person's identity, then-Visa
5    CEO Carl Pascarella, together with U.S. Senators Dianne Feinstein, Judd Gregg, Jon
6    Corzine, and Patrick Leahy, announced new Visa regulations requiring truncation
7    and prohibiting merchants from printing more than the last four digits on customer
8    receipts.
9         25.    Numerous businesses across the United States have complied with
10   FACTA and truncated their credit card receipts accordingly.  It is simply impossible
11   that Defendant was, actually or constructively, unaware of its contractual and
12   statutory obligations and the dangers these provisions sought to protect against.
13        26.    Defendant knew or should have known of FACTA's requirements.
14   Nonetheless, it ignored the statute, acted in reckless disregard of its obligations and
15   otherwise willfully violated FACTA by not making its credit and debit card
16   processing systems into compliance before the promulgated effective date.
17        27.    Although Defendant had more than *eight* full years to modify and/or
18   upgrade their point of sale system, Defendant willfully violated FACTA's truncation
19   requirements through printing receipts that contain the card's expiration date.
20        28.    Defendant has failed to protect their customers against identity theft,
21   specifically credit and debit card fraud, which was made possible by Defendant's
22   failure to mask the expiration date of its customers' credit and debit cards.
23        29.    Congress explicitly provided for civil liability for willful noncompliance
24   with the statute, including actual damages and statutory damages with a range of up
25   to $1,000 per consumer, as well as punitive damages.
26                            **FACTUAL ALLEGATIONS**
27        30.    The Plaintiff purchased goods and services from the Defendant on June
28   5, 2011.

FIRST AMENDED COMPLAINT (CLASS ACTION)                                    6

31.   In addition to purchasing movie tickets, the Plaintiff also used his personal VISA credit/debit card to tender payment for concessions at Defendant's movie theater in Los Angeles, California.

32.   After the Plaintiff used his credit/debit card, the Defendant issued a receipt in which the expiration date of the card was printed on the receipt.

33.   Since FACTA's effective date, the Defendant has issued at least one receipt in violation of FACTA to the Plaintiff.

34.   Upon information and belief, Defendant and its parent company "share" and rotate employees, contractors, and agents amongst each other, which results in the transfer of tacit knowledge between each of the entities..

35.   Upon information and belief, Defendant and its parent company are members of The National Association of Theatre Owners ("NATO").

36.   NATO "is the largest exhibition trade organization in the world, representing more than 30,000 movie screens in all 50 states, and additional cinemas in 50 countries worldwide. [NATO's] membership includes the largest cinema chains in the world and hundreds of independent theatre owners too."[4]

37.   Upon information and belief, Defendant and its directors, officers, employees, contractors and agents are actively involved in NATO.   In fact, Defendant's Vice Chairman, Miky Lee, received NATO's CinemaCon Global Achievement in Exhibition Award in Las Vegas, Nevada on March 28, 2011.

38.   NATO regularly communicates legal news and updates to its members, including Defendant and its parent company.   For example, in its July/August 2007 "Previews" Newsletter, NATO of California/Nevada published an article entitled "The Ninth Circuit's Opinion in Doran v. Del Taco" which discussed an appeal relating to alleged architectural barriers in violation of the Americans with Disabilities Act.   The author was Gregory Hurley, NATO's Chair of Litigation.

---

[4] NATO, Who We Are, *available at* http://www.natoonline.org/ (last visited August 16, 2011).

FIRST AMENDED COMPLAINT (CLASS ACTION)                                        7

39. Numerous lawsuits alleging violation of FACTA have been filed against movie theater chains. In fact, the Ninth Circuit issued its opinion in *Bateman v. Am. Multi-Cinema, Inc., 623 F.3d 708 (9th Cir. 2010)*, which involved the class certification of a FACTA case involving a movie theater chain.

40. NATO has been active in warning and communicating the requirements of FACTA to its members, including Defendant and its parent company.

41. NATO has been active in sending newsletters and other communications to its members regarding FACTA and its requirements, including Defendant and its parent company.

42. In its February 2007 "Previews" Newsletter, NATO of California/Nevada published an article entitled "What You Need To Know About FACTA (the Fair and Accurate Credit Transactions Act), discussing the Act's mandate, requirements, penalties, and ongoing litigation.

43. On NATO's Press website (http://www.natoonline.org/press.htm), under the heading "Exhibition Issues", is a list of issues affecting the movie theater industry, listing issues such as "Minimum Wage" and "Movie Theft." One of the 23 issues listed reads "Fair and Accurate Credit Reporting Act (FACTA)". By clicking on the link, the reader is taken to a FACTA "Talking Points" sheet.[5] A copy of the page has been attached as Exhibit "A". Among the various talking points, NATO notes the following:

> On June 3, 2008, President George Bush signed into law H.R. 4008, which amends the Fair and Accurate Credit Transactions Act (FACTA), to make clear that a business that electronically printed an expiration date on a credit or debit card receipt, before the enactment of H.R. 4008, cannot be found in violation of the law as long as the merchant truncated the customer's card number to no more than the last five digits…

* * *

---

[5] See, generally, http://www.natoonline.org/pdfs/Talking%20Points/TP-FACTA.pdf.

FIRST AMENDED COMPLAINT (CLASS ACTION)        8

It is important to note that the technical correction made by H.R. 4008 only covers credit and debit card receipts electronically printed from December 4, 2004, through the measure's enactment on May 20, 2008.

* * *

To avoid the scourage of these lawsuits, exhibitors should inspect their point-of-sale terminals and, if necessary, *remove the expiration date and truncate credit or debit card account numbers* on all electronically printed customer receipts. The Federal Trade Commission provides tips on safeguarding sensitive customer data at www.ftc.gov/infosecurity.

* * *

In December 2003, Congress enacted FACTA as an amendment to the Fair Credit Reporting Act ("FCRA"). As part of this effort, Congress sought to combat identity theft and credit card fraud by keeping private information off customer receipts.

(emphasis in original)

44.     Upon information and belief, employees, contractors, and agents of the Defendant regularly access NATO's online "Talking Point" articles to prepare for discussions with members of the press, community, and politicians.

45.     As such, NATO repeatedly informed Defendant and its parent company of the Act and its requirements and consequences.

46.     Upon information and belief, employees, agents, and contractors of Defendant's parent company were involved in the design, development, construction, and operation of Defendant's movie theater in Los Angeles. As such, any notifications or communications regarding the Act to Defendant's parent company can be imputed to the Defendant.

47.     Upon information and belief, Defendant purchased, installed, and maintains a point-of-sale system that employs outdated hardware and software components.

48.     Upon information and belief, despite the fact that Defendant's movie theater in Los Angeles has only been in operation for a little over one year, Defendant employs outdated and/or used point-of-sale equipment.

FIRST AMENDED COMPLAINT (CLASS ACTION)                                    9

49. Upon information and belief, Defendant recognized significant costs savings by using vendors and purchasing, leasing, and licensing hardware and software that was not in compliance with the Act.

50. Upon information and belief, Defendant chose to employ said noncompliant software and hardware due to the costs savings, despite their knowledge of the Act and its compliance requirements.

51. Defendant ignored NATO and other entities' communications, notices, and warnings regarding the Act and chose not to comply with FACTA.

52. As such, Defendant was notified of the Act and its requirements throughout the entire period of time in which it failed to comply with FACTA and, in fact, despite having this express knowledge, knowingly and intentionally continued to violate the Act as alleged herein, including, but not limited to, issuing a receipt to Plaintiff on June 5, 2011, in which the expiration date of the credit/debit card was printed on the receipt.

53. In sum, Defendant either intentionally and/or recklessly failed to comply with FACTA.

## CLASS ACTION ALLEGATIONS

54. This action is brought as a class action pursuant to Federal Rules of Civil Procedure 23 and any other applicable laws or rules of civil procedure. This action seeks recovery of civil penalties arising from Defendant's credit card practices.

55. **Class Definition**: The Class sought to be represented in this action as it relates to the is defined as follows:

> All persons who used their credit or debit card during the last two years at CGV at Madang located at 621 S. Western, Los Angeles, California, and who was issued a receipt displaying their credit or debit card's expiration date.

The Class Period dates back two years (or the length of the longest applicable statute of limitations for any claim asserted) from the date this action

1    was commenced and continues through the present and the date of judgment.

2    Excluded from the Class are: (a) any officers, directors or employees of the

3    Defendant; (b) any judge assigned to hear this case (or spouse or family member of

4    any assigned judge); (c) any employee of the Court; (d) any juror selected to hear

5    this case.

6         56. **Numerosity of the Class.** Members of the class are so

7    numerous that their individual joinder herein is impracticable. The precise

8    number of members of the class and their addresses are presently unknown

9    to Plaintiff, but is believed to exceed 1,000 people. Defendant operates a

10    busy movie theater in Los Angeles, California serving hundreds of

11    customers per day. The precise number of persons in the class and their

12    identities and addresses may be ascertained from defendant's records. If

13    deemed necessary by the Court, members of the class may be notified of the

14    pendency of this action by mail, supplemented by published notice.

15         57. **Ascertainable Class**. The proposed Class is ascertainable. The

16    litigation of the questions of fact and law involved in this action will resolve the

17    rights of all members of the Class and hence, will have binding effect on all class

18    members. These Class Members can be readily identified from point-of-sale

19    computer files of the Defendant and other means readily available to the

20    Defendant, and thus the Plaintiff, through minimally intrusive discovery. The class

21    is numerous. Joinder of all class members is impracticable due to both a reluctance

22    of class members to sue Defendant and the relatively small monetary recovery for

23    each class member in comparison to the costs associated with separate litigation.

24         58. **Common Questions of Fact and Law Exist and Predominate**

25    **over Individual Issues.** There is a well-defined community of interest in

26    the questions of law and fact involved affecting the parties to be

27    represented. These common questions of law and fact exist as to all

28    members of the class and predominate over the questions affecting only

individual members of the class. These common legal and factual questions include without limitation:

    a.    Whether Defendant's conduct of printing credit/debit card expiration dates is in violation of FACTA?

    b.    Whether Defendant's had a common practice of printing credit/debit card expirations dates on customer receipts?

    c.    What the appropriate damages and/or other relief is for consumers subjected to such practices?

Common issues predominate because resolution of these issues for the named Plaintiff, will resolve them for all class members. Further, liability under FACTA is per se and damages are statutory, not only actual. As a result, there are no unique defenses or elements of proof that would apply to Plaintiff's transaction, but not other class members', thus, requiring individual proceedings.

    59.  **Typicality.** The claims of Plaintiff are typical of the claims of the Class. Plaintiff and all Class Members engaged in a credit card transaction at one of Defendant's California retail locations and was issued a receipt that contained his credit/debit card's expiration date. Plaintiff's transaction with Defendants was an ordinary transaction. There were no unique features to the manner in which Plaintiff's transaction with Defendant was conducted. Like thousands of other class members, Plaintiff paid defendant for good and /or services with a credit/debit card and by way of common computer operations received a receipt with common data on it, including expiration dates. If these practices violate FACTA in Plaintiff's transaction, it similarly does in all class members' transactions.

    60.  **Adequacy**. Plaintiff is an adequate representative of the Class on whose behalf this action is prosecuted. Plaintiff's interests do not conflict with the interests of the Class. Plaintiff has retained competent counsel with

experience in class action litigation and will prosecute this action vigorously. As a result, Plaintiff can fairly and adequately represent and protect the interests of the class in that there are no conflicts between their interests and the interests of other class members, this action is not collusive, the named Plaintiff and their counsel have the necessary resources to litigate this action, and counsel has the experience and ability required to prosecute this case as a class action.

61. **Community of Interest**. The proposed Class has a well defined community of interest in the questions of fact and law to be litigated. The common questions of law and fact are predominant with respect to the liability issues, relief issues and anticipated affirmative defenses. The named Plaintiff has claims typical of the class members. There is a well-defined community of interest in the questions of law and fact involved affecting the Plaintiff class in that the claims of all such class members relate to and arise out of a common scheme and practice utilized by Defendant's in credit card transactions.

62. **Superiority of Class Adjudication**. The certification of a class in this action is superior to the litigation of a multitude of cases by members of the putative class. Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings. Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and hence subject to an order spreading the costs of the litigation among the class members in relationship to the benefits received. The statutory damages, restitution and other potential recovery for each individual member of the class are modest, relative to the substantial burden and expense of individual prosecution of these claims. Given the amount of the individual class members' claims, few, if any, class members could afford to seek legal redress individually for the wrongs complained of herein. Even if the members of the class themselves could afford individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory

1    judgments. Individualized litigation increases the delay and expense to all

2    parties and the court system presented by the complex legal and factual

3    issues of the case. By contrast, the class action device presents far fewer

4    management difficulties, and provides the benefits of single adjudication,

5    economy of scale, and comprehensive supervision by a single court.

6        63.  In the alternative to certification under FRCP 23(b)(3), the

7    above-referenced class may be certified under FRCP 23(b)(1) and 23(b)(2)

8    because:

9            a.  The prosecution of separate actions by the individual members of

10               the class would create a risk of inconsistent or varying

11               adjudication with respect to individual class members' claims

12               which would establish incompatible standards of conduct for

13               defendant; and

14           b.  The prosecution of separate actions by individual members of the

15               class would create a risk of adjudications which would as a

16               practical matter be dispositive of the interests of other members

17               of the class who are not parties to the adjudications, or which

18               would substantially impair or impede the ability of other class

19               members to protect their interests.

20                        **FIRST CAUSE OF ACTION**

21                  **Violation of 15 U.S.C. § 1681 *et seq.***

22       64.  Plaintiff hereby incorporates each and every allegation contained in the

23    foregoing paragraphs as if fully set forth herein.

24       65.  15 U.S.C. 1681c(g) of the Fair Credit Reporting Act provides that:

25           [N]o person that accepts credit cards or debit cards
             for the transaction of business shall print more
26           than the last 5 digits of the card number or the
             expiration date upon any receipt provided to the
27           cardholder at the point of the sale or transaction.

28

---

FIRST AMENDED COMPLAINT (CLASS ACTION)                                    14

66.    The Defendant transacts business in the United States and accepts credit cards and/or debit cards in the course of conducting business in the United States. Defendant uses electronic equipment that prints receipts issued to customers who render payment using credit cards and/or debit cards.

