

275 MADISON AVENUE
SUITE 705
NEW YORK, NY 10016
212 682 1853
212 682 1892   FAX
www.frankllp.com

April 17, 2017

Catherine O'Hagan Wolfe
Clerk, U.S. Court of Appeals for the Second Circuit
Thurgood Marshall U.S. Courthouse
New York, NY 10007

    Re:   <u>Cruper-Weinmann v. Paris Baguette Am., Inc.</u>, No. 14-3709-cv

We submit this letter on behalf of plaintiff-appellant, pursuant to the Court's Order of March 28, 2017. The District Court erred when it determined that plaintiff-appellant lacks Article III standing to sue defendant-appellee for its willful violations of the Fair and Accurate Credit Transactions Act of 2003 ("FACTA").[1]

**<u>Introduction</u>**

Congress passed FACTA as a means of protecting consumers like plaintiff-appellant against <u>any</u> increase in risk of credit card fraud or identity theft. FACTA promotes this important goal through two simple rules which are as straightforward as they are effective at protecting consumers: card-accepting merchants like defendant-appellee must redact from each receipt the card expiration date as well as all but the last five digits of the card number. 15 U.S.C. § 1681c(g)(1).

Congress's determination that <u>all</u> consumers enjoy a concrete right to have their receipts redacted in this manner was not the result of ignorance or whimsy. Rather, based on significant fact-finding Congress knew that (1) the average consumer tends to automatically throw away card receipts immediately post-purchase, and (2) card numbers and expiration dates are like gold in the hands of fraudsters. Accordingly, Congress wisely chose to shift from consumers to merchants the burden of protecting the very information that thieves are most eager to obtain. Like other consumer protection laws, Congress intended for FACTA to

---

[1]   Pub. L. No. 108-59, 117 Stat. 1952, *codified as amended at* 15 U.S.C. § 1681c(g).

be enforced by consumers like plaintiff-appellant, who file class-action lawsuits like this one against willful violators like defendant-appellee.

Nothing in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), permits a court to second-guess Congress's wisdom in enacting FACTA, which grants consumers a procedural right to protect their concrete interest in not being subjected to increased risk of identity theft, a danger affecting almost every American. To the contrary, *Spokeo*, as this Court has explained at length, instructs courts to avoid such a result. *See Strubel v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016) ("[W]here Congress confers a procedural right in order to protect a concrete interest, a violation of the procedure may demonstrate a sufficient 'risk of real harm' to the underlying interest to establish concrete injury without 'need [to] allege any <u>additional</u> harm beyond the one Congress has identified.'" (quoting *Spokeo*, 136 S. Ct. at 1549 (emphasis in original))).

Respectfully, the District Court misapplied *Spokeo* and *Strubel*. In doing so, the lower court impermissibly second-guessed Congress's wisdom when it held that plaintiff-appellant lacks standing to sue defendant-appellee for its chronic FACTA violations against herself and countless consumers. This ruling, if affirmed, would write FACTA out of the statute books, eviscerating its protective scheme.

**<u>Congress Found That The Procedural Violations Here Cause Concrete Harm</u>**

FACTA is "a serious congressional effort to combat" a "serious problem." *Redman v. Radioshack Corp.*, 768 F.3d 622, 639 (7th Cir. 2014) (Posner, J.) (discussing FACTA's statutory framework). As President George W. Bush made clear when he signed FACTA into law, its purpose is to "protect individual privacy" by shifting from consumers to merchants the burden of ensuring that "[s]lips of paper that most people throw away [do] not hold the key to their savings and financial secrets." Statement by President George W. Bush Upon Signing H.R. 2622, 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003).

When Congress passed FACTA, it was known that criminals specializing in credit card fraud covet <u>both</u> the number <u>and</u> expiration date for individual credit cards. Experts, including members of the credit card industry, (1) told Congress that both of these types of data are particularly dangerous in the hands of sophisticated criminals, and (2) recommended that expiration dates not be printed

on credit card receipts. *See The History, Purpose, and Function of the Fair Credit Reporting Act and Provisions Subject to the Expiring Preemption Provision Specifically; The Growing Problem of Identity Theft; Affiliate Sharing Practices; Accuracy of Credit Report Information; Consumer Awareness and Understanding the Credit Granting Process and Addressing Measures to Enhance the Act: Hearing Before the S. Comm. on Banking, Hous. & Urban Affairs*, 108th Cong., S. Hrg. 108-579 (2003) ("*FACTA Hearing*") (Prepared Statement, Michael D. Cunningham, Senior Vice President, Credit & Fraud Operations, Chase Cardmember Services); *see also FACTA Hearing* (Prepared Statement, Linda Foley, Executive Director, Identity Theft Resource Center) (recommending that merchants be required to truncate entire expiration date on credit card receipts).[2]

