ERIC L. UNIS
212.704.6482 telephone
212.704.5982 facsimile
eric.unis@troutmansanders.com



TROUTMAN SANDERS LLP
Attorneys at Law
875 Third Avenue
New York, New York 10022
212.704.6000 telephone
troutmansanders.com

April 17, 2017

**VIA ECF**

Catherine O'Hagan Wolfe
Clerk, United States Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re: *Cruper-Weinmann v. Paris Baguette America, Inc.*, **Case 14-3709**

Dear Ms. Wolfe:

On behalf of Defendant-Appellee Paris Baguette America, Inc. ("Paris Baguette"), we submit this letter brief pursuant to the Court's Order entered March 28, 2017, renewing this appeal and directing each party to submit a letter brief limited to the merits of the district court's dismissal of Plaintiff-Appellant Devorah Cruper-Weinmann's ("Appellant") Amended Complaint, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(1), due to Appellant's failure to plead a concrete injury.

Appellant did not allege that she was the victim of identity theft or that she was ever at risk of becoming one. Accordingly, Paris Baguette respectfully submits that Judge Rakoff's decision correctly followed *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) in holding that Appellant did not have Article III standing to bring her Fair and Accurate Credit Transactions Act ("FACTA") lawsuit because she did not plead a concrete injury.

As the district court and several other courts have held post-*Spokeo,* a FACTA plaintiff such as Appellant who never lost possession of an allegedly non-compliant receipt, which was never disclosed to any third party, cannot show any risk of material harm, such as the risk of identity theft, the harm that FACTA is intended to prevent. An alleged procedural violation of that nature does not bestow Article III standing and the district court therefore did not err in dismissing Appellant's Amended Complaint for a lack of subject matter jurisdiction.

# PROCEDURAL BACKGROUND

A. **The District Court Dismissed the Original Complaint for Failure to State a Claim Without Addressing the Issue of Article III Standing**

Appellant filed her original Complaint on October 3, 2013 [A-7 – A-15]. The original Complaint was based on the conclusory allegation that Paris Baguette "willfully" violated FACTA.[1] Appellant alleged a single cause of action, individually and on behalf of a putative class, under 15 U.S.C. § 1681n, stemming from an alleged violation of the truncation procedures set forth in 15 U.S.C. §1681c(g)(l). A-14, ¶¶ 29, 35-40. That provision prohibits merchants that accept credit or debit cards from printing more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction. Appellant alleged that she made a purchase at a Paris Baguette café and that she was then given a receipt that included her credit card's expiration date. *Id.*

Appellant did not seek any actual damages or claim to have suffered any injury. Appellant sought statutory damages of $1,000 per violation on behalf of the putative class [A-12, ¶ 29]. Such damages are available only for "willful" violations of the statute (*See* [A-12, ¶ 29]; 15 U.S.C. § 1681n).[2]

On November 18, 2013, Paris Baguette moved to dismiss the original Complaint pursuant to Fed. R. Civ. P. 12(b)(6), on the ground that the Complaint did not plausibly allege a willful FACTA violation [Doc. 10]. On January 16, 2014, the district court entered an abbreviated Order granting Paris Baguette's motion and dismissing the Complaint, with prejudice. [A-159 – A-160]. On June 30, 2014, the district court entered a full Memorandum Order elaborating the bases for dismissing the Complaint. [A-178 – A-189].

On July 15, 2014, Appellant moved for reconsideration of the district court's order dismissing her original Complaint [Doc. 27]. On September 3, 2014, the district court entered a Memorandum Order (i) denying Appellant's Motion for Reconsideration and (ii) denying Appellant leave to file her then proposed amended complaint [A-211 – A-215].

---

[1] FACTA amended the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.

[2] The crux of Appellant's "willfulness" claim was that Paris Baguette's customer receipts redacted customer credit card numbers in compliance with FACTA, but failed to redact card expiration dates, in violation of FACTA. [A-9, ¶ 14]. Because the scope of this submission must be limited to Article III standing issues and the district court's dismissal of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1), Paris Baguette's arguments relating to the failure to allege willfulness in either the original or Amended Complaints will not be articulated again here; and Paris Baguette respectfully refers the Court to its prior submissions on this subject.

On October 1, 2014, Appellant appealed from the dismissal of the original Complaint to this Court. [A-216]. The issues on that appeal were fully briefed and oral argument was held on October 28, 2015.

