

275 MADISON AVENUE
SUITE 705
NEW YORK, NY 10016
212 682 1853
212 682 1892   FAX
www.frankllp.com

April 28, 2017

Catherine O'Hagan Wolfe
Clerk, U.S. Court of Appeals for the Second Circuit
Thurgood Marshall U.S. Courthouse
New York, NY 10007

>    Re:   <u>Cruper-Weinmann v. Paris Baguette Am., Inc.</u>, No. 14-3709-cv

We submit this letter on behalf of plaintiff-appellant, in reply to defendant-appellee Paris Baguette's April 17, 2017 letter (Document 136).

## **<u>Introduction</u>**

Both of FACTA's[1] clearly delineated procedural requirements grant consumers inherently concrete rights, because each is tailored to achieve FACTA's core object—helping consumers avoid <u>any</u> exposure to credit card fraud or identity theft. *See* 15 U.S.C. § 1681c(g)(1); *Strubel v. Comenity Bank,* 842 F.3d 181, 189–91 (2d Cir. 2016) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)).

After substantial fact-finding, Congress recognized that credit card receipts containing card expiration dates—like Paris Baguette printed here—are akin to defective products: they pose an unacceptable risk to consumers as soon as merchants create them and disseminate them into the marketplace. For this reason, Congress codified an independent statutory right to address the concrete risk of harm that such receipts create.

A FACTA-violating merchant causes concrete injury <u>as soon as</u> it hands a consumer a noncompliant receipt, because every time this happens, it creates a general risk that the merchant's defective item might hurt the consumer one day after being thrown away, and this risk is precisely what Congress wanted to eradicate. *See, e.g.*, *Deschaaf v. Am. Valet & Limousine Inc.*, No. CV-16-03464-PHX-GMS, 2017 U.S. Dist. LEXIS 21241, at *10 (D. Ariz. Feb. 15, 2017); *accord Strubel*, 842 F.3d at 190–91. While Paris Baguette insists that plaintiff-appellant's

---

[1] Fair and Accurate Credit Transactions Act of 2003, 15 U.S.C. § 1681c(g).

choice to protect herself after Paris Baguette's violations somehow renders the previous risk-based harm done to her less concrete, this Court rejected this exact victim-mitigation-undoes-standing defense in *Strubel*.

**Paris Baguette's FACTA Violations Are Not "Divorced" From Concrete Injury In Fact, Because The Violations Go To FACTA's "Core Object"**

Plaintiff-appellant suffered a concrete harm once Paris Baguette violated FACTA. As this Court explained in *Strubel*: "[W]here Congress confers a procedural right in order to protect a concrete interest, a violation of the procedure may demonstrate a sufficient 'risk of real harm' to the underlying interest to establish concrete injury without 'need [to] allege any additional harm beyond the one Congress has identified.'" 842 F.3d at 189 (quoting *Spokeo*, 136 S. Ct. at 1549 (emphasis in original)).

The relevant inquiry is whether the merchant's statutory violation implicates the consumer's "concrete interest in avoiding" a particular form of fraud or financial disadvantage—the "core object" of any carefully crafted consumer protection statute. *Strubel*, 842 F.3d at 190 (internal brackets, quotation marks and citation omitted). Where the merchant's violation implicates the consumer's concrete interest in the statute's core object, the violation "by itself" causes injury in fact, as it did here. *Id.* at 190–91 (citing 136 S. Ct. at 1549).

Courts have held that FACTA's core object is implicated by the redaction provisions at issue here, finding that "Congress intended to create a substantive legal right through FACTA[,]" in order to help consumers avoid any possible exposure to card fraud or identity theft. *Wood v. J Choo USA, Inc.*, 201 F. Supp. 3d 1332, 1338 (S.D. Fla. 2016) (emphasis added). FACTA furthers this core object by "limit[ing] the number of opportunities for [criminals] to 'pick off' key card account information." S. Rep. No. 108-166, at 13 (2003); *accord Altman v. White House Black Mkt., Inc.*, No. 1:15-cv-2451-SCJ, 2016 U.S. Dist. LEXIS 92761, at *19 n.9 (N.D. Ga. July 13, 2016). This ensures that "[s]lips of paper that most people throw away [do] not hold the key to their savings and financial secrets." Statement by President George W. Bush Upon Signing H.R. 2622, 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003).

Complying with FACTA's simple requirements is a condition of participation in our nation's card-payment systems. *See* 15 U.S.C. § 1681c(g)(1).

