ERIC L. UNIS
212.704.6482 telephone
212.704.5982 facsimile
eric.unis@troutmansanders.com



TROUTMAN SANDERS LLP
Attorneys at Law
875 Third Avenue
New York, New York 10022
212.704.6000 telephone
troutmansanders.com

April 28, 2017

**VIA ECF**

Catherine O'Hagan Wolfe
Clerk, United States Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    *Cruper-Weinmann v. Paris Baguette America, Inc.*, Case 14-3709

Dear Ms. Wolfe:

      On behalf of Defendant-Appellee Paris Baguette America, Inc. ("Paris Baguette"), we submit this letter brief pursuant to the Court's Order entered March 28, 2017 renewing this appeal, and in reply to the initial letter brief submitted by Plaintiff-Appellant Devorah Cruper-Weinmann ("Appellant") on April 17, 2017. As set forth below, none of Appellant's arguments supports reversal of the District's Court's well-reasoned decision holding that Appellant lacks Article III standing to bring her FACTA complaint because she failed to allege that she suffered a concrete injury.

**Appellant Ignores Her Own Sparse Allegations And Misstates the Decision Below**

      Appellant's letter brief ignores that, in her Amended Complaint, she merely alleged that: "On September 19, 2013, Plaintiff ate at Paris Baguette's 6 West 32nd Street, New York, New York location, paid for her meal with a credit card, and received an electronically printed receipt displaying the expiration date" (Am. Compl. ¶ 16). Appellant's Amended Complaint does not further describe this alleged transaction or what happened, if anything, with the receipt.

      Appellant's reference on this appeal to "chronic FACTA violations" (Appellant's Ltr. Br. p. 2), "mass-scale statutory violators" (Appellant's Ltr. Br. p. 8), and similar buzz phrases, as well as Appellant's unsupported claim that she "had previously made credit card purchases from defendant-appellee, but does not possess those receipts" (Appellant's Ltr. Br. p. 9, fn. 6), are not based on any allegations in the Amended Complaint. Such extraneous assertions should be disregarded.

TROUTMAN SANDERS

Tellingly, rather than focus on her deficient allegations, Appellant devotes much to a discussion of secondary sources that are not determinative on this appeal—everything from a statement by President George W. Bush to a study released by computer scientists in the United Kingdom (See, e.g., Appellant's Ltr. Br. pp. 2, 4). None of this extrinsic evidence is relevant on this appeal, let alone justification for reversing the District Court's well-reasoned decision.

Appellant, based on factual insinuations that are entirely divorced from the Amended Complaint, also misconstrues the decision below. Judge Rakoff did not, as Appellant asserts, "second-guess[] Congress' wisdom" in enacting FACTA (Appellant's Ltr. Br. p. 2). Nor did Judge Rakoff hold that Appellant must "have fallen victim to a crime" (Appellant's Ltr. Br. p. 8).

Rather, Judge Rakoff's correctly held that, in light of Appellant's sparse account of the circumstances in which she received an improperly redacted receipt, recited in full above, Appellant failed to allege facts demonstrating that the alleged violation put her at an increased risk of identity theft. *Cruper-Weinmann v. Paris Baguette Am., Inc.*, 13 Civ. 7013 (JSR), 2017 U.S. Dist. LEXIS 13660, at *9-10 (S.D.N.Y. Jan. 30, 2017).

Appellant, citing the aforementioned statement by President Bush as well as a United Kingdom case from the 1920's, also erroneously suggests that Judge Rakoff incorrectly "concluded" that FACTA does not implicate "traditional rights" (*Id.* at *13-14). What Judge Rakoff actually held is that Appellant failed to establish that Congress, in enacting FACTA, aimed to protect consumers' general privacy rights, as opposed to the security of their identities" (*Id.* at *13). Judge Rakoff was entirely correct.

Appellant still fails to establish that FACTA is intended to protect "privacy rights." Appellant has not overcome the fact – and, Paris Baguette submits, cannot overcome the fact – that Congress enacted FACTA "to prevent identity theft, improve resolution of consumer disputes, improve the accuracy of consumer records, make improvements in the use of, and consumer access to, credit information, and for other purposes." Pub. L. No. 108-159, 117 Stat. 1952, 1953 (2003). Appellant also still fails to reconcile her after-the-fact assertion that FACTA concerns privacy rights with the allegations in her Amended Complaint establishing that FACTA's primary purpose is to protect consumers from identity theft (*See* Amended Compl. ¶¶ 1, 19, 24, 26).[1]