67.    The overwhelming majority of the Defendant's business competitors and peers brought their credit and debit card processing equipment into FACTA compliance well before the effective date.  Compliance was often achieved through the simple and inexpensive reprogramming of their processing machines and devices (which can sometimes be done remotely) to prevent them from printing more than the last five digits of the card account number and any portion of the expiration date. The Defendant could have easily accomplished the same with little effort or expense.

68.    Upon information and belief, Defendant closely monitors and manages its business.  As such, Defendant should have known that its business was issuing receipts that were not in compliance with the FACTA requirements.  Despite this information, Defendant chose to ignore its obligations under FACTA, sacrificing the personal financial information of its customers.

69.    Despite knowing and being repeatedly informed about FACTA and the importance of truncating credit and debit card numbers and preventing the printing of expiration dates on receipts, and despite having had more than five years to comply with the statute, Defendant willfully violated FACTA's requirements by continuing to print the expiration date and/or more than the last five digits of a consumer's credit or debit card on their receipt.

70.    Since the effective date of FACTA, the Defendant issued one or more receipts to the Plaintiff that contained the expiration date of the credit or debit card used by Plaintiff to tender payment to the Defendant.

71.    The Defendant's act of issuing one or more receipts to the Plaintiff that contained Plaintiff's credit card expiration date and/or more than the last five (5) digits of the debit or credit card account number was a willful violation of 15 USC

1681c(g)(1) and, at an absolute minimum, was a negligent violation of 15 USC
1681c(g)(1), subjecting the Defendant to liability.

72.   Accordingly, Defendant negligently and willfully violated 15 U.S.C.
1681(g)(1) with respect to Plaintiff.

73.   Actual damages are present and quantifiable; however, Plaintiff is not
required to prove actual damages to obtain the statutory damages of up to $1,000 per
violative receipt, along with the costs of this action, reasonable attorneys' fees, and
punitive damages as provided for by the FCRA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment for the following
relief:

A.   An award of the statutory damages $1,000.00 *per violation* that the
Plaintiff is entitled to as a result of the Defendant's willful violation of the FCRA,
provided for under to 15 U.S.C. § 1681n(a)(1)(A);

B.   An award of actual damages for injuries caused by the unlawful conduct
described above and the Defendant's negligent noncompliance of the FCRA as
provided for under 15 U.S.C. § 1681o(a)(1);

C.   An award of punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

D.   Payment of the costs of this action pursuant to, *inter alia*, 15 U.S.C. §§
1681n(a)(3), 1681o(a)(2);

E.   Payment of reasonable attorneys' fees pursuant to, *inter alia*, 15 U.S.C.
§§ 1681n(a)(3), 1681o(a)(2); and

F.   Any such other and further relief as this Court deems just and proper.

/ / /

/ / /

/ / /

/ / /

/ / /

FIRST AMENDED COMPLAINT (CLASS ACTION)                              16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### JURY DEMAND

Plaintiff reserves his right to and hereby requests a trial by jury on all matters so triable.

Respectfully submitted,

RIDOUT & LYON, LLP

Dated: August 19, 2011   By: _____
Christopher P. Ridout, CA Bar No. 143931
Devon M. Lyon, CA Bar No. 218293
Caleb LH Marker, CA Bar No. 269721
555 E. Ocean Boulevard, Suite 500
Long Beach, CA  90802
(562) 216-7380 Telephone
(562) 216-7385 Fax

**Attorneys for Plaintiff**

1   RIDOUT & LYON, LLP
    CHRISTOPHER P. RIDOUT (State Bar No. 143931)
2   Email: c.ridout@ridoutlyonlaw.com
    DEVON M. LYON (State Bar No. 218293)
3   Email: d.lyon@ridoutlyonlaw.com
    CALEB LH MARKER (State Bar No. 269721)
4   Email: c.marker@ridoutlyonlaw.com
    555 E. Ocean Blvd., Ste. 500
5   Long Beach, California 90802
    (562) 216-7380
6   (562) 216-7385 Fax

7   Attorneys for Plaintiff

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10  TIM SEO, individually, and on behalf of        Case No.: CV11-05031-DDP (MRWx)
    all others similarly situated,
11                                                  **PLAINTIFF'S MEMORANDUM OF
                   Plaintiff,                        LAW IN OPPOSITION TO
12                                                   DEFENDANT'S MOTION TO
          v.                                         DISMISS FIRST AMENDED
13                                                   COMPLAINT**
    CG CJV AMERICA HOLDINGS, INC.,
14  a California corporation,                       Date:        October 17, 2011
                                                    Time:        10:00 a.m.
15                 Defendant.                        Courtroom: 3 – 2nd Floor

16  _____               Hon. Dean D. Pregerson

17        Plaintiff Tim Seo ("Plaintiff"), by his attorneys, submits this response in

18  opposition to Defendant's Motion to Dismiss First Amended Complaint.

19                        **I. INTRODUCTION**

20        Plaintiff has alleged that Defendant has violated FACTA by printing

21  prohibited credit/debit card information on receipts. Plaintiff's factual allegations

22  raise his right to relief beyond a speculative level. He has sufficiently pleaded his

23  claim within the requirements outlined by the Supreme Court in *Bell Atlantic Corp.*

24  *v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007) and *Ashcroft v. Iqbal*, 556 U.S.

25  ___, 129 S.Ct. 1937 (2009). Accordingly, the Court should deny Defendant's

26  motion.

27  ///

28  ///

## II. PROCEDURAL HISTORY

On June 14, 2011, Plaintiff filed a class action complaint against Defendant CG CJV America Holdings, Inc. ("Defendant" or "CGV") for violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* (Doc. 1). Plaintiff alleges that Defendant provided him with a credit card receipt containing his unredacted expiration date and that said act constituted a willful violation of the FCRA and the Fair and Accurate Credit Transactions Act ("FACTA"), which amended the FCRA.

After meeting and conferring with opposing counsel, Plaintiff filed his First Amended Complaint ("FAC") on August 22, 2011 (Doc. 9). On September 9, 2011, Defendant moved to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Defendant argues that the FAC fails to plead cognizable facts specifically sufficient to create a plausible inference that Defendant willfully violated the FCRA and FACTA.

On September 16, 2011, the Court granted the parties' stipulation to continue the Local Rule 23-3 deadline to move for class certification by 90 days, until December 19, 2011, so that Defendant's motion to dismiss could be resolved before Plaintiff moves to certify the putative class (Doc. 13).

## III. BACKGROUND

On December 4, 2003, Congress enacted FACTA, which provides that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." *15 U.S.C. § 1681c(g)(1)*. This provision applies only to electronic receipts, and not to handwritten or imprint copy receipts. *Id. at § 1681c(g)(2)*. The statute became effective on December 4, 2006, for those receipt-printing machines put into use before January 1, 2005, but was effective December 4, 2004, for any such machine put into use after January 1, 2005. *Id. at § 1681c(g)(3)*.

1    Defendant CGV is the American subsidiary of a CJ CGV Co. and CJ Group, a
2    major South Korean conglomerate with extensive interests in film, media,
3    biotechnology, processed food, animal feed, and pharmaceuticals, and operates a
4    state-of-the art movie theater, CGV at Madang, in Los Angeles, California (FAC, ¶
5    12-14).

6    Plaintiff alleges that he used his personal VISA credit/debit card to tender
7    payment for movie tickets and also for concessions purchased at CGV at Madang on
8    June 5, 2011 (FAC, ¶30-31). After tendering payment, Defendant provided Plaintiff
9    with a receipt that contained the expiration date of his card (FAC, ¶32). Plaintiff
10   alleges on behalf of the putative class that it was the Defendant's regular business
11   practice to print such receipts in violation of FACTA and provide them to consumers
12   (FAC, ¶ 59).

### IV. ARGUMENT

### A. LEGAL STANDARD

15   A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6)
16   "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th
17   Cir.2001). Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain
18   statement of the claim showing that the pleader is entitled to relief, in order to give
19   the defendant fair notice of what the . . . claim is and the grounds upon which it
20   rests." *Twombly*, *supra* at 544 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

21   In deciding whether to grant a motion to dismiss, the court "accept[s] all
22   factual allegations of the complaint as true and draw[s] all reasonable inferences" in
23   the light most favorable to the nonmoving party. *Rodriguez v. Panayiotou*, 314 F.3d
24   979, 983 (9th Cir.2002). To survive a motion to dismiss, a complaint must "contain
25   sufficient factual matter, accepted as true, to "state a claim to relief that is plausible
26   on its face."' *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly* at 570).

27   A claim has facial plausibility when the plaintiff pleads factual content that
28   allows the court to draw the reasonable inference that the defendant is liable for the

1 misconduct alleged. The plausibility standard "is not akin to a 'probability
2 requirement,' but it asks for more than a sheer possibility that defendant has acted
3 unlawfully. Where a complaint pleads facts that are 'merely consistent with' a
4 defendant's liability, it 'stops short of the line between possibility and plausibility of
5 entitlement to relief.'" *Id.* (citing *Twombly* at 556-57).

6         Nevertheless, the court "need not assume the truth of legal conclusions cast in
7 the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d
8 638, 643 n.2 (9th Cir. 1986).

9         While the standard does not require detailed factual allegations, "it demands
10 more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal* at
11 1949. A pleading is insufficient if it offers mere "labels and conclusions" or "a
12 formulaic recitation of the elements of a cause of action." *Twombly* at 555; *Iqbal* at
13 1950 ("Threadbare recitals of the elements of a cause of action, supported by mere
14 conclusory statements, do not suffice.").

15         In ruling upon a motion to dismiss, the court may consider only the complaint,
16 any exhibits thereto, and matters which may be judicially noticed pursuant to Federal
17 Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th
18 Cir. 1988).

19         Defendant argues that Plaintiff's FAC fails to adequately plead violations for
20 negligent and willful noncompliance of the FCRA and FACTA. As it relates to
21 negligent noncompliance of FACTA, Plaintiff has pled that "[a]ctual damages are
22 present and quantifiable" (FAC, ¶73). For the following reasons, Plaintiff also
23 believes that the FAC sufficiently alleged a claim for willful violation of the FCRA.

24     **B. PLAINTIFF HAS ALLEGED A WILLFUL VIOLATION OF FACTA**

25         In *Safeco Insurance Company of America v. Burr*, 551 U.S. 47 (2007), the
26 Supreme Court determined that "willfulness" under the FCRA is not just a knowing

27

28

violation, but also to a reckless disregard of a statutory duty. *Id.*, at 56-57.[1] The court relied on the common law definition of recklessness – "conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.*, quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). The Court also referenced the Restatement of Torts, noting that it defines reckless disregard of a person's physical safety as:

> "The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." *Restatement (Second) of Torts § 500*, p 587 (1963-1964).

Plaintiff agrees with Defendant that to plead a claim for a willful violation of FACTA, a Complaint must plead facts that would allow the Court to draw reasonable inference that CGV knowingly or recklessly printed the expiration date on Plaintiff's credit card receipt. Plaintiff believes that the FAC sufficiently pleads such detailed facts to state a claim for willful violation of the FCRA and FACTA.

Despite the two cases cited by Defendant, the vast majority of courts that have reviewed the sufficiency of a complaint's allegations for violation of FACTA have found them to be in compliance with the applicable pleading standards. *See, for example, Iosello v. Leiblys, Inc.,* 502 F. Supp. 2d 782 (N.D. Ill. 2007); *Harris v. Wal-Mart Stores, Inc.,* No. 07 CV 2561, 2007 WL 3046162 (N.D. Ill. Oct. 10, 2007); *Follman v. Hospitality Plus of Carpentersville, Inc.,* 532 F. Supp. 2d 960 (N.D. Ill. 2007); *Troy v. Home Run Inn, Inc.,* No. 07 C 4331, 2008 WL 1766526 (N.D. Ill. April 14, 2008); *Follman v. Village Squire, Inc.,* No. 07 C 3767, 2007 WL 4522614 (N.D. Ill. Dec. 18, 2007) *Steinberg v. Stich & Craft, Inc.,* No. 09-60660-CIV, 2009 WL 2589142 (S.D. Fla. Aug. 18,

---

[1] "We have said before that 'willfully' is a 'word of many meanings whose construction is often dependent on the context in which it appears' … [W]here willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." "'The standard civil usage thus counsels reading the phrase 'willfully fails to comply' in § 1681n(a) as reaching reckless FCRA violations….". *Id.*

2009); *Bauer v. Shell Factory, LC,* No. 2:08-cv-68-FtM-29SPC, 2008 WL 2261764 (M.D. Fla. May 30, 2008); *In re The TJX Companies, Inc.,* MDL No. 1853, 2008 WL 2020375 (D. Kan. May 9, 2008); *Ramirez v. Midwest Airlines, Inc.,* 537 F. Supp. 2d 1161 (D. Kan. 2008); *Arcilla v. Adidas Promotional Retail Operations, Inc.,* 488 F. Supp. 2d 965 (C.D.Cal.2007); *Aeschbacher v. California Pizza Kitchen, Inc.,* No. CV 07-215, 2007 WL 1500853 (C.D.Cal. Apr. 3, 2007); *Pirian v. In-N-Out Burgers,* No. SA CV 06-1251, 2007 WL 1040864 (C.D. Cal. Apr. 5, 2007*); Lopez v. The Gymboree Corp.,* No. C 07-0087, 2007 WL 1690886 (N.D. Cal. June 8, 2007); *Korman v. The Walking Co.,* 503 F. Supp. 2d 755 (E.D. Pa. 2007).

Defendant's primary reliance on *Gardner v. Appleton Baseball Club, Inc.*, 09-C-705, 2010 U.S. Dist. LEXIS 31653 (E.D. Wis., March 31, 2010) is misplaced as the operative complaint in that case and here are in stark contrast with one another. After noting that numerous district courts have found the same or similar allegations ("barebones complaints") to be in compliance with *Twombly*, the Court determined that the complaint did not allege any facts that would "infer that a minor league baseball team would have been apprised of [FACTA] or would otherwise have had reason to know about [FACTA]", noting that the Appleton, Wisconsin Timber Rattler baseball team was not Wal-Mart. *Id.*, at 11-12. Unlike the defendant in *Gardner*, Defendant CGV is not in the business of selling hot dogs and cans of soda at minor league baseball games in rural Wisconsin, but rather is a major conglomerate's sophisticated cinema operator in the nation's second largest city.