As the U.S. Department of Justice ("DOJ") noted in a 2007 brief explaining the purpose of FACTA and the necessity of merchant compliance with both of its redaction requirements:

> The goal of the provision that became § 1681c(g) was "to limit the opportunities for identity thieves to 'pick off' key card account information." S. Rep. No. 108-166 (2003). FACTA followed enactment of laws in at least 20 states with provisions similar to § 1681c(g) that prohibited printing the full card number as well as the expiration date on receipts. . . .
>
> . . . .
>
> Defendant's argument that a thief would not be able to make fraudulent charges using *only* a truncated card number and the full expiration date misses the point. Thieves might piece together (or 'pick-off,' in the words of Congress) different bits of information from different sources. The expiration date of a customer's credit/debit card, until recently printed on Defendant's receipts, is one of several pieces of information that can make it easier for criminals to rack up fraudulent charges. These dates are worth protecting even when not accompanied by other important financial information. . . . Congress' actions comport with common experience, testimony provided in support of the legislation, and the instructions credit card companies give to merchants. . . .

---

[2] A transcript of *FACTA Hearing* may be viewed at: https://www.gpo.gov/fdsys/pkg/CHRG-108shrg95254/pdf/CHRG-108shrg95254.pdf (last visited April 17, 2017).

Brief in Support of Statute by United States of America as Intervenor, *Papazian v. Burberry Ltd.*, No. 2:07-cv-01479-GPS-RZ (C.D. Cal. July 24, 2007) (underlined emphasis added), *filed as* Exhibit A to Ex Parte Application to Intervene, ECF No. 24.

Simply put, "expiration dates are a gold mine for identity thieves." *Facts on FACTA, the Fair and Accurate Credit Transactions Act*, Privacy Rights Clearinghouse (Aug. 2004), *available at* http://www.tppa.com/wp-content/uploads/factactfacts.pdf (last visited April 17, 2017). Nor have any of the harms caused by printing card expiration dates on receipts abated in the years since FACTA was first enacted. *See Redman*, 768 F.3d at 626–27 (citing Don Coker, *Credit Card Expiration Dates and FACTA*, HGExperts.com, http://www.hgexperts.com/article.asp?id=6665 ("Unfortunately, and despite the fact that FACTA was widely discussed before and after its passage, many merchants simply have ignored [both truncation] aspects of FACTA, apparently based upon their belief that expiration dates are unimportant to a criminal. They are wrong. Credit card expiration dates are very important and useful to criminals.") (listing more than a dozen ways that criminals can use card expiration dates to the detriment of consumers)).

Indeed, even as Judge Rakoff was considering the underlying motion to dismiss here, computer scientists in the United Kingdom released a study whose results demonstrate the concrete risk that publication of card expiration dates creates. *See* Mohammed Aamir Ali et al., *Does the Online Card Payment Landscape Unwittingly Facilitate Fraud?*, IEEE Security & Privacy (forthcoming 2017), *available at* http://eprint.ncl.ac.uk/file_store/production/230123/19180242-D02E-47AC-BDB3-73C22D6E1FDB.pdf (last visited April 17, 2017). The study demonstrated how hackers can deduce consumers' credit card details with ease by systematically trying different combinations of cardholder data on hundreds of websites simultaneously. *See id.* at 1. Simply put, the study reveals that access to the card expiration date can mean the difference between "a quick and practical attack, and a tedious, close to impractical attack." *Id.* at 3

**Congress Intended For Defendant-Appellee To Be Held Liable For Violations**

Because Congress passed FACTA to protect a concrete interest common to all American consumers, any merchant that violates either of FACTA's redaction

requirements causes a concrete harm by wrongfully printing a consumer's private financial information on a card receipt. *See Wood v. J Choo USA, Inc.*, 201 F. Supp. 3d 1332, 1339 (S.D. Fla. 2016) ("Congress clearly intended to hold card merchants to the two separate truncation requirements imposed by FACTA, namely, the truncation of the card number and the card expiration date." (emphases added)).