### B. Appellant Filed an Amended Complaint Without Alleging Any New Facts Germane to her Standing to Bring the Case

Prior to ruling on the appeal, on May 18, 2016, this Court requested letter briefs from the parties on the issue of how the Supreme Court's decision in *Spokeo* applied to this case. [2d Cir. Doc. 98]. On June 30, 2016, the Court remanded the case to the district court to give Appellant an opportunity to replead her claims to comport with the pleading standards set forth in *Spokeo*, and to allow the district court to address any standing questions in the first instance. [2d Cir. Doc. 110]. The Court also stated that upon any decision of the district court either party could invoke the jurisdiction of this Court and that any such renewed appeal would be assigned to the same panel that heard the initial appeal. [*Id.*] Although, in remanding the case, the Court vacated the district court's prior dismissal order, the Court did not disturb the district court's findings made when it dismissed the original Complaint pursuant to Fed. R. Civ. P. 12(b)(6).[3]

On July 29, 2016, Appellant filed her Amended Complaint. [Doc. 40]. Like Appellant's original Complaint, her Amended Complaint sought only statutory damages, rather than actual damages, and was devoid of cognizable allegations that the alleged FACTA violation caused actual harm or any plausible increased risk of harm. Rather than any facts germane to the question of her standing, Appellant's additions to the Amended Complaint were twelve new "allegations" consisting of legal arguments related to standing. Appellant simply asserted in conclusory fashion that the mere printing of her receipt containing her credit card's expiration date, by itself, somehow exposed her to an "increased risk of identity theft" [*See* Doc. 40, ¶¶ 29, 31]. Yet there was no explanation of how the receipt with her credit card's expiration date put her at increased risk of identity theft. In fact, there was no allegation that anyone other than Appellant ever saw or possessed the receipt.

### C. The District Court Dismissed the Amended Complaint, With Prejudice, for Lack of Article III Standing

Faced with the same deficient allegations that she made in her original Complaint and no new facts to support a finding that Appellant had standing to bring this case, on January 30, 2017, the district court issued an Opinion and Order dismissing the Amended Complaint, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(1). *See Cruper-Weinmann v. Paris Baguette Am.,*

---

[3] The Court's Order of March 28, 2017 renewed Appellant's existing appeal, which concerned the sufficiency of her "willfulness" allegations. Accordingly, should this Court find that the district court erred in finding that Appellant did not have standing and that dismissal was not warranted under Fed. R. Civ. P. 12(b)(1), the Court may nevertheless find that dismissal was warranted under Fed. R. Civ. P. 12(b)(6) because Appellant failed to plausibly allege a willful violation of FACTA.

*Inc.*, N. 13-2017, 2017 U.S. Dist. LEXIS 13660 (S.D.N.Y. Jan. 30, 2017). Judge Rakoff found:

> To bring any lawsuit, a plaintiff must have constitutional "standing" to do so, which means, among other things, that the plaintiff must have suffered a concrete injury in fact as a result of the defendant's conduct. The plaintiff here, on the face of her own complaint, lacks such standing.

*Id.*, at *13.

Judge Rakoff then analyzed *Spokeo*, which addressed the standard for pleading an injury in fact for purposes of Article III standing when the alleged injury arises from the violation of a statutory requirement. Judge Rakoff emphasized that *Spokeo* holds that a "concrete injury must be 'de facto,' which means it 'must actually exist,' and it must be 'real' rather than 'abstract.'" *Id.*, at *6.

In addition to applying *Spokeo*, the district court considered this Court's decision in *Strubel v. Comenity Bank*, 842 F.3d 181 (2d Cir. 2016), discussed below, which followed *Spokeo*. Judge Rakoff concluded:

> Defendant is correct that plaintiff has failed to allege facts demonstrating that the violation in question put her at an increased risk of identity theft. The Amended Complaint's spare account of the circumstances in which plaintiff received an improperly redacted receipt does not include any allegation that any third party ever saw or accessed the receipt. Under those circumstances, it is not apparent how the presence of the full expiration date of her credit card on that receipt might have threatened the security of her identity. Therefore, it is not the case that "the procedural violation present[ed] a risk of real harm to [plaintiff's] [ concrete interest" in protecting her identity. *Strubel*, 842 F.3d at 190. Having failed to satisfy that element of the test set out in *Strubel*, plaintiff lacks standing to assert her claim.

*Id.*, at *13.