A merchant voluntarily assumes the responsibility of safeguarding its customers' private financial data when it accepts their credit cards; those consumers acquire a concrete interest in that merchant's fulfilling its FACTA obligations. *Deschaaf*, 2017 U.S. Dist. LEXIS 21241, at *10. This is because the merchant's manufacture and dissemination of a noncompliant receipt automatically exposes the consumer to an unacceptable increase in risk. *See id.* at *10–11. Congress thus rejected Paris Baguette's defense that the emphasis be on the post-violation conduct of consumers—many of whom do not appreciate the importance of immediately safeguarding private information once it is exposed on a receipt. *See id.*

Accordingly, "courts have considered a FACTA violation to be concrete <u>as soon as</u> a company prints the offending receipt, as opposed to requiring a plaintiff actually suffer identity theft." *Wood*, 201 F. Supp. 3d at 1338 (internal quotation marks and citations omitted) (emphasis added). "The structure and purpose of [FACTA] supports the conclusion that it provides actionable rights" the very moment that the merchant does precisely what Congress said <u>not</u> to do. *Perry v. Cable News Network, Inc.*, No. 16-13031-cv, 2017 U.S. App. LEXIS 7416, at *6 (11th Cir. Apr. 27, 2017); *see Strubel*, 842 F.3d at 190–91.

Paris Baguette attempts to shirk *Strubel*'s "core object" standard by comparing the FACTA claims here to the two TILA[2] claims in *Strubel* as to which standing was denied. *See* Def.-Appellee's Ltr. at 7–8 (citing 842 F.3d at 191–94).[3] But the *Strubel* plaintiff's unsuccessful TILA claims are wholly distinguishable, because neither claim implicated her concrete interest in TILA's core object. The statutory provisions that these claims invoked are esoteric parts of TILA's far-ranging statutory scheme—the sort of exceptionally limited procedural requirements that prove *Strubel*'s "core object" rule. One of these unsuccessful TILA claims alleged that the defendant, a credit card issuer, violated a TILA provision requiring card issuers to provide information about ceasing automatic payments. *See* 842 F.3d at 191. But because the credit agreement at issue did not involve automatic payments, that claim could not implicate the plaintiff's concrete interest in TILA's core object. *See id.* at 191–92.

---

[2] Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*

[3] References herein to "Def.-Appellee's Ltr. at __" are to Paris Baguette's April 17, 2017 letter to this Court (Document 136). Tellingly, Paris Baguette's letter does not <u>even once</u> mention *Strubel*'s "core object" standard.

The other unsuccessful TILA claim in *Strubel* faulted the defendant for not making clear to the plaintiff that the defendant would alert her within 30 days in the event that it corrected a billing error. *See id.* at 192. But the TILA provision invoked by that claim only requires card issuers to effectuate the required notice if a billing error occurs. *See id.* at 193–94. Because the defendant had never sent the plaintiff an incorrect bill, that TILA requirement was never triggered. *See id.* at 193–94.

**A Concrete, Risk-Based Injury Occurs Upon The Defendant's Violation**

Paris Baguette irrelevantly argues that plaintiff-appellant has not herself been victimized by card fraudsters or identity thieves. Def.-Appellee's Ltr. at 8–10. But a consumer's standing to sue a merchant for violating a risk-prevention statute has never depended on whether the ultimate harm threatened by the merchant's violation actually materialized. *See, e.g.*, *Strubel*, 842 F.3d at 185 & n.2, 189–90; *Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117, 123–24, 126 (S.D.N.Y. 2011) (Castel, J.) (Article III standing for FACTA plaintiff seeking statutory damages). Indeed, "requiring proof of identity theft or some other tangible injury" in cases like this one would undermine Congress's intent in passing any prevention-minded consumer protection law like FACTA, as forcing consumers "to wait for the threatened harm to materialize in order to sue would pose a standing problem of its own." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 640 n.23 (3d Cir. 2017) (internal ellipsis, quotation marks, and citation omitted).

Paris Baguette seems to be saying that plaintiff-appellant somehow de-concretized her injury when she noticed that Paris Baguette had put her at risk of card fraud and identity theft, and then took steps to protect herself. This reasoning was expressly rejected by Congress when it passed FACTA. Congress codified into law the concrete risk-based harm that occurs once the offending receipt is given to the consumer. A consumer has a right of action under FACTA as soon as the merchant is caught disseminating noncompliant receipts. *See* 15 U.S.C. §§ 1681c(g)(1), -n(a).

*Strubel* also rejects Paris Baguette's argument here. *Strubel* confirmed a consumer's standing to sue her credit card issuer for failing to provide her with charge-dispute disclosures required by TILA—even though these nondisclosures could never have caused her any tangible injury, because she already knew the

information required to be disclosed. *See* 842 F.3d at 185 & n.2, 189–91. The instant that the defendant sent her a noncompliant credit agreement, it created a <u>general</u> risk that a consumer <u>might</u> use a credit card in an uninformed manner. *See id.* at 190–91. The materialization of that risk—consumer confusion—was irrelevant to whether the risk-based harm was concrete. *See id.* at 185 & n.2, 190–91.