---

[1] Appellant's attempt to dub herself a private attorney general does not excuse her of showing the irreducible minimum injury-in-fact required by Article III. *See Spokeo*, 136 S. Ct. at 1547-48 ("It is well settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.") The law review article that Appellant cites similarly undercuts her argument (Appellant's Ltr. Br. p. 6, quoting Rubenstein, *On What A "Private Attorney General' Is – And Why It Matters,"* 57 Vand. L. Rev. 2129, 2151 (2004)). That article correctly took pains to emphasize that even "[w]here Congress has attempted to authorize private citizens to directly enforce public policies, the Supreme Court has resisted by insisting that a private citizen can only do so if she herself has an injury-in-fact

Appellant's new fallback argument -- that "[e]ven accepting Judge Rakoff's assertion that identity security is not about privacy, FACTA would still pass *Spokeo's* traditional-suit threshold, as Anglo-American law has long required merchants with access to consumers' sensitive financial data to use the utmost care in guarding that information against any risk of compromise" (Appellant's Ltr. Br. p. 14) -- is based on a United Kingdom case and a portion of a law review article that concern a bank's duty of confidentiality to its customers. *See Tournier v. Nat'l Provincial & Union Bank of Eng.*, 1 K.B. 461, 472-73 (1924) (United Kingdom decision concerning contractual duty of secrecy implied in relationship between banker and customer); Daniel J. Solove, A Taxonomy Of Privacy, 154 U. Pa. L. Rev. 477, 529, n. 276 (Jan. 2006) (listing cases supporting the principle that secrecy is an inherent and fundamental precept of the relationship between a bank and customers or depositors).

Indeed, *SEC v. Gibraltar Glob. Sec., Inc.*, 13 Civ. 2575, 2015 U.S. Dist. LEXIS 43773, at *7 (S.D.N.Y. Apr. 1, 2015), which, Appellant asserts, cites to *Tournier* "with approval" (Appellant's Ltr. Br. p. 14), confirms that "*Tournier* addressed the confidentiality of bank records."[2] Such concepts are entirely separate from the offense of identity theft that is the subject of FACTA.

**The District Court Correctly Applied *Strubel***

Appellant argues that the District Court misapplied *Strubel v. Comenity Bank*, 842 F.3d 181 (2d Cir. 2016), in which this Court interpreted *Spokeo*. Appellant erroneously asserts that the "central holding" of *Strubel* is that "a concrete injury occurs as soon as a merchant places a consumer at risk by failing to treat her in the precise manner required by statute." (Appellant's Ltr. Br. p. 9). This formulation appears nowhere in *Strubel* and is unsupported by this Court's analysis in *Strubel*. Appellant also incorrectly implies that *Strubel* holds that any alleged violation with some relationship to a statute's "core object," no matter how remote or attenuated from the facts alleged, is sufficient to attain standing.

As Judge Rakoff found, under *Spokeo* and *Strubel*, a plaintiff may fail to demonstrate that a procedural violation presented a material risk of harm to a concrete interest "when the violation in question could not result in harm to the interest protected by the statute either as a general matter or under the particular circumstances alleged." *Cruper-Weinmann Inc.*, 2017 U.S. Dist. LEXIS 13660, at *9. This is the logical conclusion after a careful reading of *Strubel*.

In *Strubel*, the plaintiff alleged four separate procedural violations of the Truth in Lending Act ("TILA"). 842 F.3d at 185-86. The four violations related to certain required disclosures in the credit card agreement provided to the plaintiff. As noted in *Strubel*, the purpose of TILA is to protect consumers against inaccurate and unfair credit billing and credit card practices and promote the informed use of credit by assuring a meaningful disclosure of

---

sufficient to satisfy standing requirements." *Id.* at 2156-57 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

[2] *Gibraltar* does not itself concern identity theft either.

credit terms. *Id.* at 186 (citing *Vincent v. The Money Store*, 736 F.3d 88 (2d Cir. 2013).

As this Court found, based on the particular facts in *Strubel*, the plaintiff had standing to with respect to two of the alleged TILA violations and did not have standing with respect to the other two alleged violations. This Court concluded that the plaintiff had demonstrated a concrete and particularized injury based on allegations that the defendant credit card issuer had not provided the required notice that (1) certain identified consumer rights pertain only to disputed credit card purchases not yet paid in full and (2) a consumer dissatisfied with a credit card purchase must contact the creditor in writing or electronically. *Id.* at 190.

This Court explained that violations of these TILA procedures could have harmed the plaintiff:

> These procedures afford such protection by requiring a creditor to notify a consumer, at the time he opens a credit account, of how the consumer's own actions can affect his rights with respect to credit transactions. A consumer who is not given notice of *his* obligations is likely not satisfy them and, thereby, unwittingly to lose the very credit rights that the law affords him. For that reason, a creditor's alleged violation of each notice requirement, by itself, gives rise to a "risk of real harm" to the consumer's concrete interest in the informed use of credit. *Spokeo, Inc. v. Robins*, 136 S. Ct. at 1549. Having alleged such procedural violations, Strubel was not required to allege "any *additional* harm" to demonstrate the concrete injury necessary for standing. *Id*. (emphasis in original).