In *Zaun v. Tuttle, Inc.*, Case No.: 10-2191-DWF, 2011 U.S. Dist. LEXIS 47916 (D. Minn. May 4, 2011), the defendants argued that plaintiff had failed to allege specific facts to support a claim for willful violation of FACTA. The Court denied defendant's motion to dismiss, finding that

> The Court finds that Zaun has sufficiently alleged willfulness. Zaun has alleged that Defendant was aware of the FCRA and FACTA requirements, that Defendant had the ability to change its credit card terminals to redact the expiration dates and ensure compliance with the

1  law, that NCBP warned Defendant that it would need to upgrade its
2  terminals to comply with the law, and that Defendant disregarded those
3  warnings and cancelled its service contract with NCBP. Then, despite
   these warnings, Zaun alleges that the credit card receipts were printed
   with unredacted expiration dates. Zaun's Second Amended Complaint
4  plausibly alleges a willful violation of FACTA and as such, Defendant's
   Motion for Judgment on the Pleadings is denied.

5  Contrary to Defendant's generalized assertions, the FAC in this case bears little
6  resemblance to the "barebones" and "copy-and-paste" complaint described in
7  *Gardner*, and more closely resembles that in *Zaun* given the set of detailed facts
8  specific to CGV.   Moreover, Plaintiff has not alleged that Defendant CGV *should*
9  have known about FACTA, he has argued that CGV *did know* about FACTA and its
10  requirements and chose not to comply to achieve costs savings.[2]

11      Plaintiff has alleged that both Defendant and its parent company are members
12  of The National Association of Theatre Owners ("NATO") (FAC, ¶35). NATO "is
13  the largest exhibition trade organization in the world, representing more than 30,000
14  movie screens in all 50 states, and additional cinemas in 50 countries worldwide.
15  [NATO's] membership includes the largest cinema chains in the world and hundreds
16  of independent theatre owners too" (FAC, ¶ 36).   Plaintiff further alleges that
17  Defendant and its directors, officers, employees, contractors, and agents are actively
18  involved in NATO (FAC, ¶37). Demonstrating their involvement in NATO, Plaintiff
19  noted that Defendant's Vice Chairman attended NATO's trade convention
20  (CinemaCon) in Las Vegas, Nevada on March 28, 2011 and received its award for
21  Global Achievement in Exhibition (FAC, ¶37).

22      Plaintiff alleges that NATO regularly communicates legal news and updates to
23  its members, including Defendant, and maintains a "Chair of Litigation" position in
24  its organization (FAC, ¶38).  Plaintiff further alleges that due to the "rash of similar
25  suits"  described  by  Defendant,  "NATO  has  been  active  in  warning  and

26  _____
    [2] For this reason, Defendant's reliance on *Miller-Huggins v. SpaClinic, LLC*, Case No.: 09-C-2677,
27  2010 U.S. Dist. LEXIS 23418 (N.D. Ill., March 11, 2010) is also misplaced (the Court noted that
    "the plaintiffs in those cases alleged that the defendants had been informed of FACTA's
28  requirements. Miller-Huggins, in contrast, does not allege that SpaClinic had such notice.")

communicating the requirements of FACTA to its members, including Defendant and its parent company" (FAC, ¶39-40). Plaintiff also alleges that NATO has been active in sending newsletters and other communications regarding FACTA and its requirements (including receipt truncation) to the Defendant (FAC, ¶41-42).

Plaintiff also alleges that Defendant and its employees, contractors, and agents regularly access NATO's online "Talking Point" articles to prepare for various events (FAC, ¶44). One such "Talking Point" article discusses FACTA's history, requirements, and potential liability in great detail (FAC, ¶43):

> It is important to note that the technical correction made by H.R. 4008 only covers credit and debit card receipts electronically printed from December 4, 2004, through the measure's enactment on May 20, 2008.
>
> * * *
>
> To avoid the scourge of these lawsuits, exhibitors should inspect their point-of-sale terminals and, if necessary, remove the expiration date and truncate credit or debit card account numbers on all electronically printed customer receipts. The Federal Trade Commission provides tips on safeguarding sensitive customer data at www.ftc.gov/infosecurity.
>
> * * *
>
> In December 2003, Congress enacted FACTA as an amendment to the Fair Credit Reporting Act ("FCRA"). As part of this effort, Congress sought to combat identity theft and credit card fraud by keeping private information off customer receipts.

As summarized above, Plaintiff has alleged that Defendant *knew* of FACTA and its requirements, and not simply that it *should* have known of them as Defendant argues.[3] Further, Plaintiff alleges that Defendant, despite being aware of FACTA and its requirements, chose not to comply with said requirements to realize a cost savings. Specifically, Plaintiff alleges that Defendant purchased, installed, and maintained an point-of-sale system that employs outdated hardware and software components that failed to comply with FACTA to enjoy a significant costs savings (FAC, ¶ 47-50).

---

[3] FAC, at ¶ 38 (NATO regularly sends legal news and updates to its members "including Defendant"), ¶ 40 (same re: warning and communicating FACTA requirements to members "including Defendant"), ¶ 41 (same re: sending newsletters and communications regarding FACTA to its members "including Defendant"), ¶43-44 (same re: Defendant reviewing NATO's FACTA "Talking Points").

1    In sum, Plaintiff has alleged that Defendant is a member of NATO, was made

2  aware of FACTA through its involvement with NATO, and received numerous

3  written communications from NATO relating to FACTA and its requirements.

4  Despite actual knowledge of FACTA, Defendant chose not to comply with its

5  requirements in order to realize significant costs savings by using outdated point-of-

6  sale terminals at its Los Angeles theater.  As such, Plaintiff's FAC plausibly alleges

7  a willful violation of FACTA.

8                                    **V. CONCLUSION**

9    For the foregoing reasons, Plaintiff believes that he has sufficiently alleged

10  both negligent and willful violations of the FCRA and FACTA.  Because Plaintiff's

11  First Amended Complaint is sufficiently pleaded, Plaintiff requests that this

12  Honorable Court deny Defendant's Motion to Dismiss pursuant to Rule 12(b)(6).

13                              Respectfully submitted,

14                              RIDOUT & LYON, LLP

15

16  Dated: <u>September 19, 2011</u>     By:   <u>/s/ Caleb Marker</u>
                                    Christopher P. Ridout, CA Bar No. 143931
17                                  Devon M. Lyon, CA Bar No. 218293
                                    Caleb LH Marker, CA Bar No. 269721
18                                  555 E. Ocean Boulevard, Suite 500
                                    Long Beach, CA  90802
19                                  (562) 216-7380 Telephone
                                    (562) 216-7385 Fax

20                                  **Attorneys for Plaintiff**

21

22

23

24

25

26

27

28

---

O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TIM SEO, individually and on behalf of all others similarly situated, | ) ) ) | Case No. CV 11-05031 DDP (MRWx) |
| | ) | |
| Plaintiff, | ) ) | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| v. | ) ) | |
| CC CJV AMERICAN HOLDINGS, INC., a California corporation, | ) ) ) | [Docket No. 11] |
| Defendant. | ) ) | |
| _____ | ) | |

Presently before the court is Defendant CJV American Holdings, Inc. ("CJV")'s Motion to Dismiss. Having considered the submissions of the parties and heard oral argument, the court grants the motion and adopts the following order.

**I.  Background**

CJV owns and operates a movie theater, which opened sometime in mid-2010. (First Amended Complaint ("FAC") ¶¶ 12, 48.) CJV is an active member of the National Association of Theater Owners, a large trade organization. (FAC ¶¶ 35-37.)

///

1    On June 5, 2011, Plaintiff purchased movie tickets and used a
2    debut or credit card to purchase concessions from CJV.  (FAC ¶¶ 30-
3    31.)  CJV issued Plaintiff a receipt bearing the expiration date of
4    Plaintiff's card.  (FAC ¶ 32.)

5    Under the Fair and Accurate Credit Transactions Act ("FACTA"),
6    merchants may not print a credit or debit card's expiration date
7    upon any receipt provided to the cardholder at the point of sale.
8    15 U.S.C. § 1681c(g).  Plaintiff filed the instant suit against CJV
9    on behalf of a purported class of consumers who received receipts
10   bearing credit or debit card expiration dates, alleging that CJV
11   "negligently and willfully  in violation of FACTA.  CJV now moves
12   to dismiss Plaintiff's complaint.

13   **II.  Legal Standard**

14   A complaint will survive a motion to dismiss when it
15   "contain[s] sufficient factual matter, accepted as true, to state a
16   claim to relief that is plausible on its face."  Ashcroft v. Iqbal,
17   129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly,
18   550 U.S. 544, 570 (2007)).  When considering a Rule 12(b)(6)
19   motion, a court must "accept as true all allegations of material
20   fact and must construe those facts in the light most favorable to
21   the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir.
22   2000).  Although a complaint need not include "detailed factual
23   allegations," it must offer "more than an unadorned,
24   the-defendant-unlawfully-harmed-me accusation."  Iqbal, 129 S. Ct.
25   at 1949.  Conclusory allegations or allegations that are no more
26   than a statement of a legal conclusion "are not entitled to the
27   assumption of truth." Id. at 1950. In other words, a pleading that
28   merely offers "labels and conclusions," a "formulaic recitation of

1 the elements," or "naked assertions" will not be sufficient to
2 state a claim upon which relief can be granted. Id. at 1949
3 (citations and internal quotation marks omitted).

4     "When there are well-pleaded factual allegations, a court should
5 assume their veracity and then determine whether they plausibly
6 give rise to an entitlement of relief." Id. at 1950. Plaintiffs
7 must allege "plausible grounds to infer" that their claims rise
8 "above the speculative level." Twombly, 550 U.S. at 555-56.
9 "Determining whether a complaint states a plausible claim for
10 relief" is "a context-specific task that requires the reviewing
11 court to draw on its judicial experience and common sense." Iqbal,
12 129 S. Ct. at 1950.

13 **III. Discussion**

14     FACTA imposes civil liability for willful noncompliance and
15 negligent noncompliance. 15 U.S.C. §§ 1681n(a), 1681o(a).
16 "Willfulness" encompasses both knowing conduct and reckless
17 conduct. Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57 (2007).
18 Here, CJV argues that Plaintiff has failed to allege a knowing or
19 reckless violation of FACTA. The court agrees.

20     Plaintiff's allegations with respect to CJV's knowledge of,
21 and disregard for, FACTA's provisions center on CJV's membership in
22 the National Association of Theater Owners ("Association"). The
23 complaint alleges that the Association communicates legal news to
24 its members. (FAC ¶ 37.) The FAC alleges that one such update,
25 published in 2007, describes the impact of FACTA on the movie
26 theater industry. (FAC ¶ 42.) The complaint further alleges that
27 a list of "talking points" regarding FACTA is available on the
28

3

1  Association's web site, and that CJV employees "regularly access"
2  the Association web site.  (FAC ¶¶ 43-44.)

3      On the basis of these allegations, Plaintiff jumps to the
4  conclusion that the Association "repeatedly informed" CJV of
5  FACTA's requirements, that CJV "was notified of the Act and its
6  requirements throughout the entire period of time in which it
7  failed to comply with FACTA," and that CJV "ignored" the
8  Association's communications and proceeded to "knowingly and
9  intentionally" violate FACTA.  (FAC ¶¶ 45, 51-52.)  These
10  conclusory assertions, however, are unsupported by any pled facts.
11  The Association's 2007 update regarding FACTA was published three
12  years before CJV opened its movie theater, and Plaintiff has not
13  alleged that CJV saw the update at any point.  Similarly, Plaintiff
14  merely alleges that CJV employees accessed the Association website,
15  without ever alleging that CJV ever actually saw the FACTA "talking
16  points" web page.  The fact that information about FACTA was
17  available to CJV does nothing to support Defendant's naked
18  assertion that CJV was notified of FACTA's provisions and knowingly
19  ignored them.[1]  Plaintiff has, therefore, failed to adequately
20  plead a willful violation of FACTA.

21

22

23      [1] Contrary to Plaintiff's arguments, this case is not similar
24  to Zahn v. Tuttle, Inc., 2011 WL 1741912 (D.Minn. May 4, 2011), the
    only post-Iqbal case cited by Plaintiff.  In Zahn, the court denied
25  a motion to dismiss where a plaintiff alleging a FACTA violation
    alleged that the defendant received specific information regarding
26  FACTA, employed a third party FACTA compliance manager, then
    canceled its contract with the compliance manager when informed
27  that equipment changes would be necessary to ensure compliance with
    FACTA.  There are no allegations of similar actual notice, let
28  alone willful noncompliance, here.

4

1       CJV also argues that Plaintiff has failed to adequately plead

2   a claim for negligent violation of FACTA. (Motion at 6.)  Under 15

3   U.S.C. 1681o(a), a plaintiff alleging a negligent violation may

4   only recover actual damages.  Plaintiff, however, has not alleged

5   that he suffered any actual damages as a result of CJV's actions

6   beyond the bare assertion that "actual damages are present and

7   quantifiable."[2] (FAC ¶ 73.)  Though Plaintiff seeks "an award of

8   actual damages for injuries caused by [CJV's] unlawful conduct,"

9   the FAC makes no mention of any such injuries.  Furthermore,

10  Plaintiff's opposition to CJV's motion to dismiss makes no

11  reference to his negligence cause of action.  Accordingly,

12  Plaintiff's negligence cause of action is also dismissed.

13  **IV.  Conclusion**

14      For the reasons stated above, Defendant CJV's Motion to

15  Dismiss is GRANTED.

16

17  IT IS SO ORDERED.

18

19

20  Dated: October 18, 2011

21                                     DEAN D. PREGERSON

                                   United States District Judge

22

23

24

25

26

27

28

---

    [2] Plaintiff appears to have focused on the statutory damages available for willful violations under 15 U.S.C. 1681n(a): "Actual damages are present and quantifiable; however, Plaintiff is not required to prove actual damages to obtain the statutory damages . . . ."  (FAC ¶ 73.)

A-158.1

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
DEVORAH CRUPAR-WEINMANN, individually :
and on behalf of all others similarly :
situated,                              :
                                       :
                 Plaintiff,            :
                                       :
            -v-                        :           13 Civ. 7013(JSR)
                                       :
PARIS BAGUETTE AMERICA, INC., d/b/a    :              ORDER
PARIS BAGUETTE,                        :
                                       :
                 Defendant.            :
------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

     Pursuant to this Court's telephonic Order of December 12, 2013, the Court hereby grants defendant Paris Baguette America, Inc. permission to file exhibits pertaining to its motion to dismiss under seal, to the extent that the documents contain protected or confidential information and provided that the defendant files redacted versions of such documents publicly.

     SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       December 16, 2013

**A-159**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
DEVORAH CRUPAR-WEINMANN,                :
individually and on behalf of all      :
others similarly situated,             :
                                        :
                  Plaintiff,           :          13 Civ. 7013 (JSR)
                                        :
        -v-                            :
                                        :                 ORDER
PARIS BAGUETTE AMERICA, INC. d/b/a      :
Paris Baguette,                        :
                                        :
                  Defendant.           :
------------------------------------ x

JED S. RAKOFF, U.S.D.J.

    Plaintiff Devorah Crupar-Weinmann brings this action,

individually and on behalf of those similarly situated, against

defendant Paris Baguette America, Inc., alleging willful

violation of the Fair and Accurate Credit Transactions Act

("FACTA") of 2003, Pub. L. No. 108-159, 117 Stat. 1952 (codified

as amended in 15 U.S.C. § 1681c(g)), which amended the Fair

Credit Reporting Act. Specifically, plaintiff alleges that

defendant knowingly or recklessly violated FACTA by providing her

with a receipt that contained the full expiration date of her

credit card. Plaintiff, both for herself and on behalf of her

putative class, seeks statutory and punitive damages as

prescribed for willful violations under FACTA, as well as costs

and reasonable attorneys' fees.

    On November 18, 2013, defendant filed a motion to dismiss

the Complaint under Federal Rule of Civil Procedure 12(b)(6).

Defendant moves for dismissal primarily on the basis that the Complaint fails to plead sufficient facts to plausibly show that the defendant willfully violated FACTA. On January 6, 2014, following the parties' briefing, the Court heard oral argument on this motion.

After careful consideration of the parties' briefing and arguments, and for reasons to be explained in a forthcoming written opinion, the Court hereby grants defendant's motion to dismiss. The Court stays the case until it issues an opinion explaining the reasons for this Order, at which time entry of final judgment will be ordered. The Clerk of the Court is directed to close document number 10 in the docket of this case.

SO ORDERED.

Dated: New York, New York
January 15, 2014

JED S. RAKOFF, U.S.D.J.

E16QweiC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    DEVORAH CRUPER-WEINMANN

4                   Plaintiff

5           v.                                13 CV 7013 (JSR)

6    PARIS BAGUETTE AMERICA

7                   Defendant

8    ------------------------------x

                                       New York, N.Y.
9                                      January 6, 2014
                                       1:00 p.m.
10
     Before:
11
                          HON. JED S. RAKOFF
12
                                          District Judge
13
                          APPEARANCES
14

15

16   FRANK & BIANCO
          Attorneys for Plaintiffs
17   MARVIN FRANK
     BRIDGET HAMILL
18

19   TROUTMAN SANDERS LLP
          Attorney for Defendant
20   ERIC L. UNIS
     JOSHUA BERMAN
21   MARY JANE YOON

22

23

24

25

2

E16QweiC

1                    (In open court; case called)

2                    THE DEPUTY CLERK:  Will the parties please identify

3       themselves for the record.

4                    MR. FRANK:  Marvin Frank and Bridget Hamill from Frank

5       & Bianco for the plaintiff.

6                    THE COURT:  Good morning.

7                    MR. BERMAN:  Josh Berman, Troutman Sanders for

8       defendants Paris Baguette.

9                    With me at counsel table are my colleagues Mary Jane

10      Yoon and Eric Unis.  I also want to introduce to the Court

11      Mr. Ujin Shin and Dylan Ahn, who are the general manager and

12      vice-president respectively for Paris Baguette.

13                   THE COURT:  Good morning.  Please be seated.

14                   We are here on the motion to dismiss.  Let me hear

15      first from moving counsel.

16                   MR. BERMAN:  Thank you, sir.

17                   Good morning, Judge Rakoff.

18                   This is a purported FACTA class action.  The law

19      itself, FACTA makes an express distinction between two

20      categories of violation.  There are expressly denominated

21      willful violations of the law.  There is a separate connect, by

22      the way, reflected in Section 1681 of Subsection N of the

23      statute.  There are also an entirely separate category of

24      violations that are denominated by FACTA itself as negligent

25      violations.  That is reflected in Section 16810.

E16QweiC

1          THE COURT:  So, it seems to me there are two issues

2    here:  One is whether they plausibly pled willfulness, and the

3    other is whether they asserted any basis for a class action as

4    opposed to an individual action.  Taking the first, they allege

5    that there was partial compliance with FACTA but not total.

6    So, that indicates that your client was aware of the law, but

7    failed to comply with it in some respect, and their argument,

8    as I understand it, is that more likely than not that was a

9    knowing and willful decision.

10          MR. BERMAN:  Let me address that, your Honor.

11          I do think it has to be addressed together with the

12   other paragraphs in the complaint that purport to address

13   willfulness.  So, as I understand their argument, and to

14   sharpen the facts, of the 12 digits on the plaintiff's credit

15   card, Ms. Cruper-Weinmann's, nine were redacted in entirety and

16   only three were left visible.  Now, FACTA -- unbeknownst to my

17   clients, FACTA only requires the redaction of the first seven

18   digits.  In fact, FACTA permits five of the credit card digits

19   to be unredacted, to be out in the open.

20          The argument is that my client's overcompliance with

21   the redaction requirement as it relates to the credit card

22   number is ipso facto evidence of my client's willfulness with

23   respect to their technical noncompliance as to the expiration

24   date portion of the receipt.

25          Now, for what it's worth in our view, Judge Rakoff,

E16QweiC

1   that is just a logical fallacy.  It is not correct that my

2   clients were aware of FACTA, and it's not correct that the

3   overcompliance, as it were, with redacting the credit card

4   number shows their intentionality or willfulness with respect

5   to the expiration date; but there is a kind of corollary to

6   that, which is that that allegation, logically flawed as we

7   believe it is, is paired in the complaint or succeeds four

8   paragraphs that relate to the broader history of the enactment

9   of FACTA.

10              FACTA was widely published by merchants in 2006.  The

11  Visa credit card terms of use contain some fine print relating

12  to FACTA.  In 2003, a variety of senders made speeches relating

13  to FACTA.  Now, at all of those times, my client didn't exist.

14  Paris Baguette did not open in the United States until after

15  all of the hoopla that surrounded the enactment of the law, and

16  the implementation of the law had already occurred.

17              So this is a company, quite successful in Korea, that

18  decided to establish a chain here in the United States.  What

19  happened is they came over here.  The first store opened in

20  '07, and they used essentially the same programming partner,

21  which is a Korean company, respected Korean company that is

22  known obviously for complying with the applicable privacy laws,

23  and they were able to engineer a situation where the -- it's

24  called the point of sale system -- or the cash register itself

25  could accept credit cards rather than having a separate credit

5

E16QweiC

1    card terminal.  And, thereby, at the end of the day, that was a

2    great solution because they didn't have to take the receipt

3    from the credit card.

4             THE COURT:  All the stuff you are telling me, this is

5    a motion to dismiss, right?

6             MR. BERMAN:  Yeah, so --

7             THE COURT:  So you can't tell me any of that.

8             MR. BERMAN:  So, even putting separate and aside from

9    that entirely, let me read or let me identify for the Court,

10   respectfully, the way that other federal courts had treated

11   precisely the allegations they make here that compliance was

12   part of the statute is ipso facto evidence of willfulness, not

13   just a non-party --

14             THE COURT:  I'm familiar with those cases.  I get the

15   gist, and I apologize for cutting you off, but I think I need

16   to hear from your adversary, and we will come back to you on

17   that.

18             MR. BERMAN:  Thank you, Judge.

19             MR. FRANK:  Good morning, your Honor.

20             THE COURT:  So, if we have here a partial

21   compliance -- your adversary says it's overcompliance, but, in

22   any event, partial compliance/partial noncompliance, why in the

23   world does that give rise to a reasonable, plausible inference

24   of willfulness?  Why isn't it just the opposite; that there is

25   no motive, there is no reason why they would comply with part

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

E16QweiC

1   and not with the other part?

2          MR. FRANK:  I think that recklessness is part of

3   willfulness.  I think all the courts hold that, and when you

4   look at *Safeco*, it holds that.  What you're looking for --

5          THE COURT:  What do you mean by recklessness?

6          MR. FRANK:  Recklessness is different than actual

7   knowledge.  You don't need actual knowledge.  You need to be

8   able to just get it wrong not through negligence, but, you see

9   it a lot in securities, right?  In securities law --

10         THE COURT:  I'm very familiar with it in securities

11  law, and I don't think -- I don't see where you pled what it's

12  referred to in securities law or the real origin of the term in

13  modern judicial parlance is the model penal code.  And what it

14  refers to is a willful blindness.  Where do you plead willful

15  blindness?

16         MR. FRANK:  I believe that they were either willfully

17  blind or knowingly blind.  In paragraph 30, the language say

18  they had contracts with -- they had contracts with Visa,

19  MasterCard, American Express and the other credit card

20  companies that required them to comply with FACTA.

21         THE COURT:  But the point is -- maybe I wasn't clear

22  on the question I was putting to you.  If there had been total

23  noncompliance with FACTA, and you could show or fairly allege

24  that they were told repeatedly that you should comply with

25  FACTA and they didn't, that would support willfulness.  I don't

E16QweiC

1   even know you'd have to go to recklessness, but assuming

2   recklessness in the model penal code sense was part of it, it

3   would probably support that.  But that's not what we have here.

4          What we have here is partial compliance but not total

5   compliance.  That sounds like negligence.  Why in the world --

6   what motive would they have to comply with the part that they

7   did comply with but not comply with the part that you allege

8   they should have complied with?  That is just -- you know, they

9   blew it in terms of negligence, but how can you infer

10  willfulness from that?

11         MR. FRANK:  Every case that both defendant and

12  plaintiff had cited to have had this partial compliance.

13  Defendants cases are --

14         THE COURT:  Well, I'm not bound by any of those cases.

15  I'm asking the question as a question of what plausible

16  inferences can be drawn from your allegations?

17         MR. FRANK:  I think that the only inference -- I don't

18  know what the motive is.  I can't give them or attribute to

19  them a motive because I just don't know anything like that, and

20  I haven't had discovery.  On the other hand -- and I'm not sure

21  that there is a motive.  I don't know at this point in time.

22  On the other hand, certainly they knew about FACTA because they

23  did have this partial compliance.  That's where cases generally

24  go; that they know about FACTA, therefore, there should be full

25  compliance, not partial compliance, because it is utterly clear

E16QweiC

 1    that you are not allowed to print the expiration date.

 2              It just it seems to me at that point that the exact

 3    knowledge that you cannot print anything more than five, the

 4    last five digits of the credit card/debit card number, and

 5    you're not allowed to print FACTA.  And I could go into why

 6    they knew they're not allowed to print the expiration date.

 7    You know, we have those, or why they would want to comply with

 8    one of the two requirements -- and they are independent

 9    requirements -- I can't answer that.

10              THE COURT:  I have the gist of your argument.

11              Let me ask you then a different question.  Assuming

12    arguendo you would survive a motion to dismiss, why should this

13    be a class action?

14              MR. FRANK:  The argument that the defendants made is

15    that there was one person, one receipt in one of their stores,

16    and that there is no overt allegations.  That's exactly what a

17    class action is meant to do.  That's what a class action is all

18    about; that you have a representative party who represents all

19    the absent class members who suffered the same fate as the

20    aggrieved party.

21              THE COURT:  What's your basis for believing that

22    anyone suffered the same fate?  If you have a classic class

23    action, like a securities fraud where if the proxy statement

24    sent to a million shareholders was false, then a million

25    shareholders were likely injured.  Or in a discrimination class

E16QweiC

1    action, if someone was discriminated against because of some

2    discriminatory employment policy, then there is every reason to

3    believe that everyone of the protected class was discriminated

4    against.  But here you don't have anything like that, do you?

5            MR. FRANK:  You have a computer system.  These point

6    of sales computer systems that printed out the receipt that was

7    given to the plaintiff at the time of the sales transaction is

8    a computer system that does the same thing over and over and

9    over again.  It's a question of how many stores there are.  I

10   said, I think in the complaint, at least 20.  Then I said in

11   the opposition brief 30 because I counted from the website.

12   Then there is an affidavit that came back that it's 12 or 14.

13   There's a lot of stores.  It's a big Korean chain that owns a

14   lot of Dunkin' Donuts franchises and other things that are

15   supposed to know what they're doing.  Their computer system

16   produces the same receipt over and over and over again.

17           THE COURT:  OK.  That clarifies it.

18           Thank you very much.  I want to hear briefly from your

19   adversary in rebuttal.

20           MR. BERMAN:  Thank you, Judge Rakoff.

21           As to the first issue, on the question of willfulness

22   and why an inference of willfulness plausibly arises or doesn't

23   plausibly arise here, the argument that the plaintiff is making

24   would quite literally write the possibility of a negligent

25   violation out of the statute entirely, and --

E16QweiC

1          THE COURT:  No, no, no, because this is just on a

2    motion to dismiss, and your adversary says there are cases out

3    there that say that context is a plausible inference, and by

4    the end of discovery it may have been erased, and on summary

5    judgment, there may be nothing left of negligence, but this is

6    a motion to dismiss.

7          MR. BERMAN:  So on the law that there are cases out

8    there that accept this inference as evidence of ipso facto

9    willfulness, that is absolutely incorrect; and I rely for that

10   assertion on the precedent cited in the brief.  I can recite

11   them to your Honor now.

12         THE COURT:  No, that's OK.

13         MR. BERMAN:  There is a statement that was made in the

14   *Garber* case, that goes directly to this issue.  It was on a

15   motion to dismiss, just as this case was here.  The court

16   essentially said, you know -- it's interesting, we tried to

17   make sense of the law, and there is no question that in the

18   reported FACTA decisions, there has been a clear shift and the

19   dividing line in the reported decisions is the Iqbal/Twombly

20   line of cases.  The pre-Iqbal and Twombly cases which were

21   reported in 2007, some in 2008, permitted extraordinarily

22   bare-bones complaints to go forward.

23         The post Iqbal cases, *Komorowski*, *Miller-Huggins*, and

24   the *Seo* case, maybe most poignantly, the *Garber* decision, have

25   dismissed complaints that are virtually verbatim with this

E16QweiC

1    complaint, and, in fact, incorporate the precise kind of

2    misinference that --

3            THE COURT:  Did you want to say anything on the class

4    certification question to the extent it's before me at this

5    point?