Congress has twice investigated, and twice determined, that redaction of card expiration dates, specifically, is necessary to protect consumers against the scourge of credit card fraud and identity theft. *See* Credit and Debit Card Receipt Clarification Act of 2007 ("Clarification Act"), Pub. L. 110-241 §§ 2(a)(2), 3(a), 122 Stat. 1565, 1565–66; 15 U.S.C. § 1681n(a) (guaranteeing private right of action for individuals subjected to FACTA violations).

Any ruling that paves the way for a FACTA-violating merchant like defendant-appellee to escape liability would undermine *Spokeo*'s clear mandate of deference to Congress. *Spokeo* insists that it is Congress's power, not the Courts', "[']to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" 136 S. Ct. at 1549 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 580 (1992)); *see also Strubel*, 842 F.3d at 189 (Pursuant to *Spokeo*, "a court properly considers whether Congress conferred [a] procedural right in order to protect an individual's concrete interests."). Similarly, the District Court's ruling contradicts longstanding rules of statutory interpretation. The Supreme Court has stated time and again that "'[c]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.'" *DeKalb Cnty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 404 (2d Cir. 2016) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)).

Through FACTA and the Clarification Act, Congress made abundantly clear that all consumers have a right to receive card receipts stripped of certain sensitive data—as pertinent here, card expiration dates—that computer scientists have proven to be sufficient to enable tech-savvy criminals. It is not the judiciary's place to second-guess the wisdom of Congress's decision to require merchants to help protect consumers against the known risks of printing too much private financial information on card receipts. *Cf. Turner Broad. Sys., Inc. v. Fed. Commc'ns Comm'n*, 512 U.S. 622, 665–66 (1994) ("Congress is far better equipped than the judiciary to amass and evaluate the vast amounts of data bearing upon [consumer protection issues.]" (internal quotation marks and citation

omitted)).

### **Congress Intended For Consumers Like Plaintiff-Appellant To Bring Suit**

Just as Congress intended for merchants like defendant-appellee to be held liable for the FACTA violations that occurred here, so did it intend for consumers like plaintiff-appellee to file lawsuits just like this one.

Congress imbued FACTA with a robust "private attorney general" provision that empowers consumers like plaintiff-appellant to directly seek statutory damages from merchants that willfully violate either of FACTA's redaction requirements. *See* 15 U.S.C. § 1681n(a) ("<u>Any</u> person who willfully fails to comply with <u>any</u> requirement imposed under this subchapter with respect to <u>any</u> consumer is liable to that consumer [for actual <u>or</u> statutory damages.]" (emphases added)). As *Spokeo* teaches, Congress is expected "to identify intangible harms that meet minimum Article III requirements," and accordingly enact statutes that bestow upon private citizens substantive procedural rights that, when violated, automatically result in injuries in fact redressable via private litigation. *Spokeo*, 136 S. Ct. at 1549; *see In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 639 (3d Cir. 2017) ("*Horizon*") (Congress "created a private right of action to enforce the provisions of [the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.], and even allowed for statutory damages for willful violations—which clearly illustrates that Congress believed that the violation of FCRA causes a concrete harm to consumers.").[3]

Congress employs private attorney general clauses where "private litigation enables a level of compliance that would be impossible to achieve if enforcement were limited to the government." William B. Rubenstein, *On What A "Private Attorney General" Is—And Why It Matters*, 57 Vand. L. Rev. 2129, 2151 (2004) (internal quotation marks and citation omitted). "[S]tatutory damages may be imposed as a means to encourage private attorneys general to police . . . compliance [with consumer protection statutes] even where no actual damages exist." *Perrone v. Gen. Motors Acceptance Corp.*, 232 F.3d 433, 436–37 (5th Cir. 2000) ("Few if any [Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*] plaintiffs have proven or can prove actual damages." (internal quotation

---

[3] FACTA is part of the FCRA, and the damages provision discussed in *Horizon* is the same one that applies here. *See* 15 U.S.C. § 1681n(a).

marks and citation omitted)).