Pursuant to this Court's June 30, 2016 Order, on February 3, 2017, Appellant appealed from the district court's Opinion and Order. [2d Cir. Doc. 121.]

# ARGUMENT

## I. THE DISTRICT COURT CORRECTLY HELD THAT APPELLANT LACKED ARTICLE III STANDING

### A. Standing Requirements Under Article III of the United States Constitution

The district court properly held that the Amended Complaint did not comport with Article III standing requirements, as clarified by *Spokeo*, because it did not contain any allegations establishing concrete harm to Appellant. *Spokeo* confirms that where, as here, an allegation of a procedural FACTA violation is divorced from the harm that FACTA is meant to remedy (*i.e.*, identity theft), the allegation is insufficient to satisfy the injury-in-fact element of standing under Article III of the Constitution. *See Spokeo*, 136 S. Ct. at 1546.

The requirements for standing have long been established by the Supreme Court. "Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013). As the Supreme Court has explained, "'[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'" *Id*. (alteration in original) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006); citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997); *Summers v. Earth Island Inst.*, 555 U.S. 488, 492-493 (2009)). "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Id*. quoting *Raines*, 521 U.S. at 818; *citing Summers*, 555 U.S. at 492-93; *DaimlerChrysler Corp.*, 547 U.S. at 342; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Standing under Article III of the Constitution consists of three elements: a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo*, 136 S. Ct. 1540 at 1547 (citing *Lujan*, 504 U.S. at 560; *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). At the pleading stage, "the plaintiff must clearly allege facts demonstrating each element." *Id*. at 1547. (internal quotation marks omitted) (citing *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). To establish injury in fact, a plaintiff must show that she suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (citing *Lujan*, 504 U.S. at 560).

*Spokeo* was not a dramatic departure from prior law on standing, but rather a clarification of the injury-in-fact element of standing. Litigants have always lacked standing merely to seek "vindication of the rule of law." *Steel Co. v. Citizens for a Better Env'tl*, 523 U.S. 83, 106 (1998). 'The requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *Summers*, 555 U.S. at 497; *see also Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."); *United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1154 (2d Cir.) ("Nevertheless,

some injury-in-fact must be shown to satisfy constitutional requirements, for Congress cannot waive the constitutional minimum of injury-in-fact.") *cert denied*, 508 U.S. 973 (1993); *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 772 (2000) ("An interest unrelated to injury in fact is insufficient to give a plaintiff standing.").

### B. *Spokeo* and *Strubel* Confirmed the Concrete Injury Requirement

*Spokeo* examined the need for a plaintiff to allege a concrete injury to have standing when alleging a statutory violation. In *Spokeo*, an individual, Thomas Robins, filed a class-action complaint in the U.S. District Court for the Central District of California against an internet "people search engine" for willful FCRA violations arising from the defendant's alleged gathering and public dissemination of an inaccurate profile of Robins. *Spokeo*, 136 S. Ct. at 1544. The district court dismissed Robins' complaint on the grounds that he had not satisfied the injury-in-fact requirement for Article III standing. *Id*. at 1546. The Court of Appeals for the Ninth Circuit reversed, holding Robins' alleged violations of his statutory rights were sufficient to satisfy the injury-in-fact requirement of Article III. *Id*.

The Supreme Court vacated and remanded, holding that the Ninth Circuit's analysis elided the independent requirement that the alleged injury be concrete, in addition to particularized. *Id*. at 1544, 1548. Justice Alito, writing for the majority, found:

> We have made it clear time and time again that an injury in fact must be both concrete *and* particularized.
>
> ***
>
> A 'concrete' injury must be 'de facto'; that is, it must actually exist.
>
> ***
>
> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. **Article III standing requires a concrete injury even in the context of a statutory violation.** For that reason, **Robins could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III** … On the one hand, Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk. On the other hand, **Robins cannot satisfy the demands of Article III by alleging a bare procedural violation. A violation of one of the FCRA's procedural requirements may result in no harm.** For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate. In addition, not all inaccuracies cause harm or present

        any material risk of harm. **An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm**.

*Id*. at 1549-50 (emphasis added) (citations omitted). The Supreme Court remanded the case to the Ninth Circuit to determine "whether the particular procedural violations alleged in this case entail a degree of risk sufficient to meet the concreteness requirement." *Id*. at 1550.