Strubel, like every other consumer, had a right to be treated by a card issuer in a specific way, and the defendant caused concrete injury by failing to treat her precisely as required. *See id.* at 190–91; *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–74 (1982), *cited with approval in Strubel,* 842 F.3d at 190 n.8. Every consumer, sophisticated or not, has a "concrete interest" in being treated <u>precisely</u> as TILA's charge-dispute disclosure provisions require, *see* 842 F.3d at 189–90—and the same is true with FACTA and its redaction requirements, *see* 15 U.S.C. § 1681c(g)(1).

Just as Strubel's choice to educate herself about her rights did not undo the concrete harm caused by the defendant's nondisclosures, so too does plaintiff-appellant's sequestering the violating receipt not undo the concrete harm done to her when Paris Baguette handed her a noncompliant receipt. *Deschaaf*, 2017 U.S. Dist. LEXIS 21241, at *10.

**The Clarification Act Supports, Not Undermines,
Plaintiff-Appellant's Article III Standing**

Paris Baguette makes a mountain out of a molehill by quoting parts of the Clarification Act's[4] preamble that seem to downplay the importance of FACTA's requirement that expiration dates be redacted from card receipts. *See* Def.-Appellee's Ltr. at 12. This language bears the earmarks of "strategic manipulations of legislative history" written "in an effort to curtail the effect of legislation [that certain legislators] disfavored." *DeKalb Cnty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 404 (2d Cir. 2016) (internal quotation marks and citation omitted).

Paris Baguette's argument is contradicted by FACTA itself, which has "<u>continued to require</u> that the expiration date be omitted" from card receipts,

---

[4] Credit and Debit Card Receipt Clarification Act of 2007, Pub. L. 110-241, 122 Stat. 1565, *codified at* 15 U.S.C. § 1681n(d).

reflecting Congress's continued belief that the printing of expiration dates causes harm. *Deschaaf*, 2017 U.S. Dist. LEXIS 21241, at *10 n.6 (emphasis added). If Congress had wanted to permanently absolve merchants of liability for violations of FACTA's expiration-date redaction requirement, it would have done so. *Wood*, 201 F. Supp. 3d at 1339.

**FACTA Satisfies *Spokeo*'s "Traditional-Suit" Threshold
Because It Is Fundamentally About Privacy**

Paris Baguette's argument that "FACTA is primarily an identity theft prevention statute and is not a general privacy statute"[5] shows true chutzpa, considering President Bush expressly acknowledged that FACTA's purpose is to "<u>protect individual privacy</u>," when signing FACTA into law. Statement by President George W. Bush Upon Signing H.R. 2622, 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003) (emphasis added). Moreover, Paris Baguette's distinction between personal privacy and identity protection is absurd on its face—identity protection automatically implicates privacy, because identity theft occurs <u>only when</u> an individual's private personal information is compromised.

FACTA easily clears *Spokeo*'s traditional-suit threshold, which is a low one. *See* 136 S. Ct. at 1549; Pl.-Appellant's Ltr. of April 17, 2017, at 13–14 (Document 135-1); *see also Mount v. PulsePoint, Inc.*, No. 16-3194-cv, 2017 U.S. App. LEXIS 5262, at *3 (2d Cir. Mar. 27, 2017). Paris Baguette's demand that modern statutes in a modern world be identical to ancient law threatens to upend countless acts of Congress. This Court has implicitly rejected that outcome. *Cf. Strubel*, 842 F.3d at 190–91.

Dated:  New York, New York
        April 28, 2017

                                        Respectfully submitted,

                                        **FRANK LLP**

                                        By:  */s/ Marvin L. Frank*
                                        Marvin L. Frank (MF1436)
                                        Gregory A. Frank (GF0207)
                                        275 Madison Avenue, Suite 705

---

[5] Def.-Appellee's Ltr. at 12 (certain letters decapitalized).

New York, New York 10016
(212) 682-1853 Telephone
(212) 682-1892 Facsimile
mfrank@frankllp.com
gfrank@frankllp.com

**NABLI & ASSOCIATES, P.C.**
60 East 42nd Street, Suite 1101
New York, New York 10165
(212) 808-0716 Telephone
(212) 808-0719 Facsimile
Khaled (Jim) El Nabli
Joseph H. Lilly
Peter Y. Lee

*Counsel for Plaintiff-Appellant*

Cc: Eric L. Unis
     Bennet J. Moskowitz