*Id.* at 190-91.

In contrast, this Court came to a different conclusion with respect to the latter two alleged TILA violations and clearly explained how they were distinguishable from the first two. Strubel alleged that Comenity violated a provision of TILA by failing to disclose a consumer's obligation to provide a creditor with timely notice to stop automatic payment of a disputed charge. *Id.* at 191-92. This Court found that Strubel could not show how Comenity's failure to provide such notice to her risked concrete injury because Comenity did not offer an automatic payment plan at the time Strubel held the credit card at issue. *Id.* Thus this Court concluded that "she cannot establish that Comenity's failure to make this disclosure created a 'material risk of harm' –or, indeed, any risk of harm at all—to Strubel's interest in avoiding the uninformed use of credit." *Id.* (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1550 (2016)).

The plaintiff also alleged that Comenity violated TILA because it failed to disclose that the bank was obligated, not only to acknowledge a reported billing error within 30 days of the consumer's communication, but also to tell the consumer, at the same time, if the error has already been corrected. *Strubel*, 842 F.3d at 192. This Court determined that no concrete injury had been alleged there either, reasoning that there would be no impact on a consumer generally

simply by failing to provide that disclosure at the time the consumer applied for credit, before any billing error has occurred, much less before it had been reported or corrected. *Id.* at 193. Nor did the plaintiff herself have any reason to report any billing error in her credit card statements. *Id.* This Court correctly determined that, without any concrete harm suffered by the plaintiff specifically, or that may have been suffered by consumers generally, the plaintiff did not have standing to sue for this violation. *Id.* at 194.

As set forth above, Appellant has alleged no facts demonstrating how the particular circumstances of the alleged FACTA violation here caused her any concrete harm or how it could have caused harm to any similarly situated consumer. Moreover, alleged FACTA violations should be looked at in a different light than alleged violations of TILA. TILA is intended to govern the relationship between the consumer and the creditor and to protect the consumer from harm directly caused by the creditor's inadequate or misleading disclosures. The "core object" of FACTA is to protect the consumer from identity thieves, and not from an inadequately truncated receipt *per se*. The harm that FACTA seeks to prevent necessarily involves a nefarious third party to actually occur and cannot occur based solely on what a retailer prints. Thus it would be illogical to assume concrete harm every time a non-compliant receipt was simply printed and handed to a customer. As set forth above, Appellant was never at risk from a third party malefactor as no one else but her saw the receipt.[3]

**Post-*Spokeo* Case Law Supports Paris Baguette's Position On This Appeal**

In addition to *Strubel,* the District Court's decision is in harmony with the vast majority of post-*Spokeo* case law. Appellant places much emphasis on *Deschaaf v. Am. Valet & Limousine Inc.*, No. CV-16-03464-PHX-GMS, 2017 U.S. Dist. LEXIS 21241 (D. Ariz. Feb. 15, 2017), one post-*Spokeo* FACTA case in which a district court found that a plaintiff had standing despite the fact that the plaintiff had not alleged that anyone else saw or accessed the allegedly offending receipt. In *Deschaaf,* the district court engaged in undue hypothesizing to find that the plaintiff had standing. Instead of focusing on the facts as alleged, the district court erroneously speculated on what steps the plaintiff may have taken to "ameliorate" the alleged FACTA violation and found that the necessity of taking those steps constituted concrete harm. *Id.* at *10. Here, Appellant did not allege any facts indicating that she took steps to ameliorate the alleged violation and the District Court correctly refrained from speculating that she may have done so.

*Deschaaf* and the few other post-*Spokeo* FACTA cases finding standing cited by Appellant (discussed below) are contrary to the weight of authority. *See e.g., Meyers v. Nicolet*

---

[3] Appellant also cites *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)(Appellant's Ltr. Br. p. 7), in which the Supreme Court held that a "tester plaintiff" in a housing discrimination case had Article III standing. As this Court observed in *Strubel, Havens* remains viable, but there is no reasonable comparison between the active role of the 'tester plaintiff' in *Havens* and the very passive role of Appellant, who did nothing but receive a receipt.