6            MR. BERMAN:  Only very briefly, sir, if I may.

7            I agree entirely with your Honor that there is no

8    allegation in the complaint that relates to the kind of classic

9    class action scenario.

10           THE COURT:  They say it's a computer -- there is every

11   reason to believe that this computer program was used across

12   the board.

13           MR. BERMAN:  But there isn't every reason to believe

14   that.  In fact, there are differences with the way particular

15   stores are set up.  For instance -- and, again, this gets into

16   some factual questions, but we get the --

17           THE COURT:  I can't consider anything that is not

18   fairly contained in the complaint.

19           MR. BERMAN:  In order to reach the conclusion of a

20   proper class, the Court would have to accept plaintiff's

21   counsel's representation that the computer system is the same

22   or there's an inference the computer system is the same across

23   Paris Baguette stores.  That's just made up.

24           The reality is some stores have a terminal that can

25   both take the receipt and process the credit card.  Other

E16QweiC

 1    stores have a credit card terminal that is provided by a

 2    different vendor.  The point is in order to get there --

 3              THE COURT:  I get the point.  I apologize to both

 4    counsel for keeping you on a fairly short leash, but I had a

 5    particularly full calendar today.  This was a very helpful

 6    argument for both sides.

 7              So, I will take the matter under advisement.  I will

 8    get you at least a bottom-line decision no later than

 9    January 20, two weeks from today.  It may be a full opinion.

10    If it is not, a full opinion will follow, but at least you will

11    know the bottom line, and then you can continue or not as to

12    depending which way the court decides.

13              MR. BERMAN:  Judge Rakoff, if I may, there is one

14    other issue that I think is properly addressed today.  Very

15    quickly.

16              THE COURT:  Go ahead.

17              MR. BERMAN:  When we last spoke, we spoke by

18    teleconference on November 14.  What we had asked for on behalf

19    of Paris Baguette was a stay of discovery pending the Court's

20    disposition on our motion to dismiss.  I believe I'm stating

21    this entirely correctly, I hope the Court agrees with my

22    recollection, but what your Honor did, is you said to

23    plaintiff's counsel, look, I don't stay discovery.  It's not my

24    practice to do that.  I'm going to give you a choice.  Either

25    you can consent to a stay of discovery, or if you don't, I'm

E16QweiC

1    going to enter the scheduling order before me, and I'm going to

2    put everybody on an expedited briefing schedule and an

3    expedited oral argument schedule.

4            And plaintiff's counsel opted for option B.  We went

5    on a very expedited schedule.  We're here for oral argument in

6    approximately six weeks.

7            The case management plan that your Honor entered on

8    November 14 set forth a final date for serving document

9    requests and interrogatories on December 17.

10           THE COURT:  Yes.

11           MR. BERMAN:  That was an order of the court.  And the

12   plaintiffs just didn't comply with it.  We were not served with

13   discovery requests on that date.  In fact, we were not served

14   with discovery requests in compliance for several days later.

15   Paris Baguette did comply.  Unfortunately, the Court said no

16   stay.  We did comply, and we think it is not unrelated to the

17   matter in which this is --

18           THE COURT:  So, here I think -- without getting into

19   whether they complied or didn't comply -- I think the following

20   makes sense, since I am going to decide this within two weeks:

21           All discovery is stayed in all respects for between

22   now and January 20.  If I dismiss the case on January 20,

23   obviously, that's the end of that.

24           If I deny the motion on January 20, then counsel

25   should immediately jointly call my chambers, and we will reset

E16QweiC

1    the discovery schedule in a way that makes sense for both sides

2    without any arguments about waiver or anything like that.  We

3    will just reset the whole schedule.  OK?

4             MR. FRANK:  Your Honor, if I may have one minute?  As

5    far as the January 20 -- obviously, I disagree with what

6    counsel said.

7             THE COURT:  I know.  That's why I cut off that.

8             MR. FRANK:  As far as what happens on January 20, I

9    just hope if the case is dismissed we're given leave to

10   replead.

11            THE COURT:  What else would you plead?

12            MR. FRANK:  Well, the one thing that was a fact that I

13   did put in the opposition brief that is not in the complaint,

14   and is improperly in the opposition brief, that after the

15   complaint was filed, we received a letter from Paris Baguette's

16   insurance company stating that there was no insurance coverage

17   because the company had negotiated an insurance policy with a

18   specific FACTA exclusion.  So, therefore, it's utterly clear

19   that senior management of Paris Baguette was aware of FACTA

20   in --

21            THE COURT:  Let me just say this:  Notwithstanding

22   defense counsel's argument, I think the complaint as it

23   presently stands raises a plausible inference that Paris

24   Baguette was fully aware of FACTA.  So, that's not going to be

25   the issue.

E16QweiC

1          The issue what is willfulness, and whether or not it

2     has been pled there.  That's why I asked you, is there anything

3     else you had on that issue that you wanted to plead.

4          I understand this is -- every plaintiff's counsel in

5     the world has been put in this bind by Iqbal and Twombly, like

6     I asked you before about motive, and you correctly said, we

7     don't know what their motive was, if any, we would only find

8     that out in discovery.  Agreed.  But that is, unfortunately,

9     not the end of the issue because I have to -- while motive is

10    not an element, I am just giving that as an example.  I have to

11    decide this on what you presently know and can fairly plead.

12    So, you may have pled enough.  What I am asking is there

13    anything else you would have pled, and what you are telling me

14    is you would have pled more about their knowledge of FACTA.

15    I'm saying you don't have to do that because I think you've

16    pled enough on that already.  That issue can survive dismissal.

17    The issue is willfulness.  Is there anything else you would

18    have pled on willfulness?

19          MR. FRANK:  The reason I threw in the insurance policy

20    is the cases that allowed the FACTA decision to go forward, the

21    FACTA cases to go forward, all looked towards information that

22    went to the specific defendants and not the general -- there

23    are a lot of cases out there, don't get me wrong, *Dover*, and I

24    think *Katz* that allow general information, especially after ten

25    years, for those cases to go forward, denied on a motion to

E16QweiC

1     dismiss.

2          But there are other cases, like *Troy* and *In Re: TJX*

3     that required a specific piece of knowledge that was given to

4     that defendant about FACTA.  So, I did say in paragraph 39 of

5     the complaint that the company was made aware by the contract

6     with the credit card issuing companies, they're a requirement,

7     and now this insurance company thing, that something that went

8     directly to the company that made it plausible was that they

9     willfully refused to follow the FACTA law.  So, that is why I

10    threw it in there.

11         THE COURT:  All right.  I will factor into my ruling

12    on the 20th that -- of course, I have no idea yet where I am

13    coming out on the merits, so to speak; but if I come out

14    against you, I will then consider whether based on what you

15    just told me I would allow an amended complaint or not.

16         So, thank you for raising that.

17         MR. BERMAN:  Judge, if I may just have a word about

18    this insurance communication?  I have to, for no other reason

19    than to protect the record, I understand the Court will

20    consider it as it will consider it, but the communication in

21    question was sent in error by my client's insurance company who

22    misunderstood which counsel which represented which party, and

23    it is quite distressing --

24         THE COURT:  That may be, but that is certainly not

25    something I can consider.  If they can plead it, as they

E16QweiC

1    represented they can --

2            MR. BERMAN:  They certainly couldn't plead it when

3    they filed this complaint.

4            THE COURT:  Well, as I understand it, they can plead

5    the receipt of this letter.  You are saying the letter was sent

6    in error.  That may be.  That may not be.  It's neither here

7    nor there.

8            MR. BERMAN:  What I am saying it's sent by counsel for

9    the insurer to who they believe to be counsel to the plaintiff,

10   and it ought not be admissible because it should have been

11   clawed back.  We immediately sent a letter -- I don't remember

12   honestly if it was letter or email --

13           THE COURT:  I hear you.  Very good.  Thanks very much.

14           (Adjourned)

15

16

17

18

19

20

21

22

23

24

25

A-178

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------- x
DEVORAH CRUPAR-WEINMANN,            :
individually and on behalf of all  :
others similarly situated,         :
                                   :
               Plaintiff,          :        13 Civ. 7013 (JSR)
                                   :
        -v-                        :
                                   :        MEMORANDUM ORDER
PARIS BAGUETTE AMERICA, INC. d/b/a  :
Paris Baguette,                    :
                                   :
               Defendant.          :
----------------------------------- x

JED S. RAKOFF, U.S.D.J.

     Plaintiff Devorah Crupar-Weinmann brings this action,

individually and on behalf of those similarly situated, against

defendant Paris Baguette America, Inc. ("Paris Baguette"),

alleging willful violation of the Fair and Accurate Credit

Transactions Act ("FACTA") of 2003, Pub. L. No. 108-159, 117

Stat. 1952 (codified as amended in 15 U.S.C. § 1681c(g)), which

amended the Fair Credit Reporting Act ("FCRA"). Specifically,

plaintiff alleges that defendant knowingly or recklessly violated

FACTA by providing her with a receipt that contained the full

expiration date of her credit card. Plaintiff, both for herself

and on behalf of her putative class, seeks statutory and punitive

damages as prescribed for willful violations under the Act, as

well as costs and reasonable attorneys' fees.

     On November 18, 2013, defendant filed a motion to dismiss

the Complaint under Federal Rule of Civil Procedure 12(b)(6).

1

Defendant moved primarily on the basis that the Complaint failed to plead sufficient facts to plausibly show that the defendant willfully violated FACTA.[1]

On January 15, 2014, following full briefing and oral argument, the Court granted defendant's motion to dismiss, but stayed the case until it had issued a written opinion explaining the reasons for its decision. This Memorandum Order reaffirms and explains the reasons for the Court's January 15 Order and directs entry of final judgment dismissing plaintiff's Complaint with prejudice.

On a Rule 12(b)(6) motion for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "a

---

[1] Defendant asserted two other grounds for at least partial dismissal of the Complaint. First, defendant argued that plaintiff failed to allege actual injury. Defendant's Memorandum of Law in Support of Motion to Dismiss ("Def. MTD Mem."), Nov. 18, 2013, at 4-5. However, plaintiff correctly notes that she only pursues damages based on a theory of willful violation, which does not require proof of actual injury. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Complaint, Dec. 6, 2013, at 11. Second, defendant contended that plaintiff failed to plead sufficient specific facts to sustain a putative class action claim, namely because of plaintiff's lack of specificity regarding Paris Baguette's practices at other stores or in other transactions. Def. MTD Mem., at 9. The Court does not reach this issue because it dismisses the Complaint in its entirety with prejudice on the ground that plaintiff has failed to plead a willful violation.

complaint need not include detailed factual allegations, it must provide 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Retirement Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). A court should "accept[] all factual allegations as true and draw[] all reasonable inferences in favor of the plaintiff." *See, e.g., N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 119 (2d Cir. 2013) (internal quotation marks omitted). However, merely offering "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Pension Benefit Guar. Corp.*, 712 F.3d at 717 (internal quotation marks omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Pension Benefit Guar. Corp.*, 712 F.3d at 718 (internal quotation marks and alterations omitted).

In relevant part, FACTA requires businesses that accept credit and debit cards to redact on customers' receipts all but the last five digits of the credit card's number, as well as the

3

card's expiration date. 15 U.S.C. § 1681c(g)(1). Congress's
purpose in enacting the law was to prevent identity theft using
information on discarded credit card receipts.

Damages under FACTA differ depending on whether
noncompliance with the law was "negligent" or "willful." Damages
for negligent noncompliance are limited to actual injuries
suffered by the customer, such as from actual identity theft
resulting from a discarded receipt. 15 U.S.C. § 1681o(a). As
noted, however, plaintiff here is not claiming any actual
damages. *See* Plaintiff's Memorandum of Law in Opposition to
Defendant's Motion to Dismiss Complaint, Dec. 6, 2013, at 11. By
contrast, "[a]ny person who willfully fails to comply" with the
law's requirements is liable for damages of between $100 and
$1,000 per customer, as well as punitive damages. *Id.* § 1681n(a).
Willfulness, in turn, encompasses both knowing and reckless
violations of FACTA. *See Safeco Ins. Co. of America v. Burr*, 551
U.S. 47, 56–60 (2007) (interpreting the meaning of "willful" in
the context of another violation of the FCRA); *see also, e.g.*,
*Katz v. ABP Corp.*, 12-CV-4173, 2013 WL 2444605, *3 (E.D.N.Y. June
4, 2013). Thus, the question on this motion is whether plaintiff
has adequately pleaded a willful violation.

The Complaint alleges the following: On September 19, 2013,
plaintiff made a purchase at defendant's midtown Manhattan
location, paid with a credit card, and received an electronically

4

printed receipt displaying the expiration date of her credit card. Complaint, Oct. 2, 2013, ¶ 14. Plaintiff alleges that the defendant owns and operates one restaurant in this District, four others in the State of New York, and at least fifteen other retail stores throughout the United States. *Id.* ¶ 15. At all relevant times, defendant was a "'person that accepts credit cards or debit cards for the transaction of business'" within the meaning of FACTA. *Id.* ¶ 16 (quoting 15 U.S.C. § 1681c(g)(1)).

The Complaint also pleads the following facts that relate to whether defendant's alleged violation was willful:

- "Defendant's conduct was willful, knowing or reckless, and Defendant failed, and continues to fail, to protect Plaintiff, and all others similarly situated, against identity theft and credit card and debit card fraud by issuing electronically printed receipts displaying the entire expiration dates of its customers' credit and debit cards." *Id.* ¶ 11.
- "In response to the passage of FACTA and the Clarification, businesses nationwide changed their debit and credit card processing machines so that the prohibited information would not be printed on receipts." *Id.* ¶ 30.
- "VISA, MasterCard, the PCI Security Standards Council — a consortium founded by VISA, MasterCard, American Express, and JCB — companies that sell cash registers and other devices for the processing of credit card and debit card payments, and other entities informed Defendant about FACTA, including its specific requirements concerning the truncation of credit card and debit card numbers and prohibition of the printing of expiration dates, and Defendant's need to comply with same." *Id.* ¶ 31.
- "FACTA requirements were also widely publicized among retailers." *Id.* ¶ 32.
- "In addition, the card issuing organizations required compliance with FACTA by contract, in advance of FACTA's mandatory compliance date. For example, the August 12, 2006, edition of 'Rules for Visa Merchants' (p. 62), which is distributed to and binding upon all merchants that accept

5

Visa-branded credit and debit cards, expressly requires that 'only the last 4 digits of an account number should be printed on the customer's copy of the receipt' and the 'expiration date should not appear at all.' These statements were accompanied by a picture of a receipt showing precisely what had to be removed. VISA required compliance by July 1, 2006, five months ahead of the statutory deadline." *Id.* ¶ 33.