Congress cannot resolve certain high-priority problems—such as the risk of identity theft and credit card fraud—if it cannot incentivize private individuals to file suit over statutory violations as soon as they occur. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) (Consumer subjected to FCRA violations "did not accept compensation to put herself in the way of injury— though 'testers,' who do this in housing and employment litigation, usually are praised rather than vilified.") (citing, *inter alia*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374–75 (1982) (Article III standing for "tester plaintiff" in housing discrimination action)); *see also Spokeo*, 136 S. Ct. at 1553 (Thomas, J., concurring) ("A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right.") (citing, *inter alia*, *Havens Realty*).[4]

Thus, when Congress empowered consumers to seek statutory damages for violations of their FACTA rights, it properly "enlist[ed] the efforts" of consumers like plaintiff-appellant. *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 91 (2d Cir. 2008). Moreover, consumers like plaintiff-appellant are <u>expected</u> to file class actions against mass-scale violators like defendant-appellee as soon as they perceive that these violations are occurring. *See Redman*, 768 F.3d at 639 ("We are mindful that recipients of statutory damages are not being compensated for actual injury, but in effect are being paid bounties to assist in efforts to reduce identity theft. But identity theft is a serious problem, and FACTA is a serious congressional effort to combat it."); *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 718–19 (9th Cir. 2010) ("The actual harm that a willful violation of FACTA will inflict on a consumer will often be small or difficult to prove. . . . That actual loss is small and hard to quantify is why statutes such as th[is one] provide for modest damages without proof of injury. . . . Congress expressly created a statutory damages scheme that intended to compensate individuals for actual or potential damages resulting from FACTA violations, without requiring individuals to prove actual harm." (internal quotation marks and citation omitted)).[5]

---

[4] Importantly, this Court took care in *Strubel* to recognize the continued viability of *Havens Realty*. *See Strubel*, 842 F.3d at 190 n.8.

[5] Congress acts within its authority when, as with FACTA, it employs a flat-rule prohibition as a means of deterring conduct resulting in risk-based harm that is difficult to trace or quantify. *See, e.g.*, Section 16(b) of the Securities Exchange

Misapplying *Spokeo* so as to deny standing to plaintiff-appellant would not only undermine FACTA. It would also "jeopardize[] the breadth of many laws whose enforcement is likewise premised on suits by classes of persons whom the proscribed conduct has a tendency to injure, regardless of proof of consequential harms." Case Comment, *Spokeo, Inc. v. Robins*, 130 Harv. L. Rev. 437, 446 (2016) (listing as examples the Copyright Act of 1976, 17 U.S.C. § 504(a), -(c); the Credit Repair Organizations Act, 15 U.S.C. § 1679g(a); the Electronic Fund Transfer Act, 15 U.S.C. § 1693m(a); and the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227(b)(3)).

**<u>Plaintiff-Appellant Need Not Have Fallen Victim To A Crime</u>**

In the wake of *Spokeo*, mass-scale statutory violators like defendant-appellee have attempted to turn FACTA's statutory frameworks upside down. Denying that an increased risk is itself a concrete harm, they instead pretend that a consumer's statutory rights are concrete <u>only</u> if she suffers actual harm like credit card fraud or identity theft. These arguments, if ratified, would derogate Congressional intent, *Spokeo* and *Strubel*.

With FACTA, Congress concluded after careful consideration that the comparatively minor harm suffered by a consumer who catches a merchant's wrongdoing—and must herself ameliorate the merchant's failure to ensure her private financial information is not at risk—still qualifies as a concrete legal interest. *See Deschaaf v. Am. Valet & Limousine Inc.*, No. CV-16-03464-PHX-GMS, 2017 U.S. Dist. LEXIS 21241, at *10 (D. Ariz. Feb. 15, 2017) (denying merchant's motion to dismiss in FACTA case involving printing of card expiration dates on receipts) ("The inconvenience may be minor; but the additional inconvenience that a consumer must undertake in order to secure their own rights,

---

Act of 1934 (codified at 15 U.S.C. § 78p(b)) (per se ban on corporate insiders engaging in short-swing trading); *Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 422 (1972) (discussing Section 16(b)) ("[C]ourts have recognized that the only method Congress deemed effective to curb the evils of insider trading was a flat rule taking the profits out of a class of transactions in which the possibility of abuse was believed to be intolerably great. . . . In order to achieve its goals, Congress chose a relatively arbitrary rule capable of easy administration." (internal quotation marks and citation omitted)), *quoted in Donoghue v. Bulldog Investors Gen. P'ship*, 696 F.3d 170, 174 (2d Cir. 2012).

when a statute places that burden on others, is surely a concrete harm." (internal footnotes and citations omitted)).