        Months after *Spokeo* was decided, in *Strubel v. Comenity Bank*, 842 F.3d 181 (2nd Cir. 2016), this Court interpreted the *Spokeo* standard in a case brought under the Truth in Lending Act ("TILA"), which alleged "procedural" violations of that statute. The plaintiff alleged four TILA violations based on the defendant's failure to make certain required disclosures in the credit card agreement provided to the plaintiff. The defendant argued that the plaintiff had not alleged a concrete injury. This Court formulated the rule in *Spokeo* as follows: "an alleged procedural violation can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a risk of real harm to that concrete interest." *Id.* at 190 (internal quotation marks omitted).

        Applying that test, this Court found that the plaintiff had satisfied the injury-in-fact requirement with regard to two of the four alleged violations. The defendant's failure to disclose two aspects of the plaintiff's obligations under the credit card agreement necessarily threatened the plaintiff's interest in the "informed use of credit," which TILA's requirements were designed to protect, since a consumer cannot use credit in an informed way if she is unaware of the obligations she must fulfill in order to exercise her rights under the agreement. *Id.* But this Court, however, found that the other alleged TILA disclosure violations did not give rise to concrete injuries. This Court held that the failure to disclose the plaintiff's obligations with regard to a payment plan that was never available to plaintiff could not affect her use of credit, nor could the failure to disclose the defendant's obligation to make certain reports affect such use in the absence of additional violations. *Id.* at 191-94.[4]

        As Judge Rakoff recognized in this matter, following *Spokeo* and *Strubel*, to determine whether a procedural violation alone constitutes an injury-in-fact requires a two-part inquiry: (1)

---

[4] Since *Spokeo*, numerous other courts have also applied *Spokeo* in a manner consistent with Judge Rakoff's application of *Spokeo*. *See e.g.*, *Braitberg v. Charter Commcn's*, 836 F.3d 925, 930 (8th Cir. 2016) (internal quotation omitted) ("In *Spokeo*, however, the Supreme Court rejected this absolute view" that "the actual-injury requirement may be satisfied *solely* by the invasion of a legal right that Congress *created*."); *Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 514-15 (D.C. Cir. 2016) ("[A]n asserted injury to even a statutorily conferred right 'must actually exist,' and must have 'affect[ed] the plaintiff in a personal and individual way.'") (quoting *Spokeo*, 136 S. Ct. at 1548; *Smith v. Ohio State Univ.*, 191 F. Supp. 3d 750, 757 (S.D. Ohio 2016) ("In determining whether Congress has elevated FCRA breaches to the status of legally cognizable injuries, the Supreme Court held that '[a] violation of one of the FCRA's procedural requirements may result in no harm.'").

whether Congress conferred the procedural right at issue in order to protect a concrete interest of the plaintiff, and (2) whether the violation of the procedure at issue presented a material risk of harm to that interest. *See Cruper-Weinmann*, 2017 U.S. Dist. LEXIS 13660, at *9. A plaintiff may fail to satisfy the second condition when the violation in question could not result in harm to the interest protected by statute either as a general matter or under the particular circumstances alleged. *See Strubel*, 842 F.3d at 191-92.

Under *Strubel* therefore, the plaintiff must do more than allege a violation that could theoretically lead to harm depending on the circumstances. The plaintiff must allege that the violation actually did threaten the plaintiff with harm for the plaintiff to have standing. *See Cruper-Weinmann*, 2017 U.S. Dist. LEXIS 13660, at *13 (S.D.N.Y. Jan. 30, 2017) ("Were plaintiff's position correct, the second part of *Strubel's* test would mean little, since it would always be satisfied when applied to a requirement intended to reduce the risk of harm in some circumstances, even if there were no risk under the circumstances alleged.").

C. **Appellant Lacked Standing Because She Alleged Only a Bare, Procedural FACTA Violation That Was Divorced From Any Concrete Harm To Her Identity or Credit**

Appellant's Amended Complaint is deficient under the standing principles set forth in *Spokeo* and *Strubel* as she did not meet her burden of pleading a concrete injury. Like the plaintiff's latter two violations in *Strubel*, the Amended Complaint alleged a bare procedural violation of FACTA, which is completely divorced from any allegation of concrete harm to her credit or identity or any material risk of harm to an interest protected by FACTA.