*Rest. of De Pere*, *LLC*, 843 F.3d 724 (7th Cir. 2016); *Weinstein v. Intermountain Healthcare, Inc.*, 2:16-cv-00280-DN, 2017 U.S. Dist. LEXIS 51332 (D. Utah Apr. 3, 2017); *Paci v. Costco Wholesale Corp.*, 16-cv-0094 (JRB), 2017 U.S. Dist. LEXIS 48368 (N.D. Ill. Mar. 30, 2017). Indeed, another district court, citing Judge Rakoff's decision and other authorities, came to the same conclusion on a FACTA plaintiff's standing just last week, after the parties here submitted their initial letter briefs. In *Hendrick v. Aramark Corp.*, Civil Action No. 16-4069, 2017 U.S. Dist. LEXIS 59474 (E.D. Pa. April 18, 2017), the court found that a FACTA plaintiff who only alleged that he was given a receipt with too many credit card number digits visible. The plaintiff did not allege that anyone else saw or accessed the receipt. The plaintiff claimed an increased risk of harm, but as here, the court found that the plaintiff did not allege "any facts to substantiate such a risk." *Hendrick,* 2017 U.S. Dist. LEXIS 59474, *12-13 ("Under the *Spokeo* analysis, Plaintiff's bald allegation of increased risk of identity theft is insufficient to satisfy the injury in fact requirement for Article III standing.").

The District Court did recognize that a few other district courts have held post-*Spokeo* that procedural violations of FACTA's requirements give rise to standing. These cases, decided in the immediate aftermath of *Spokeo*, include *Wood v. J Choo USA*, *Inc.*, 201 F. Supp. 3d 1332 (S.D. Fla. 2016) and *Altman v. White House Black Mkt., Inc.*, No. 15-cv-2451-SCJ, 2016 U.S. Dist. LEXIS 92761 (N.D. Ga. July 13, 2016), which are cited in Appellant's initial letter brief. As Judge Rakoff found, there is good reason to dispute the conclusions in those cases that FACTA confers a substantive right to have one's credit card information properly redacted. *Cruper-Weinmann*, 2017 U.S. Dist. LEXIS 13660, at *12 ft. n. 3. *Altman* relies in part on *Hammer v. Sam's E., Inc.*, 754 F.3d 492 (8th Cir. 2014), a pre-*Spokeo* decision holding that FACTA violations in themselves give rise to standing, but the Eighth Circuit subsequently recognized that *Hammer* was abrogated by *Spokeo*. *See Braitberg v. Charter Communications, Inc.*, 836 F.3d 925, 930 (8th Cir. 2016). *Altman* also relies on an unpublished decision by the Eleventh Circuit, *Church v. Accretive Health, Inc.*, 654 F. App'x 990 (11th Cir. 2016) (per curiam), also cited by Appellant, which held that the Fair Debt Collection Practices Act (FDCPA) conferred a substantive right to receive certain disclosures. *Altman*, however, did not explain why FDCPA and FACTA violations should be treated the same for standing purposes.[4] *Wood* provides no additional support to Appellant, as it relied on the reasoning of *Altman*. *Wood*, 201 F. Supp. 3d at 1338.

*Braitberg*, though not a FACTA case is a good illustration of *Spokeo* being applied when a plaintiff has failed to allege a concrete injury. Judge Rakoff did not "misread" *Braitberg*, as Appellant contends (Appellant's Ltr. Br. p. 14). In *Braitberg*, a case brought under the Cable

---

[4] As set forth above with respect to TILA, whether a plaintiff has standing to bring an action under the FDCPA also requires a different analysis than for an alleged FACTA violation. The FDCPA is intended to govern the relationship between a consumer debtor and a debt collector, granting rights to the consumer to protect the consumer against the debt collector's unfair and deceptive practices. *See* 15 U.S.C. § 1692, *et seq.* Unlike FACTA, the intervention of a third party bad actor is usually not necessary for a consumer to be harmed by a violation of the statute.

TROUTMAN
SANDERS

Communications Privacy Act, the Eighth Circuit held that the mere unlawful retention of personal information did not manifest concrete injury absent allegations of misuse. 836 F.3d at 930-31. Consistent with *Spokeo*, like Judge Rakoff, the *Braitberg* court assessed whether the alleged violation caused actual harm or the material risk of harm.[5] *Id.* ("He identifies no material risk of harm from the retention; a speculative or hypothetical risk is insufficient.") As set forth above, under this standard, Appellant did not plead facts sufficient to confer standing.

Based on the foregoing and the reasons set forth in Paris Baguette's prior submissions, Paris Baguette respectfully submits that the District Court's prior orders should be affirmed in all respects.

Respectfully submitted,

/s/ Eric L. Unis

Eric L. Unis

---

[5] Appellant also cites *In re: Horizon Healthcare Services, Inc.*, 846 F.3d 625 (3d Cir. 2017) (Appellant's Ltr. Br. p. 6), in which the Third Circuit declined to follow *Braitberg*. *Horizon*, nevertheless, can be distinguished because in that FCRA data breach case, sensitive personal information was actually stolen. *Cf. Beck v. McDonald*, 848 F.3d 262, 275 (4th Cir. 2017) (finding that mere theft of information cannot confer Article III standing in Privacy Act of 1974 data breach case).