- "Defendant's knowledge of the FACTA requirements is also evidenced by its change to the credit and debit card receipts to remove all but the last three digits of the card number." *Id.* ¶ 34.

- "Defendant knew of the truncation requirement and prohibition of the printing of expiration dates or was reckless by not knowing about the requirement and the prohibition, in light of the information readily available to it." *Id.* ¶ 38.

- "Defendant accepts Discover, American Express, Visa and MasterCard branded credit and debit cards and, therefore, is a party to a contract requiring compliance with the foregoing requirements." *Id.* ¶ 39.

- "Defendant's use of software, devices and machines that print receipts in violation of FACTA was willful, knowing or reckless." *Id.* ¶ 40.

In addition, plaintiff brings claims on behalf of a putative class, which she defines as follows:

> [A]ll persons or entities to whom Defendant provided an electronically printed receipt at the point of sale or transaction, in a sale or transaction occurring after June 3, 2008, which receipt displayed the expiration date of the customer's credit card or debit card. Excluded from the Class are the officers and directors of Defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendant has or had a controlling interest.

*Id.* ¶ 17.

In evaluating these allegations, the central question is what plaintiff must plead to show a "knowing violation" under

6

FACTA. To judge from the above-quoted passages, plaintiff appears to suggest that a knowing violation can be inferred solely from the fact that a defendant knew of the relevant statute and then violated it. However, plaintiff fundamentally misreads what is required to show a knowing violation under FACTA.

In *Safeco Insurance Co. of America v. Burr*, the Supreme Court held that willfulness, for purposes of FACTA, requires either a knowing or reckless violation. *See* 551 U.S. 47, 56-60 (2007). While the *Safeco* decision focused primarily on reckless violations of FACTA, it relied significantly on – and cited approvingly of — two earlier Supreme Court decisions that interpreted the term "willful" in the context of other federal statutes. One of those earlier decisions, *Trans World Airlines, Inc. v. Thurston* ("*TWA*"), 469 U.S. 111 (1985), construed the meaning of "willful" in the Age Discrimination in Employment Act ("ADEA"), and elaborated on what constitutes a "knowing" violation of a statute. The *TWA* Court emphasized that it is insufficient for a plaintiff to simply show that a defendant "knew of the potential applicability of the ADEA" or that it knew that the statute was "in the picture." *TWA*, 469 U.S. at 127-28 (internal quotation marks omitted). Rather, the *TWA* Court required that the defendant "'know' that its conduct violated the Act." *Id.* at 129.

7

Even though *TWA* was decided in the context of an alleged violation of ADEA, its reasoning applies with equal force here, especially given the *Safeco* Court's reliance on *TWA* in interpreting the same term in FACTA that is at issue here — "willful." In fact, another district court, relying heavily on *TWA*, has applied same reasoning as to knowing violations under FACTA, *see Vidoni v. Acadia Corp.*, 11-CV-00448-NT, 2012 WL 1565128, at *3-4 (D. Me. Apr. 27, 2012), and this Court finds that court's reasoning persuasive in this case. Therefore, to survive defendant's motion to dismiss, plaintiff's Complaint must plead sufficient facts to support a plausible inference that defendant knew that its conduct was violating the statute, and not simply that defendant knew about the existence of the statutory provision at issue.

With this understanding of willfulness and of knowing violations, the Court now considers each relevant allegation in the Complaint to determine whether the defendant has plausibly pled willfulness:

Plaintiff's allegations in paragraphs 11, 38, and 40 are merely conclusory and therefore cannot support a finding of willfulness. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). In addition, some of plaintiff's allegations, particularly those in paragraphs 30 and 32 of the Complaint, fail to establish either defendant's knowledge of FACTA or its knowing

8

or reckless noncompliance. These generic allegations are applicable to nearly all entities that are subject to FACTA's requirements and have been found inadequate even in a number of cases that postdate *Iqbal*'s heightened clarification of pleading requirements on a Rule 12(b)(6) motion to dismiss. *See, e.g.*, *Komorowski v. All-Am. Indoor Sports, Inc.*, No. 13-2177-SAC, 2013 WL 4766800, at *3-4 (D. Kan. Sept. 4, 2013); *Miller-Huggins v. SpaClinic, LLC*, No. 09 C 2677, 2010 WL 963924, at *2 (N.D. Ill. Mar. 11, 2010).

This leaves only the allegations contained in paragraphs 31, 33, 34, and 39 of the Complaint. These allegations are specific to this defendant, and they support an inference that defendant was aware of FACTA and its requirements. For example, paragraphs 33 and 39 together support an inference that defendant knew of FACTA's requirements as a result both of credit card companies' independent requirements that card-accepting merchants comply with FACTA's requirements and of defendant's status as card-accepting merchant. *See* Complaint, ¶¶ 33, 39.

However, even those four paragraphs of the Complaint, which are the only allegations that plausibly suggest that defendant knew about FACTA's requirements, do not support a plausible inference that defendant knew that it was *violating* FACTA. The allegations contained in paragraphs 31, 33, and 39 very clearly show only that defendant, at best, was aware of FACTA and its

9

A-187

requirements because it received information on FACTA compliance from credit card companies.

The closest plaintiff comes to establishing the requisite knowledge or recklessness is the allegation contained in paragraph 34 of the Complaint. Plaintiff alleges that defendant "change[d] . . . the credit and debit card receipts to remove all but the last three digits of the card number." Complaint, ¶ 34. This suggests that the defendant knew enough about FACTA to comply in part with the statute. However, even this fact, if accepted as true, does not plausibly suggest that plaintiff acted knowingly or recklessly to violate FACTA. Rather, the fact that defendant changed its credit card receipt to partially comply with FACTA's requirements renders implausible the claim that defendant was attempting to willfully evade FACTA's restrictions. Plaintiff neither alleges nor offers any reason for this Court to plausibly infer that the defendant would know about FACTA's requirements and change its credit card receipt to comply with one portion of FACTA, but would intentionally, knowingly, or recklessly choose not remove the expiration date. At best, the allegation in paragraph 34 supports an inference that defendant *negligently* violated FACTA, which does not suffice to state a claim in a case such as this, in which plaintiff does not allege actual damages. *See* 15 U.S.C. § 1681o(a).[2]

_____

[2] Plaintiff also fails to plausibly plead that defendant acted

10

Finally, the Court dismisses plaintiff's claims with prejudice because any attempt by plaintiff to replead her Complaint would be futile. *See, e.g.*, *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). At oral argument, the Court asked plaintiff's counsel whether any additional evidence of willfulness existed, even if it was not pleaded in this Complaint. *See* Tr., Jan. 6, 2014, at 14:8-:11, 15:12-:18. Counsel responded that, if given the opportunity to do so, plaintiff would assert, as further evidence of willfulness, that defendant's insurance company sent a letter indicating that it would not insure damages resulting from any violations by defendant of FACTA because the defendant and insurer had negotiated such an exception to coverage. *See id.* at 14:12-:20, 15:19-16:10. Again, this evidence could plausibly support an inference that defendant was aware of the requirements of FACTA, but, as the Court has already made clear, evidence of defendant's knowledge of the statute in question, without anything more, fails to plausibly show that the defendant knowingly or recklessly violated the statute. The Court is convinced that

---

recklessly because there is no evidence that defendant made a decision to put the credit card expiration date on its receipts as the result of an objectively unreasonable interpretation of the statute. *See, e.g.*, *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 68-70 (2007). In fact, there is no suggestion at all in the Complaint that defendant consciously included the expiration date on its receipts, much less that it did so on an unreasonably mistaken belief that the statute did not require removal of those dates.

plaintiff would not be able to plausibly plead a claim for
willful violation of FACTA, even if she were given the
opportunity to replead.

Accordingly, the Court hereby grants defendant's motion to
dismiss and directs entry of final judgment dismissing
plaintiff's claims with prejudice.

SO ORDERED.

Dated:  New York, New York
        June 29, 2014

_____
JED S. RAKOFF, U.S.D.J.

**A-190**

USDC SDNY

DOCUMENT

ELECTRONICALLY FILED 06/30/2014

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
Devorah Crupar-Weinmann,
individually and on behalf of all others
similarly situated,

                      Plaintiff,

             -against-

Paris Baguette America, Inc., d/b/a
Paris Baguette,
                      Defendant.
------------------------------------------------------------X

13 **CIVIL** 7013 (JSR)

## JUDGMENT

      Defendant having moved to dismiss the complaint (Doc. #10) pursuant to Fed. R. Civ. P. 12(b)(6) primarily on the basis that the Complaint failed to plead sufficient facts to plausibly show that Defendant willfully violated the Fair and Accurate Credit Transactions Act ("FACTA"), and the matter having come before the Honorable Jed S. Rakoff, United States District Judge, and the Court, on June 29, 2014, having rendered its Memorandum Order (Doc. #24), the Court is dismissing Plaintiff's claims with prejudice because any attempt by Plaintiff to replead her Complaint would be futile.  The Court is convinced that Plaintiff would not be able to plausibly plead a claim for willful violation of FACTA, even if she were given the opportunity to replead. Accordingly, the Court is granting Defendant's motion to dismiss and directing the entry of final judgment dismissing Plaintiff's claims with prejudice, it is,

      **ORDERED, ADJUDGED AND DECREED:**  That for the reasons stated in the Court's Memorandum Order dated June 29, 2014, the Court dismissed Plaintiff's claims with prejudice because any attempt by Plaintiff to replead her Complaint would be futile.  The Court is convinced that Plaintiff would not be able to plausibly plead a claim for willful violation of FACTA,

even if she were given the opportunity to replead.  The Court has granted Defendant's motion to

dismiss and dismissed Plaintiff's claims with prejudice; accordingly, the case is closed.

**Dated:**  New York, New York
        June 30, 2014

                              **RUBY J. KRAJICK**
                    _____
                              **Clerk of Court**
          **BY:**  *K. Mango*
                    _____
                              **Deputy Clerk**

# <u>EXHIBIT A</u>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **DEVORAH CRUPAR-WEINMANN,** | ) | |
| **INDIVIDUALLY AND ON BEHALF** | ) | |
| **OF ALL OTHERS SIMILARLY** | ) | **Case No. 13 Civ. 7013 (JSR)** |
| **SITUATED,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **AMENDED CLASS ACTION** |
| | ) | **COMPLAINT** |
| **v.** | ) | |
| | ) | |
| **PARIS BAGUETTE AMERICA, INC.** | ) | **JURY TRIAL DEMANDED** |
| **d/b/a PARIS BAGUETTE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

Plaintiff Devorah Crupar-Weinmann, by her attorneys, states as follows for her Class Action Complaint against Defendant Paris Baguette America, Inc. d/b/a Paris Baguette ("Defendant" or "Paris Baguette"):

## NATURE OF THE CASE

1.      This is a class action based upon Defendant's violation of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq., as amended*.  FACTA is designed to protect credit and debit cardholders from identity theft and fraud.  The statute prohibits merchants who accept credit cards or debit cards (the "Cards") from issuing electronically-generated receipts at the point of sale that display the expiration date, thus limiting an identity thief's ability to obtain the consumer's account information, among other things.

2.      Paris baguette violated FACTA repeatedly by printing the Card expiration date on sales receipts issued to its customers at the point of sale.

1

3.     Paris Baguette was well aware of FACTA from numerous sources including, but not limited to, its contracts with Visa, MasterCard, etc. and its insurance policies.  Paris baguette's partial compliance with the law is proof of that awareness.

4.     Plaintiff seeks, on behalf of herself and the class, statutory damages, punitive damages, costs, and attorneys fees, all of which are made expressly available by statute, 15 U.S.C. §1681, *et seq.*

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction under 28 U.S.C. §§1331 and 1337, and 15 U.S.C. §1681p, which provides that "An action to enforce any liability created under this title may be brought in any appropriate United States district court, without regard to the amount in controversy . . . ."

6.     Venue in this district is proper pursuant to 28 U.S.C. §1391 because Defendant transacts business in this District.

## PARTIES

7.     Plaintiff Devorah Crupar-Weinmann purchased food at Paris Baguette's midtown Manhattan location on September 19, 2013, paid for the food with a credit card, received an electronically printed receipt displaying the expiration date at the point of sale, and was damaged thereby.

8.     Defendant Paris Baguette America, Inc. d/b/a Paris Baguette is a New Jersey corporation authorized to transact business within the State of New York.  Paris Baguette owns and operates four restaurants in this District, as well as four others in the State of New York. Paris Baguette also owns and operates at least 25 other retail stores throughout the United States, including the states of California, Georgia, Massachusetts, New Jersey and Pennsylvania.

9.     At all relevant times, Paris Baguette was a "person that accepts credit cards or debit cards for the transaction of business" within the meaning of FACTA.

**CLASS ALLEGATIONS**

10.     This action is brought on behalf of Plaintiff individually and as a class action on behalf of all persons or entities to whom Paris Baguette provided an electronically printed receipt at the point of sale or transaction, in a sale or transaction occurring after October 3, 2008, which receipt displayed the expiration date of the customer's credit card or debit card.  Excluded from the Class are the officers and directors of Paris Baguette at all relevant times, members of its immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Paris Baguette has or had a controlling interest.

11.     Because Paris Baguette has numerous restaurants that serve hundreds, if not thousands, of meals that were paid for with debit cards and credit cards.  Paris Baguette printed the card receipts at the point of sale and those receipts showed the Card expiration date, joinder of all individual members would be impracticable.  Paris Baguette used standardized computer software to print the receipts and that software printed the receipts the same way for each transaction.  While the exact number of Class members can only be determined by appropriate discovery, Plaintiff believes there are thousands of members of the Class.  Members of the Class may be identified from records maintained by Paris Baguette and its Card processing company and may be notified of the pendency of this action by United States mail.

12.     Plaintiff's claims are typical of the claims of the other members of the Class, as all members of the Class are similarly affected by Paris Baguette's wrongful conduct in violation of federal law that is complained of herein.

13.    There are common questions of law and fact affecting members of the class, which common questions predominate over questions which may affect individual members. These include the following:

(a)    Whether Paris Baguette provided customers with electronically printed receipts at the point of sale which show the expiration date;

(b)    Whether Paris Baguette's conduct was willful, knowing or reckless; and

(c)    Whether Plaintiff and the other members of the class are entitled to statutory damages, punitive damages, costs, or attorneys fees for Paris Baguette's acts and conduct.