As such, "courts have considered a FACTA violation to be concrete <u>as soon as</u> a company prints the offending receipt, as opposed to requiring a plaintiff actually suffer identity theft." *Wood*, 201 F. Supp. 3d at 1338 (emphasis added) (internal quotation marks and citations omitted); *cf. Horizon*, 846 F.3d at 640 n.23 ("[R]equiring proof of identity theft or some other tangible injury" would undermine Congress's clear intent in passing the FCRA, as forcing consumers "to wait for the threatened harm to materialize in order to sue would pose a standing problem of its own." (internal ellipsis, quotation marks, and citation omitted)); *Strubel*, 842 F.3d at 190–91 (A credit card issuer's "alleged violation of each [TILA] notice requirement, <u>by itself</u>, gives rise to a 'risk of real harm' to the consumer's concrete interest in the informed use of credit." (emphasis added) (quoting *Spokeo*, 136 S. Ct. at 1549)).

**The District Court Here Misapplied This Court's Post-*Spokeo* Precedent**

Respectfully, Judge Rakoff here unduly focused on the failure of the risk created by defendant-appellee to materialize into actual identity theft. In doing so, he failed to abide by the central holding of *Strubel*, this Court's controlling post-*Spokeo* precedent, which holds that a concrete injury occurs as soon as a merchant places a consumer at risk by failing to treat her in the precise manner required by statute.

Plaintiff-appellant filed this action shortly after receiving the unlawful receipt that first caused her to realize (1) that defendant-appellee had violated her FACTA rights every single time she had previously eaten at one of its locations, and (2) that countless other customers of defendant-appellee had been similarly wronged.[6] Judge Rakoff ultimately denied plaintiff-appellant standing after crediting defendant-appellee's argument that it is unlikely that a criminal ever viewed the receipt that prompted this litigation. *See* Dist. Ct. Op. at 9–13.[7]

---

[6] Plaintiff-appellant had previously made credit card purchases from defendant-appellee, but does not possess those receipts.

[7] References herein to "Dist. Ct. Op. at __" are to the slip version of the District Court's instant Opinion granting defendant-appellee's Rule 12(b)(1) motion to dismiss. This Opinion appears on the District Court's docket at ECF No. 58, and is

As is discussed in greater detail below, *Strubel*'s "core object" standard, *see* 842 F.3d at 190, means that defendant-appellee's argument about plaintiff-appellee's apparent lack of victimization was a red herring, and should have been rejected as such.

In *Strubel*, this Court held that a consumer protection statute's pointed, succinct "requirements do not operate in a vacuum"—"[r]ather, each serves to protect a consumer's concrete interest in avoiding" fraud or financial disadvantage, which is the "<u>core object</u> of" any such statute. 842 F.3d at 190 (emphasis added). A merchant's violation of such "core object" requirements "by itself[] gives rise to a 'risk of real harm' to the consumer's concrete interest" in the statute's protective scope, and affected consumers are "not required to allege 'any <u>additional</u> harm' to demonstrate the concrete injury necessary for standing." *Id.* at 190–91 (quoting *Spokeo*, 136 S. Ct. at 1549 (emphasis in original)).[8]

Crucially, *Strubel* forbids courts from misconstruing a consumer protection statute's core object in a way that would unjustifiably narrow its protective scope. Among the claims in *Strubel* were that the defendant, a credit card issuer, had violated TILA by failing to provide the plaintiff with statutorily required disclosures about disputing card purchases. *See* 842 F.3d at 190. However, the risk posed by these nondisclosures had never materialized into actual confusion for the *Strubel* plaintiff about how to dispute card purchases—she filed suit after making only a single purchase on the card, and she and her attorneys had previously filed numerous similar TILA actions against other card issuers. *See id.* at 185 & n.2.

---

reported at *Cruper-Weinmann v. Paris Baguette Am., Inc.*, No. 13 Civ. 7013 (JSR), 2017 U.S. Dist. LEXIS 13660 (S.D.N.Y. Jan. 30, 2017). At the time the Opinion was issued, the operative pleading was plaintiff-appellant's Amended Complaint, which appears on the District Court's docket at ECF No. 40. For this Court's convenience, the Amended Complaint is attached hereto as Exhibit A, and the District Court's Opinion, as Exhibit B.