There is no controversy regarding the purpose of FACTA. Congress stated that it enacted FACTA "to prevent identity theft, improve resolution of consumer disputes, improve the accuracy of consumer records, make improvements in the use of, and consumer access to, credit information, and for other purposes." Pub. L. No. 108-159, 117 Stat. 1952, 1953 (2003). Indeed, Appellant effectively conceded in her Amended Complaint that FACTA's primary purpose is to protect consumers from **actual** identity theft, alleging:

- "FACTA is designed to protect credit and debit cardholders from identity theft and fraud" [Doc. 40, ¶ 1].
- "One common modus operandi of identity thieves is to obtain Card receipts that are lost or discarded, or through theft, and use the information on them to engage commit fraud and theft" [Doc. 40, ¶ 19].
- "Identity thieves commonly obtain Card receipts that are lost or discarded, or through theft, and use the information to engage in unauthorized credit or debit transactions" [Doc. 40, ¶ 24].
- The Fair and Accurate Credit Transactions Act was passed by Congress on November 22, 2003, and signed by President Bush on December 4, 2003, to assist in the prevention of identity theft and credit and debit card fraud. The statute makes it more difficult for identity thieves to obtain consumers' Card information

by reducing the amount of information identity thieves could retrieve from found or stolen Card receipts. In his statement during the signing of the bill, President Bush declared that: This bill also confronts the problem of identity theft. A growing number of Americans are victimized by criminals who assume their identities and cause havoc in their financial affairs" [Doc. 40, ¶ 26].

Congress was particularly concerned with averting harm to consumers where a receipt was stolen, lost, or discarded, and subsequently obtained by a third party. Thus, during a Congressional hearing, Senator Charles E. Schumer stated: "We should truncate credit card receipts … In other words, the receipt, the part you discard, does not show the whole number on there so people cannot go into the garbage can, pick it up, and duplicate your credit card number." *See The Fair Credit Reporting Act and Issues Presented By Reauthorization of the Expiring Preemption Provisions: Hearing Before the Committee on Banking, Housing and Urban Affairs,* l08th Cong. (2003), S. Hrg. 108-579 (available at https://www.gpo.gov/fdsys/pkg/CHRG-108shrg95254/html/CHRG-108shrg95254.htm). In enacting FACTA, Congress was "not interested in specifying the content of a credit card receipt as a part of some abstract, academic exercise. Rather, Congress [was] interested in preventing the actual harm of real identity theft." *Broderick v. 119TCbay*, LLC, 670 F. Supp. 2d 612, 619 (W.D. Mich. 2009).

Based on *Spokeo* and *Strubel* and these unmistakable intentions and conclusions of Congress as to the purpose of FACTA, Appellant could not have suffered any concrete harm because she alleges only that she alone received a receipt containing **her** credit card's expiration date. Appellant does not allege that anyone other than her ever accessed or had access to her receipt. Appellant did not allege actual identity theft, or any facts presenting a conceivable risk that her identity was in danger of being stolen. Instead she alleged only that Paris Baguette violated FACTA by providing her with a receipt that contained the expiration date of her credit card.

Indeed, as set forth above, Justice Alito found that it is "difficult" to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm to a plaintiff asserting FCRA claims. Here, more than merely "difficult," it is impossible to imagine any concrete harm caused by Appellant's, and only Appellant's, observation of a receipt allegedly containing her own credit card's expiration date. Moreover, unlike *Spokeo* where the plaintiff alleged his erroneous personal profile information was available online for all to see, the alleged violation in this case had an audience of one—Appellant herself. There is no allegation here, as there was in *Spokeo*, that a third party saw Appellant's receipt.

The violation alleged here is completely divorced from the harm, identity theft, that FACTA is intended to prevent. The mere act of printing an improperly redacted receipt and then the consumer then seeing that receipt alone does not place the consumer at risk for identity theft. FACTA was not enacted to protect consumers from the "harm" of simply receiving a receipt with their own credit card information on it. Nowhere in FACTA's text or history is there

mention of Congressional intent to establish a framework to vindicate a right to redacted receipts. What FACTA did establish were various procedures intended to limit identity theft, including the truncation requirement. Truncation was a means to that end, but not an end in and of itself. As only the recipient of a receipt with her credit card's expiration date on it, Appellant was not subjected to the harm that FACTA is intended to protect against and therefore did not have standing.