14.    Plaintiff will fairly and adequately represent the class members.  Plaintiff has no interests that conflict with the interests of other class members.  Plaintiff has retained counsel competent and experienced in the prosecution of class action litigation.

15.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## FACTS

**PLAINTIFF'S TRANSACTION**

16.    On September 19, 2013, Plaintiff ate at Paris Baguette's 6 West 32nd Street, New York, New York location, paid for her meal with a credit card, and received an electronically printed receipt displaying the expiration date.

17.    At the time of Plaintiff's transaction described above, Paris Baguette routinely gave receipts to its customers at the point of sale at its various retail stores which displayed the

expiration dates of the customers' credit and/or debit cards, in violation of the requirements of FACTA.

**IDENTITY THEFT IS A HUGE RECOGNIZED PROBLEM**

18.     The purpose of FACTA is to prevent identity theft.   The Federal Trade Commission estimates that over 9 million persons each year have their identity assumed by criminals for financial gain, causing losses in excess of $50 billion.

19.     One common modus operandi of identity thieves is to obtain Card receipts that are lost or discarded, or through theft, and use the information on them to engage commit fraud and theft.   Identity thieves who do this are known as "carders" and "dumpster divers."   This modus operandi is more common than the use of sophisticated electronic means to obtain the information.   Robin Sidel, "Identity Theft—Unplugged Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way," WALL STREET JOURNAL, Oct. 5, 2006, p. Bl.

20.     In early 2003, the payment card industry and Congress announced that they were working together to combat identity theft.   A critical part of this joint effort was the truncation of personal data from Card receipts presented to consumers at the point of sale.

21.     On March 6, 2003, Visa CEO Carl Pascarella held a joint press conference with Senators Judd Gregg, Jon Corzine, Patrick Leahy, and Dianne Feinstein to announce Visa USA's new account truncation program to protect consumers from identity theft.   At the press conference, Mr. Pascarella stated:

> Today, I am proud to announce an additional measure to combat identity theft and protect consumers.   Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts.   The card's expiration date will be eliminated from receipts altogether . . . .

The first phase of this new policy goes into effect July 1, 2003 for all new terminals.  I would like to add, however, that even before this policy goes into effect, many merchants have already voluntarily begun truncating receipts, thanks to the groundwork that we began together several years ago.

\*   \*   \*

Visa USA is pleased to be working with Senator Feinstein, and the other senators here today in the fight to protect consumers from identity theft.  After all, we share the same goals.

22.     On July 9, 2003, L. Richard Fischer, presented a written statement to the United States House of Representatives Committee on Financial Services on behalf of Visa USA, Inc., supporting the truncation requirements of what ultimately became FACTA.  Therein, Mr. Fischer stated:

> Although Visa generally believes that the details of preventing identity theft should be left to financial institutions that are best suited to address ever evolving fraud techniques, Title II could provide important benefits to consumers and financial institutions alike by establishing workable identity theft provisions and ensuring that these provisions benefit from national uniformity.  For example, Section 203 of Title II would prohibit any merchant or other entity that accepts credit and debit cards from printing more than the last four digits of the card account number or the expiration date upon receipts provided to cardholders at the point of sale.

23.     Merchants generally will not honor a Card in a card-not-present transaction (telephone, internet or fax) without both the correct expiration date and the card number.  The expiration date is almost always necessary for misuse of a Card.

24.     Identity thieves commonly obtain Card receipts that are lost or discarded, or through theft, and use the information to engage in unauthorized credit or debit transactions.

25.     Also, sophisticated identity thieves can find a Card number using the expiration date and the last five digits of the card number, or more easily obtain sufficient information to use another's credit card or debit card.

**CONGRESS ACTED TO STEM CREDIT CARD FRAUD IN 2003**

26.    The Fair and Accurate Credit Transaction Act was passed by Congress on November 22, 2003, and signed by President Bush on December 4, 2003, to assist in the prevention of identity theft and credit and debit card fraud.  The statute makes it more difficult for identity thieves to obtain consumers' Card information by reducing the amount of information identity thieves could retrieve from found or stolen Card receipts.  In his statement during the signing of the bill, President Bush declared that:

> This bill also confronts the problem of identity theft.  A growing number of Americans are victimized by criminals who assume their identities and cause havoc in their financial affairs.  With this legislation, the Federal Government is protecting our citizens by taking the offensive against identity theft.

27.    The main provision of FACTA (codified as 15 U.S.C. §1681c(g) of the Fair Credit Reporting Act) provides that:

> [N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

28.    FACTA details the liability for willful noncompliance:

> §1681n.  Civil liability for willful noncompliance
>
> (a) In general, any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of –
>
> > (1)
> >
> > > (A) Any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or
> >
> > *        *        *
> >
> > (2)    such amount of punitive damages as the court may allow; and

> (3)    in the case of any successful action to enforce any liability under this section, the costs of this action together with reasonable attorneys fees as determined by the court …

**THERE WAS AN EXTENSIVELY ADVERTISED
THREE YEAR PHASE-IN PERIOD**

29.    FACTA's requirement that merchants not print credit and debit card expiration dates was phased in over a three year period, until December 4, 2006.  During the three year phase-in period, there was extensive publicity regarding the law's requirements.

30.    In the January 2005 edition of the Massachusetts Restaurant Association Newsletter, an article appeared apprising Association members that both Visa and MasterCard require truncation of the entire expiration date and all but the last four digits of the cardholder account number.

31.    The April 2005 edition of the FOOD INDUSTRY ADVISOR, the newsletter for the Pennsylvania Food Merchants Association and Pennsylvania Convenience Store Council, included an article regarding the requirements of credit card truncation under FACTA which included the following language:

> [A]ccording to the FACT Act, "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction. . . . ."

This same article appeared in the April 2005 Edition of the NACS Magazine, published by the National Association of Convenience Stores.

32.    The Independent Insurance Agents & Brokers of America circulated a report to its members dated June 5, 2010 titled:  "Overview of the Fair Credit Reporting Act, The Fair and Accurate Credit Transactions Act, and the Drivers Privacy Protection Act."  In relevant part, this publication stated:

A-201

Under the FACTA Act, businesses and others accepting credit or debit cards for payment may not print more than the last five digits of the card number nor may they print the expiration date upon any receipt provided to the cardholder at the point of sale.

33.    The Office of Thrift Supervision, United States Department of Treasury ("OTS"), is responsible, *inter alia*, for monitoring financial institution compliance with FACTA.  Toward this end, the OTS publishes an Examination Handbook ("Handbook") which assists OTS field personnel when they perform an examination, or compliance audit, of a given financial institution.  The April 2011 Edition of the Handbook states, in relevant part:

**Truncation of Credit and Debit Card Account Numbers**

Ensure that electronically generated receipts from ATM and POS terminals or other machines do not contain more than the last five digits of the card number and do not contain the expiration dates.

34.    Many restaurant and retail trade associations apprised their merchant members that FACTA requires truncation of the entire expiration date and all but the last five digits of the cardholder account number.

35.    For example, the cover-article in the Winter 2007 edition of Texas Business Today includes an extensive discussion of the truncation requirements of FACTA.

**CONGRESS WAS FORCED TO CLARIFY THE FACTA PROHIBITIONS IN 2008**

36.    Merchants, however, claimed to have misunderstood FACTA, despite it being not ambiguous.  They had truncated the credit card number, but had printed the expiration date.

37.    On June 3, 2008, in the face of an avalanche of class action lawsuits against such noncomplying merchants, House Bill HR 4008 (known as the Credit and Debit Card Receipt Clarification Act of 2007, Pub.L. 110-241, §3(a), June 3, 2008, 122 Stat. 1566) (the "Clarification Act") (15 U.S.C. §1681n(d)), was passed by Congress and signed into law by the President.

38.     The Clarification Act did not change FACTA, 15 U.S.C. 15 U.S.C. §1681c(g).

39.     The Clarification Act provided amnesty to those merchants that had printed expiration dates on electronically printed receipts prior to June 3, 2008.  The Clarification Act was essentially a "get out of jail free card" for noncomplying merchants.

40.     But, the Clarification Act does not protect those merchants that had printed expiration dates on credit/debit card receipts after June 4, 2008.

41.     The Clarification Act also made clear that partial compliance by redacting the credit or debit card number, but not the expiration date, failed to comply with FACTA.

42.     Congress, although faced with numerous class actions seeking statutory penalties from FACTA violating merchants, did not change the penalty provisions.  Thus, Congress made clear that it expected consumers to enforce FACTA by filing class actions.

43.     Indeed, since the statutory penalty for willful non-compliance is only $100 to $1,000, class actions are the only viable means for private enforcement.

44.     The passage of the Clarification Act was championed by the pro-business lobbying organization Chamber of Commerce and added to the extensive amount of publicity regarding the requirements of FACTA.

45.     In May 2007, the Federal Trade Commission published a widely circulated and extensively publicized FTC Business Alert which reiterated the truncation requirements of FACTA.

46.     Since approximately 2007, The Department of Justice ("DOJ") has intervened on behalf of Plaintiffs in private FACTA class actions.  In *Papazian v. Burberry Limited*, 07-cv-1479, (C.D. Cal.), for example, the DOJ filed a brief which, among other things, explained the purpose of FACTA and why not printing expiration dates is so important:

Congress sought with FACTA to "assist [] consumers in preventing identity theft and for mitigating its consequences once the crime has occurred." *See* 108 H. Rep. No. 263 (2003).  The goal of the provision that became §1681c(g) was "to limit the opportunities for identity thieves to 'pick off' key card account information."  S. Rep. No. 108-166 (2003).  FACTA followed enactment of laws in at least 20 states with provisions similar to §1681c(g) that prohibited printing the full card number as well as the expiration date on receipts. . . .

Defendant claims that expiration dates accompanied only by truncated card numbers need no protection from would-be fraudsters.  Defendant submitted with its opposition to Plaintiff's motion the declaration of a former MasterCard employee who stated that a full expiration date and a truncated card number cannot be used to make fraudulent transactions . . .  Defendant also contends, based on the same declaration, that card companies routinely complete transactions with incorrect expiration dates so long as the expiration date provided to the merchant is in the future . . .

Defendant's argument that a thief would not be able to make fraudulent charges using *only* a truncated card number and the full expiration date misses the point.  Thieves might piece together (or 'pick-off,' in the words of Congress) different bits of information from different sources.  The expiration date of a customer's credit/debit card, until recently printed on Defendant's receipts, is one of several pieces of information that can make it easier for criminals to rack up fraudulent charges.  These dates are worth protecting even when not accompanied by other important financial information.  (Internal footnote omitted).

Congress' actions comport with common experience, testimony provided in support of the legislation, and the instructions credit card companies give to merchants . . . .

47.    Now, over five years after the passage of the Clarification Act, and ten years after

the passage of FACTA, merchants still fail to comply.  By failing to comply Paris Baguette has

deprived consumers of the protections that the statute was designed to confer, and exposes

cardholders to increased risk of identity theft.


**PARIS BAGUETTE HAD ACTUAL KNOWLEDGE OF FACTA**

48.    Paris Baguette had actual knowledge of FACTA's truncation requirements

specifically including the requirement that Card numbers be suppressed and that expiration dates

not be printed on receipts presented to consumers at the point of sale.  Paris Baguette's partial

compliance with FACTA when it redacted all but the last few digits of the Card number is proof of that knowledge.

### Paris Baguette Learned of FACTA from Its Card Issuers

49.     VISA, MasterCard, the PCI Security Standards Council—a consortium founded by VISA, MasterCard, American Express, and JCB—companies that sell cash registers and other devices for the processing of credit card and debit card payments, and other entities directly informed Paris Baguette about FACTA, including its specific requirements concerning the redaction of credit card and debit card numbers and prohibition of the printing of expiration dates.

50.     Paris Baguette accepts Discover, American Express, Visa, and MasterCard branded credit and debit cards.

51.     Upon information and belief, during all times relevant to this Complaint, Paris Baguette had contracts with their Card issuers, including VISA, MasterCard, American Express, and others, and those contracts prohibited Paris Baguette from printing Card expiration dates.

52.     Visa USA's contracts with the American merchants which accept Visa brand Cards are defined in part in a manual entitled CARD ACCEPTANCE GUIDELINES FOR VISA MERCHANTS ("Visa Rules").  The latest edition is the 2011 edition.

> *The Card Acceptance Guidelines for Visa Merchants* is a comprehensive manual for all businesses that accept Visa transactions in the card-present and/or card absent environment. The purpose of this guide is to provide merchants and their back-office sales staff with accurate, up-to-date information and best practices to help merchants process Visa transactions, understand Visa products and rules, and protect cardholder data while minimizing the risk of loss from fraud.

53.     Under the heading "Visa Rules," (page 11), it states that "Merchants must follow basic card acceptance rules for all Visa transactions."

54.     Visa Rules (page 13) prohibits the printing of the expiration date on Card receipts:

**Suppressed Account Number and Expiration Date**

Ensure that the Visa account number is suppressed in accordance with Visa rules and local laws and regulations.  Visa recommends that all but the last four digits of the account number be suppressed on the cardholder copy of the transaction receipt, unless otherwise required under local law.

**The expiration date should not appear at all on the cardholder copy of the transaction receipt.**  Existing point-of-sale terminals must comply with these requirements.  To ensure that your point-of-sale terminals are properly set up for account number and expiration date suppression, contact your acquirer.  (Emphasis added.)

55.     The truncation standards set forth in the Visa Rules are part of the contract between Visa and the merchants which accept its Cards, here, Paris Baguette.

56.     Similarly, MasterCard's agreements with the American merchants which accept MasterCard brand credit or debit cards are defined in part in a manual entitled SECURITY RULES AND PROCEDURES, Merchant Edition ("MasterCard Rules").  The latest edition is dated 30 August 2013.

57.     Under the heading "Customer Obligations, 1.1 Compliance with the Standards," (page 1-1), it states that "This manual contains Standards.  Each Customer must comply fully with these Standards."

58.     MasterCard Rules (page 3-8) prohibits the printing of the expiration date on credit/debit card receipts:

**3.11.4  Primary Account Number Truncation and Expiration Date Omission**

The Cardholder and Merchant receipts generated by all electronic POS Terminals, whether attended or unattended, cash disbursement receipts generated by electronic POS Terminals at financial institutions, and each printed ATM Terminal receipt **must omit the Card expiration date**.  In addition, the Cardholder receipt generated by all electronic POS Terminals, whether attended or unattended, and each printed ATM Terminal receipt must reflect only the last four (4) digits of the PAN.  All preceding digits of the PAN must be replaced with fill characters, such as "X," "*," or "#," that are neither blank spaces nor numeric characters.  (Emphasis added.)