[8] *See also Baur v. Veneman*, 352 F.3d 625, 635 (2d Cir. 2003) ("[T]here is a tight connection between the type of injury which [Plaintiff] alleges and the fundamental goals of the statute[] which [she] sues under—reinforcing [her] claim of cognizable injury.").

*Strubel* rejected the defendant's contention that the plaintiff lacked Article III standing because she was not deceived by the disclosure failures. Instead, the *Strubel* court found a concrete harm, because the defendant's conduct created a <u>risk</u> of deception. *See id.* at 189, 190–91. The *Strubel* court found this risk concrete, even though the plaintiff's encyclopedic knowledge of TILA rendered it unlikely that she would not have been aware of her rights. This Court recognized that the correct emphasis is on what risk the violator created the moment the violation occurred—not on how the consumer ameliorated the risk once created. *See id.* at 190–91 ("[A] creditor's alleged violation of each notice requirement, <u>by itself</u>, gives rise to a 'risk of real harm' to the consumer's concrete interest in the informed use of credit." (emphasis added) (quoting *Spokeo*, 136 S. Ct. at 1549)).

The District Court's approach here offends *Strubel* because it misconstrued FACTA in a way that would gratuitously minimize FACTA's protective scope. Judge Rakoff reasoned that the only consumers who can bring a FACTA suit are those who can prove that a wrongdoer "saw or accessed the receipt." Dist. Ct. Op. at 9. This reasoning implicitly assumes that the "core object" of FACTA is confined to compensating victims of credit card fraud and identity theft. However, it is well settled that the <u>true</u> core object of FACTA is to protect consumers against <u>any</u> risk of becoming the victim of such a crime, by "'limit[ing] the number of opportunities for identity thieves to "pick off" key card account information.'" *Altman v. White House Black Mkt., Inc.*, No. 1:15-cv-2451-SCJ, 2016 U.S. Dist. LEXIS 92761, at *19 n.9 (N.D. Ga. July 13, 2016) (quoting S. Rep. No. 108-166, at 13 (2003)). Thus, the "'risk of real harm' to [plaintiff-appellant's] concrete interest in" receiving a properly redacted receipt was realized each and every time defendant-appellee handed her a noncompliant receipt. *Strubel*, 842 F.3d at 190 (quoting *Spokeo*, 136 S. Ct. at 1549).

The District Court also misapplied *Strubel* by deeming plaintiff-appellant unqualified to hold defendant-appellee accountable for its mass-scale FACTA violations, simply because she was the first one to notice those violations. Just as in *Strubel*, plaintiff-appellant's concrete harm occurred as soon as defendant-appellee committed its procedural violations. The victim's avoidance of tangible harm through her own conduct does not retroactively excuse the increased risk caused by the merchant's procedural violations. *See* 842 F.3d at 190–91; *Deschaaf*, 2017 U.S. Dist. LEXIS 21241, at *10 ("Nor is th[e] harm [from printing the expiration date on the receipt] made harmless when, as here, the risk fails to materialize because no potential identify thief actually sees the receipt.").

The District Court devoted much of its decision to discussing the *Strubel* plaintiff's automatic-payment TILA claim, as to which this Court denied standing. *See* Dist. Ct. Op. at 11–13. The *Strubel* plaintiff, in addition to challenging the aforementioned nondisclosures of purchase-dispute information—for which this Court found a concrete harm—also alleged that the defendant had violated TILA by failing to provide information about ceasing automatic payments. *See* 842 F.3d at 191. Because the credit agreement at issue did not involve automatic payments, *Strubel* found no concrete harm, as the plaintiff's automatic-payments claim did not implicate her interest in TILA's core object. *See id.* at 191–92.

According to Judge Rakoff, *Strubel*'s treatment of that misguided TILA claim means that plaintiff-appellant is precluded from arguing that a violation of FACTA, in and of itself, gives rise to a concrete injury in fact. *See* Dist. Ct. Op. at 12. Judge Rakoff found it unacceptable that the standing test delineated in *Spokeo* and *Strubel* "would always be satisfied" whenever a merchant violated either of FACTA's redaction requirements. *Id.*

The flaw in Judge Rakoff's logic is that it wrongly assumes that Congress lacks the power and intelligence to craft a statute so narrowly tailored that the violation of its requirements necessarily causes concrete harm.