### D. Post-*Spokeo* Decisions in Similar FACTA Cases Have Held That The Plaintiffs Did Not Have Standing

Since *Spokeo*, many other courts have held, on similar alleged facts to what Appellant alleged in the Amended Complaint, that FACTA plaintiffs did not have standing. The first and to date only federal appellate court decision to address standing in a FACTA case post-*Spokeo* held that a plaintiff did not have standing when she retained full possession of her allegedly non-compliant receipt, which was never seen by any third party. *See Meyers v. Nicolet Rest. of De Pere*, *LLC*, 843 F.3d 724 (7th Cir. 2016). In *Meyers*, the plaintiff made nearly identical allegations as Appellant:

> On February 10, 2015, Meyers was given a copy of his receipt after dining at Nicolet Restaurant of de Pere in de Pere, Wisconsin. He noticed that Nicolet's receipt did not truncate the expiration date, as the FACTA requires. Two months later, Meyers filed a putative class action complaint in district court, purportedly on behalf of everyone who had been provided a non-compliant receipt at Nicolet. He sought only statutory damages.

843 F.3d 724, 725 (7th Cir. 2016). Finding that these facts failed to allege Article III standing, the Seventh Circuit held:

> *Spokeo* compels the conclusion that Meyers' allegations are insufficient to satisfy the injury-in-fact requirement for Article III standing. The allegations demonstrate that Meyers did not suffer any harm because of Nicolet's printing of the expiration date on his receipt. Nor has the violation created any appreciable risk of harm. **After all, Meyers discovered the violation immediately and nobody else ever saw the non-compliant receipt. In these circumstances, it is hard to imagine how the expiration date's presence could have increased the risk that Meyers' identity would be compromised**.

*Id*. at 727 (emphasis added).

Very recently, in *Weinstein v. Intermountain Healthcare*, 2:16-cv-00280-DN, 2017 U.S. Dist. LEXIS 51332 (D. Utah Apr. 3, 2017), a district court dismissed a FACTA complaint based on a lack of standing, when the plaintiff's allegations were identical to the allegations in this case. Like Appellant, the plaintiff in *Weinstein* alleged that he received a credit receipt

containing his card's expiration date but made no allegation that the receipt was in the possession of anyone else or that anyone else saw the recent. Citing *Meyers*, the court found:

> Mr. Weinstein has not alleged that he has been the subject of identity theft or credit card fraud because of the procedural violation. He has not alleged that he has had to take steps to protect himself from identity theft or credit card fraud as a result of the procedural violation. Instead, Mr. Weinstein alleges a "bare procedural violation" without any imminent concrete harm. Accordingly, Mr. Weinstein does not have standing to maintain a lawsuit in federal court and the Amended Complaint must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. This is consistent with the conclusion reached by many other federal district courts in analyzing standing questions under FACTA in light of *Spokeo*.

*Id.*, at *9.

*Weinstein* is one of many post-*Spokeo* decisions dismissing FACTA complaints based on a lack of standing. *See e.g.*, *Paci v. Costco Wholesale Corp.*, 16-cv-0094 (JRB), 2017 U.S. Dist. LEXIS 48368 (N.D. Ill. Mar. 30, 2017) (holding that plaintiff who received receipt displaying the first six and last four digits of his card number had no standing when there were no facts suggesting that plaintiff's identity was stolen or compromised); *Stelmachers v. Verifone Sys.*, 5:14-cv-04912-EJD, 2016 U.S. Dist. LEXIS 162081 (N.D. Cal. Nov. 21, 2016) (holding that plaintiff who received receipt displaying more than the last five digits of his card number had no standing because, given that only he had seen the receipt, the risk of identity theft was too speculative to constitute a certainly impending harm); *Kamal v. J. Crew Grp., Inc.*, No. 2:15-cv-190(WJM), 2016 U.S. Dist. LEXIS 145392, at *12 (D.N.J. Oct. 20, 2016) (holding that plaintiff who received receipt displaying the first six and last four digits of his card number had no standing because the allegations did not demonstrate an actual or imminent risk, given that only plaintiff accessed the receipt); *Thompson v. Rally House of Kansas City*, 15-cv-00886-GAF, 2016 U.S. Dist. LEXIS 146146, at *12-14 (W.D. Mo. Oct. 6, 2016) (same). A district court in this Circuit also concluded that a plaintiff who claimed no harm other than receiving a receipt with an expiration date did not have standing. *See Fullwood v. Wolfgang's Steakhouse, Inc.*, 13 Civ. 7174 (KPF), 2017 U.S. Dist. LEXIS 11711, *16 (S.D.N.Y. Jan. 26, 2017) ("The SAC's conclusory allegation that Plaintiff was 'damaged' by Defendant's conduct and its generalized allegation parroting FACTA's purpose statement are plainly insufficient to plead plausibly that Plaintiff suffered a concrete and particularized injury.").[5]