59.     The truncation standards set forth in the MasterCard Rules are part of the contract between MasterCard and the merchants which accept its debit and/or credit cards, here, Paris Baguette.

60.     Prior to the transaction at issue Paris Baguette:

  a. Received periodic communications from credit card issuers advising them to not print Card expiration dates;

  b. Received monthly statements from its merchant bank (or other similar entity that performed credit and debit card payment clearing services for Paris Baguette) which apprised Paris Baguette of its obligation to not print Card expiration dates;

  c. Received written information from its POS (Point of Sale) provider(s) apprising Paris Baguette to not print Card expiration dates; and,

  **d.** Received information from trade associations and/or other similar entities apprising Paris Baguette of its obligation to not print Card expiration dates.

**Not To Print Expiration Date Was So Obvious That It Should Have Been Known**

61.     Proof of Paris Baguette's knowledge of the FACTA requirements is evidenced by its change to the Card receipts to remove all but the last four digits of the Card number.

62.     FACTA (15 U.S.C. §1681c(g) of the Fair Credit Reporting Act) provides that:

[N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

63.     The entire FACTA prohibition consists of only 45 words and is pellucid.  Of those 45 words, Paris Baguette complied with all but a middle four words—"or the expiration date."

64.     Paris Baguette's complying with the first 26 words and the last 15 words, while printing the expiration date—the middle four words—was objectively unreasonable.

65.     Paris Baguette's failure to suppress the expiration date was reckless because it was an action entailing "an unjustifiably high risk of harm that is either known **or so obvious that it should have been known**."[1]

66.     Paris Baguette should, therefore be held civilly liable.[2]

**Paris Baguette Declined Insurance Coverage for FACTA Violations**

67.     On November 26, 2013, counsel for Paris Baguette's insurance carrier, Leading Insurance Services, Inc., notified Plaintiff's counsel that it was denying coverage to Paris Baguette because, among other things, the insurance policy specifically excludes violations of the Fair and Accurate Credit Transactions Act.

68.     Commercial insurance coverage is negotiated for and bound only by the signature of senior management and the specifics of the coverage are closely monitored.

69.     In addition, the exclusions from an insurance policy can often be added back in by riders—at additional cost.  That is part of the negotiation.

70.     Paris Baguette's refusal to insure for a liability that it was aware of—FACTA— was reckless.

---

[1]   *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 68 (2007) (citation omitted) (emphasis added).

[2]   *Id.* at 68 n.18 ("Unlike civil recklessness, criminal recklessness also requires subjective knowledge on the part of the offender."  (Citation omitted)).

**BOTH THE CARD NUMBER AND THE EXPIATION DATE
MUST BE SUPPRESSED**

71. Congress dealt with Card accepting merchants' failure to comply with FACTA in 2008. After thousands of merchants had been sued in class actions for their failure to suppress BOTH the card number and expiration date, Congress merely gave those merchants more time to comply. Congress did not accede to the merchant's demands that it remove the requirement that both numbers be suppressed.

72. Numerous sources of information detailed above further informed Paris Baguette of its need to suppress BOTH the Card number and expiration date.

73. Paris Baguette demonstrated actual knowledge of FACTA when it partially complied with the statute by suppressing all but the last few digits of the Card number.

74. Paris Baguette did not suppress the Card's expiration date.

75. All three Courts of Appeal that have decided FACTA cases have done so based on that defendant's explanation detailing why its interpretation of FACTA was objectively reasonable.[3]

---

[3] See *Hammer v. Sam's East, Inc.*, No. 12-3724, 2014 U.S. App. LEXIS 10452, at *21-22 (8th Cir. June 5, 2014) ("Thus, even when a court disagrees with a party's interpretation of FACTA, it may not impose liability unless the party has interpreted the statute in an objectively unreasonable manner." citing *Safeco,* 551 U.S. at 69 (concluding that Safeco's violation was not reckless because its "reading of the statute, albeit erroneous, was not objectively unreasonable")); *Van Straaten v. Shell Oil Prods. Co. LLC*, 678 F.3d 486, 489 (7th Cir. 2012) (". . . the fact that the [middle] four digits [of the primary account number] Shell exposed on the receipt created no greater risk for its customers than printing the last four digits of the primary account number means that Shell's decision cannot be called 'objectively unreasonable.'"); *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 377 (3rd Cir. 2012) (printing the month of a credit card's expiration date, but not the year is not a willful violation, even though §1681c(g) prohibits printing any portion of a card's expiration date because the defendant's interpretation of the statute was not "objectively unreasonable").

76.    Paris Baguette has provided no objectively reasonable explanation of why it failed to suppress the printing of the expiration date.  Paris Baguette's printing of the expiration date was objectively unreasonable and reckless and, therefore, was willful.

**COUNT I**

**VIOLATION OF FACTA**

77.    Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

78.    Paris Baguette accepts credit cards and debit cards in the course of transacting business with persons such as Plaintiff and the other class members.  In transacting such business, Paris Baguette uses cash registers or other machines or devices that print receipts electronically for credit card and debit card transactions.

79.    After June 3, 2008, the deadline for compliance as extended by the Clarification Act, Paris Baguette, at the point of sale or transaction, provided Plaintiff and the other class members with electronically printed receipts, each of which included the credit or debit card expiration date.

80.    Paris Baguette knowingly or recklessly printed the Card expiration dates on the Card receipts.

**WHEREFORE**, Plaintiff requests the Court to enter judgment in favor of Plaintiff and the class members and against Paris Baguette jointly and severally, as follows:

a.  Statutory damages of $100 to $1,000 per violation;

b.  Attorneys fees, litigation expenses, and costs;

c.  Such other and further relief as the Court may deem proper, including punitive damages.

A-210

Dated: New York, New York
       July 14, 2014

**FRANK & BIANCO LLP**

By: ____/s/_____
Marvin L. Frank (MF1436)
Bridget V. Hamill (BH0207)
275 Madison Avenue, Suite 801
New York, New York 10016
(212) 682-1818 Telephone
(212) 682-1892 Facsimile
mfrank@frankandbianco.com
bhamill@frankandbianco.com

**NABLI & ASSOCIATES, P.C.**
60 East 42nd Street, Suite 1101
New York, New York 10165
(212) 808-0716 Telephone
(212) 808-0719 Facsimile
Khaled (Jim) El Nabli
Jim_ElNabli@NabliLaw.com
Joseph H. Lilly JoeLilly@att.net
Alan J. Harris AlanHarrisEsq@aol.com
Peter Y. Lee Peter.Lee@LeeAdvocates.Com

*Counsel for Plaintiff and the Class*

A-211

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------- x
DEVORAH CRUPAR-WEINMANN,              :
individually and on behalf of all    :
others similarly situated,           :
                                     :
                Plaintiff,           :        13-cv-7013 (JSR)
                                     :
        -v-                          :
                                     :        MEMORANDUM ORDER
PARIS BAGUETTE AMERICA, INC. d/b/a    :
Paris Baguette,                      :
                                     :
                Defendant.           :
----------------------------------- x

JED S. RAKOFF, U.S.D.J.

     Plaintiff Devorah Crupar-Weinmann brought this action,

individually and on behalf of those similarly situated, against

defendant Paris Baguette America, Inc. ("Paris Baguette"),

alleging willful violation of the Fair and Accurate Credit

Transactions Act ("FACTA") of 2003, Pub. L. No. 108-159, 117

Stat. 1952 (codified as amended in 15 U.S.C. § 1681c(g)), which

amended the Fair Credit Reporting Act ("FCRA"). In her Complaint,

plaintiff alleged that defendant knowingly or recklessly violated

FACTA by providing her with a receipt that contained the full

expiration date of her credit card.

     Defendant then moved to dismiss the Complaint under Federal

Rule of Civil Procedure 12(b)(6), primarily on the basis that the

Complaint failed to plead sufficient facts to plausibly show that

the defendant willfully violated FACTA. On January 15, 2014,

following full briefing and oral argument, the Court granted

1

defendant's motion to dismiss, but stayed the case until it had issued a written opinion explaining the reasons for its decision. *See* Order, Jan. 15, 2014 ("January 15 Order"), at 2. On June 29, 2014, the Court issued its Memorandum Order reaffirming and explaining the reasons for the January 15 Order and directed entry of final judgment dismissing plaintiff's Complaint with prejudice. *See* Memorandum Order, June 29, 2014 ("June 29 Memorandum Order"), at 2, 12.

Plaintiff, with leave of this Court, now moves for reconsideration of the Court's decision on two grounds — first, that the Court misconstrued the pleading standard required to sufficiently state a claim for a willful violation under FACTA, and second, that the Court erred in dismissing the Complaint with prejudice and in denying leave to plaintiff to file an amended complaint.

A motion for reconsideration may be granted if the moving party can point to "data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Nat'l Immigration Project of the Nat'l Lawyers Guild v. U.S. Dep't of Homeland Sec*., 11-cv-3235, 2013 WL 1947362, at *2 (S.D.N.Y. May 7, 2013) (internal quotation marks omitted). Typically, a court will deny such a motion "unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear

error or prevent a manifest injustice." *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (internal quotation marks omitted).

After fully considering the parties' briefing, the Court denies plaintiff's motion for reconsideration in full for the following reasons.

First, the Court elaborates on why the plaintiff failed to adequately plead that defendant acted recklessly in violating the requirements of FACTA. As the Supreme Court made clear in *Safeco Insurance Company of America v. Burr*, "a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." 551 U.S. 47, 69 (2007). Notwithstanding plaintiff's attempts to import a lower standard of mere negligence, the Court finds that the plaintiff has pleaded no facts that make it plausible that defendant was anything other than "merely careless" in not complying with the statute. As the Court explained in its June 29 Memorandum Order, the allegations in the Complaint show, at best, that defendant knew of the statute and acted carelessly in not complying with it. *See* June 29 Memorandum Order, at 8-10.

3

**A-214**

As for plaintiff's second argument, the amendments that plaintiff proposes to her original Complaint illustrate exactly why this Court chose to dismiss her claim with prejudice instead of granting leave to file an amended complaint. The new allegations included in the proposed amended complaint either are merely conclusory or do not plausibly suggest that defendant acted more than negligently in not complying with FACTA's requirements. For example, the allegations about the number of words with which defendant complied simply illustrate yet again that defendant at most acted merely carelessly in its reading of the statute. *See* Memorandum of Law in Support of Plaintiff's Motion for Reconsideration of the Court's June 30, 2014 Order and Leave to File the Proposed First Amended Complaint, July 15, 2014, Ex. A ("Proposed Amended Complaint"), ¶¶ 63–64; *see also Safeco*, 551 U.S. at 69. Additionally, the allegation in paragraph 65 of the proposed amended complaint — that "Paris Baguette's failure to suppress the expiration date was reckless because it was an action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should have been [sic] known'" — is merely a legal conclusion and therefore must be disregarded. Proposed Amended Complaint, ¶ 65 (quoting *Safeco*, 551 U.S. at 68); *see also, e.g., Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Retirement Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013).

4

Finally, as discussed in the Court's June 29 Memorandum Order,
the allegations relating to insurance coverage do nothing more
than show that defendant knew of FACTA's requirements, without
demonstrating reckless or knowing violation of those
requirements. *See* June 29 Memorandum Order, at 11-12. No
conclusory allegation to the contrary — particular one that lacks
any causal connection to the plaintiff's injury — will suffice to
plausibly support an allegation of recklessness. *See* Proposed
Amended Complaint, ¶ 70. Without any further explanation as to
how defendant acted more than carelessly, any attempt by
plaintiff to amend her complaint would be futile. *See Lucente v.
Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

Accordingly, the Court hereby denies plaintiff's motion for
reconsideration. The Clerk of the Court is hereby directed to
close document number 27 in the docket of this case.

SO ORDERED.

Dated:  New York, New York
        September 2 , 2014

JED S. RAKOFF, U.S.D.J.

5

A-216

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

**DEVORAH CRUPAR-WEINMANN**,
Individually and on behalf of All Others Similarly
Situated,

                    Plaintiff,

        v.

**PARIS BAGUETTE AMERICA, INC. d/b/a
PARIS BAGUETTE**,

                    Defendant.

---

**Civil Action No. 1:13-cv-07013-JSR**

**ECF Case**

**CLASS ACTION**

**NOTICE OF APPEAL**

Notice is hereby given that Devorah Crupar-Weinmann, Plaintiff in the above-named case, hereby appeals to the United States Court of Appeals for the Second Circuit from the Order granting Defendant Paris Baguette America, Inc. d/b/a Paris Baguette's Motion to Dismiss Plaintiff's Complaint (Docket No. 24) entered in this action on June 30, 2014, and the Final Judgment (Docket No. 25) entered in this action on June 30, 2014, and from the Memorandum and Order denying Plaintiff's Motion for Reconsideration (Docket No. 31), entered in this action on September 3, 2014.

DATED: October 1, 2014                    Respectfully submitted,


                                          **FRANK & BIANCO LLP**

                                          By: /s/ Marvin L. Frank
                                          Marvin L. Frank (MF1436)
                                          Bridget V. Hamill (BH0207)
                                          **FRANK & BIANCO LLP**
                                          275 Madison Avenue, Suite 705
                                          New York, New York 10016
                                          Telephone: 212-628-1853
                                          Facsimile: 212-682-1892
                                          mfrank@frankandbianco.com
                                          bhamill@frankandbianco.com


                                          Khaled (Jim) El Nabli
                                          Joseph H. Lilly
                                          Alan J. Harris
                                          Peter Y. Lee
                                          **NABLI & ASSOCIATES, P.C.**
                                          60 East 42nd Street, Suite 1101
                                          New York, New York 10165
                                          (212) 808-0716 Telephone
                                          (212) 808-0719 Facsimile
                                          Jim_ElNabli@NabliLaw.com
                                          JoeLilly@att.net
                                          AlanHarrisEsq@aol.com
                                          Peter.Lee@LeeAdvocates.Com

                                          *Plaintiffs' Co-Lead Counsel*

A-218

**CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2014, I electronically filed the foregoing document electronically using the CM/ECF System.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's electronic filing system.


_/s/_ Marvin L. Frank_____
 Marvin L. Frank