Through FACTA, Congress provided a straightforward, easily implemented solution to a discrete danger. *See* 15 U.S.C. § 1681c(g)(1). Each consumer who uses a credit card at the point of sale has a concrete interest in receiving an electronically printed receipt that is redacted in two—but <u>only</u> two—ways. *See Wood,* 201 F. Supp. 3d at 1339 ("Congress clearly intended to hold card merchants to the two separate truncation requirements imposed by FACTA, namely, the truncation of the card number and the card expiration date."). Because FACTA is so finely tuned, the violation of either of its requirements causes concrete harm as soon as it occurs. *See id.* at 1338.

In contrast, TILA's statutory framework encompasses a wide variety of credit-card arrangements, and provides for disclosure requirements that will be relevant to some credit-card agreements but not others. *See Strubel*, 842 F.3d at 191 & n.11 (discussing 12 C.F.R. Part 1026 ("Regulation Z")). In fact, TILA's subject matter is so complexly diverse that the specific disclosure requirements imposed upon card issuers are not crafted by Congress, but rather delineated in

regulations promulgated by the Consumer Financial Protection Bureau. *See* 842 F.3d at 186 (citing 15 U.S.C. § 1637(a)(7)). With a complex framework like TILA's, which is reliant on frequently changing agency regulations, a court must closely question whether Congress truly intended for the plaintiff at bar to be able to vindicate the violation of the specific provision invoked. *See Strubel*, 842 F.3d at 190–94.

As *Strubel* illustrates, some violations of a wide-ranging statutory scheme will implicate a particular consumer's interest in the statute's core object, while others will not. *See id.* But with a narrowly targeted statute like FACTA—carefully crafted after extensive fact-finding—merchants cause consumers concrete harm whenever they ignore its clear requirements. *See Havens Realty*, 455 U.S. at 373 (standing for "tester" plaintiffs to sue real estate agents for discriminatory practices in violation of the Fair Housing Act) ("[Injury in fact] may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing."), *cited with approval in Spokeo*, 136 S. Ct. at 1553 (Thomas, J., concurring), *and in Strubel*, 842 F.3d at 190 n.8.

**<u>FACTA Violations Necessarily Implicate Traditional Rights</u>**

As *Spokeo* explains, a plaintiff who has suffered an "intangible harm" as a result of the violation of a statutory right enjoys Article III standing so long as there is some "relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549 (citing *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 775–77 (2000)).

This language sets a low threshold; statutes targeting ills of the modern era are not deemed unrelated to traditional law merely because they lack an exact historical analog. *See Carney v. Goldman*, No. 15-260-BRM-DEA, 2016 U.S. Dist. LEXIS 177087, at *15 (D.N.J. Dec. 22, 2016) (FDCPA plaintiff enjoys Article III standing under traditional-law analysis because "<u>Congress</u> has long provided plaintiffs with the right to seek redress from debt collectors . . . ." (emphasis added)); *cf. Strubel*, 842 F.3d at 190–91 (confirming consumer's standing to sue credit card company over failure to provide required notices about disputing charges).

Judge Rakoff here concluded that FACTA does not meet this low threshold,

FRANK LLP

April 17, 2017
Page 14

curiously reasoning that FACTA protects not "consumers' privacy rights," but rather "the security of their identities." Dist. Ct. Op. at 13. This is not true, as President Bush made clear when signing FACTA into law that Congress "was 'acting to protect <u>individual privacy</u>.'" *Creative Hospitality Ventures, Inc. v. U.S. Liab. Ins. Co.*, 655 F. Supp. 2d 1316, 1333 (S.D. Fla. 2009) (quoting Statement by President George W. Bush Upon Signing H.R. 2622) (emphasis added) (internal brackets omitted); *see Deschaaf*, 2017 U.S. Dist. LEXIS 21241, at *10 (Printing the card expiration date on a receipt creates "a real risk that the customer's right to the <u>privacy</u> of their credit or debit card information is violated." (emphasis added)). Moreover, the District Court's reasoning is illogical—of course the security of one's identity is a subset of their privacy; the concepts of personal privacy and identity security are inextricably intertwined.