As in the above FACTA cases decided after *Spokeo*, Appellant's allegedly non-compliant receipt never placed her in any risk of imminent harm sufficient to satisfy Article III. The receipt was never available to a would-be identity thief or anyone else other than Appellant (or her

---

[5] Judge Failla granted leave to further amend the complaint to give plaintiff an opportunity to comport with *Spokeo* because plaintiff's operative pleading had been filed prior to *Spokeo*. *Id.*, 2017 U.S. Dist. LEXIS 11711, *19-20.

counsel). There was no way identity theft could occur with someone at least seeing, or taking the receipt, and Appellant pleaded no facts suggesting that was the case.

### E. The Congressional Record is Clear That a Receipt With Only an Unredacted Expiration Date Cannot Cause Concrete Harm

While the fact Appellant did not allege that anyone else ever saw her receipt is sufficient by itself to determine that Appellant lacked standing, the substance of what was actually printed on the receipt would not establish standing, even if Appellant had alleged that it was exposed. Appellant alleged that Paris Baguette properly truncated her credit card number but failed to redact the expiration date. Congress has definitively found that dissemination of a credit card expiration date, coupled with a properly truncated credit card number does **not** cause concrete harm. In its 2007 clarification to FACTA, the Credit and Debit Card Receipt Clarification Act of 2007 ("Clarification Act") (amending 15 U.S.C. § 1681n), Congress found:

> Experts in the field agree that **proper truncation of the card number, by itself** as required by the amendment made by the Fair and Accurate Credit Transactions Act, **regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud**.
>
> \*\*\*
>
> The purpose of this Act is to ensure that consumers suffering from any **actual** harm to their credit or identity are protected while simultaneously limiting abusive lawsuits that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers.

110 Pub. L. 241, 121 Stat. 1565, §§ 2(a)(6),(b) (emphasis added).

Akin to the example of how the erroneous zip code discussed in Spokeo was not likely to cause harm, it is difficult to imagine how an unredacted expiration date alone, even if disseminated, could cause identity theft. *Spokeo*, 136 S. Ct. at 1550. Appellant has offered no plausible reason to explain how a would-be identity thief could use only an expiration date off of a receipt to steal someone's identity or how the receipt in question put Appellant at risk for that to occur. The content of the receipt, therefore, is an additional reason why this Court should affirm the district court's determination that Appellant lacked standing.

### F. FACTA is Primarily an Identity Theft Prevention Statute and is Not a General Privacy Statute

Attempting to bolster Appellant's claim of standing, the Amended Complaint alluded to common law privacy rights and stated that the alleged FACTA violation "has a close relationship with a traditional harm" [Doc. 40, ¶¶ 37-39]. As the district court correctly found, this

invocation of "traditional" harm could not substitute for the actual intended purpose of FACTA.[6] Indeed, as set forth above, Appellant effectively conceded elsewhere in her Amended Complaint that Congress' primary concern in enacting FACTA was and is to prevent identity theft.

In any event, Appellant did not allege that any unauthorized person saw or had access to the receipt. Thus, even if "privacy rights" were the issue here, under any notion of privacy, simply viewing some of one's own account information cannot be considered an invasion. Accordingly, Appellant cannot look to common law privacy rights to cure her lack of standing to bring a FACTA complaint.

## CONCLUSION

Based on the foregoing and the reasons set forth in Paris Baguette's prior submissions, Paris Baguette respectfully submits that the district court's Order and Opinion of January 30, 2017 dismissing Appellant's Amended Complaint with prejudice for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1) and its Memorandum Orders of June 29, 2014 and September 2, 2014, dismissing Appellant's Complaint with prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), should be affirmed in all respects.

Respectfully submitted,

/s/ Eric L. Unis

Eric L. Unis

---

[6] "Finally, plaintiff contends that FACTA's redaction requirements vindicate a traditionally recognized privacy interest, whose historical pedigree may weigh in favor of finding a basis for standing according to *Spokeo*. However, plaintiff does not establish that Congress, in enacting FACTA, aimed to protect consumers' privacy rights, as opposed to the security of their identities." *Cruper-Weinmann*, 2017 U.S. Dist. LEXIS 13660, at *15. (internal citation omitted).