Even accepting Judge Rakoff's assertion that identity security is not about privacy, FACTA would still pass *Spokeo*'s traditional-suit threshold, as Anglo-American law has long required merchants with access to consumers' sensitive financial data to use the utmost care in guarding that information against any risk of compromise. *See Tournier v. Nat'l Provincial & Union Bank of Eng.*, (1924), 1 K.B. 461, *cited with approval in Sec. & Exch. Comm'n v. Gib. Global Sec., Inc.*, No. 13 Civ. 2575 (GBD) (JCF), 2015 U.S. Dist. LEXIS 43773, at *7 (S.D.N.Y. Apr. 1, 2015) (Francis, Mag. J.); *see also* Daniel J. Sokolove, *A Taxonomy of Privacy*, 154 U. Pa. L. Rev. 477, 529 & n.276 (2006) (listing cases from Florida, Idaho, Indiana, Maryland, Minnesota, and Pennsylvania).

***Strubel*** **Supports Plaintiff-Appellant's Standing**

According to Judge Rakoff, numerous well-reasoned post-*Spokeo* decisions supporting FACTA plaintiffs' standing are not persuasive because they cite in part to the Eighth Circuit's decision in *Hammer v. Sam's East, Inc.*, 754 F.3d 492 (8th Cir. 2014), which pre-dates *Spokeo*.[9] This premise is unavailing, because courts do not need to rely on *Hammer* to confirm a FACTA plaintiff's standing—*Spokeo* itself supports this result. *See Deschaaf*, 2017 U.S. Dist. LEXIS 21241, at *4–11 (confirming FACTA plaintiff's standing pursuant to *Spokeo*, without discussion of *Hammer*).

Further, Judge Rakoff's chain of logic is based on a misreading of *Braitberg*,

---

[9] The District Court argues that *Hammer* was abrogated by *Braitberg v. Charter Communications, Inc.*, 836 F.3d 925 (8th Cir. 2016). *See* Dist. Ct. Op. at 11 n.3.

which stands for the unremarkable proposition that a consumer lacks Article III standing to sue over a technical statutory violation that does not implicate the statute's core purpose. *See Braitberg*, 836 F.3d at 930 (no Article III standing for plaintiff alleging ex-cable provider failed to destroy his customer information, in violation of obscure provision of Cable Communications Policy Act). The *Braitberg* court did not overturn *Hammer*—it simply explained that the plaintiff in *Braitberg* could not rely on *Hammer* to automatically avoid scrutiny of the concreteness of the purported harm resulting from the defendant's statutory violation. *See Braitberg*, 836 F.3d at 929–30.

The District Court also criticizes certain courts supporting FACTA plaintiffs' standing for their reliance on *Church v. Accretive Health, Inc.*, 654 F. App'x 990 (11th Cir. 2016), which confirmed the standing of a plaintiff who sued a debt collector over its failure to provide disclosures mandated by the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. *See* Dist. Ct. Op. at 11 n.3. According to the District Court, there is no reason "why FDCPA and FACTA violations should be treated the same for standing purposes." *Id.*

Judge Rakoff's reasoning flies in the face of *Spokeo*'s mandate of deference to Congress's superior judgment in identifying risk. *See* 136 S. Ct. at 1549. FACTA, like the FDCPA and numerous other consumer protection statutes, was enacted by Congress "to remedy a distinct problem." *Bautz v. ARS Nat'l Servs., Inc.*, No 16-CV-768 (JFB) (SIL), 2016 U.S. Dist. LEXIS 178208, at *24 (E.D.N.Y. Dec. 23, 2016) (Bianco, J.). A consumer "['] who has been the object of a [practice] made unlawful under [any such statute] has suffered injury <u>in precisely the form</u> the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the [statute's] provisions.'" *Id.* at *23 (quoting *Havens Realty*, 455 U.S. at 373–74) (emphasis added).

Dated:   New York, New York
         April 17, 2017

                                       Respectfully submitted,

                                       **FRANK LLP**

                                       By:  <u>*/s/ Marvin L. Frank*</u>
                                       Marvin L. Frank (MF1436)
                                       Gregory A. Frank (GF0207)
                                       275 Madison Avenue, Suite 705

                                                  New York, New York 10016
(212) 682-1853 Telephone
(212) 682-1892 Facsimile
mfrank@frankllp.com
gfrank@frankllp.com

**NABLI & ASSOCIATES, P.C.**
60 East 42nd Street, Suite 1101
New York, New York 10165
(212) 808-0716 Telephone
(212) 808-0719 Facsimile
Khaled (Jim) El Nabli
Joseph H. Lilly
Peter Y. Lee

*Counsel for Plaintiff-Appellant*

Cc:    Eric L. Unis
         Bennet J. Moskowitz